**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| VISTEON GLOBAL TECHNOLOGIES, INC. and VISTEON TECHNOLOGIES, LLC, | ) | Civil Action No.: 2:10-cv-10578-PDB-MAR |
| Plaintiffs, | ) | Hon. Paul D. Borman<br>Hon. Mark A. Randon |
| v. | ) | |
| GARMIN INTERNATIONAL, INC., | ) | |
| Defendant. | ) | |

**PLAINTIFFS VISTEON GLOBAL TECHNOLOGIES, INC. AND VISTEON TECHNOLOGIES, LLC'S OPENING BRIEF IN SUPPORT OF ITS CLAIM CONSTRUCTION FOR ADDITIONAL CLAIMS**

Pursuant to Paragraph 4(H) of the Fourth Amended Joint Rule 26(f) Report [Docket No. 56], Visteon Global Technologies, Inc. and Visteon Technologies, LLC (collectively "Visteon") respectfully submit their opening claim construction brief for additional claims.

# TABLE OF CONTENTS

**Page**

I. PRELIMINARY STATEMENT ..........1

II. VISTEON'S CONSTRUCTION OF THE DISPUTED TERMS ..........1

A. The '060 Patent: "means for displaying and [sic] plurality of instructions sequentially" ..........1

B. The '060 Patent: "means for enabling an operator of said vehicle to preview said optimal path" ..........3

C. The '060 Patent: "input means for permitting said operator of said vehicle to request an alternate optimal path on demand" ..........7

III. CONCLUSION ..........10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Altiris, Inc. v. Symantec Corp.*,
318 F.3d 1363 (Fed. Cir. 2003)....................3

*Applied Med. Res. Corp. v. U.S. Surgical Corp.*,
448 F.3d 1324 (Fed. Cir. 2006)....................4

*Asyst Techs. v. Empak Inc.*,
268 F.3d 1364 (Fed. Cir. 2001).................... passim

*B. Braun Med., Inc. v. Abbott Labs.*,
124 F.3d 1419 (Fed. Cir. 1997)....................2, 5

**STATUTES**

35 U.S.C. § 112(6) .................... passim

**OTHER AUTHORITIES**

U.S. Patent No. 4,757,455....................2

U.S. Patent No. 5,544,060.................... passim

## PRELIMINARY STATEMENT

On October 15, 2010, Visteon Global Technologies, Inc. and Visteon Technologies, LLC (collectively "Visteon") filed an Opening Brief in Support of its Claim Construction with respect to the construction of disputed claim terms. On November 5, 2010, Visteon filed a Responsive Brief in Support of its Claim Construction regarding the same disputed claim terms. Subsequent to these briefs, Visteon amended its complaint to assert additional claims in the instant lawsuit. The addition of these newly-asserted claims has introduced three additional claim terms for which the Parties seek assistance from the Court in reaching a construction. These claim terms are all means-plus-function claim terms appearing in Claim 4 of U.S. Patent No. 5,544,060 ("the '060 patent").[1] Each of these newly-asserted terms is discussed in detail below.

## VISTEON'S CONSTRUCTION OF THE DISPUTED TERMS

### A. The '060 Patent: "means for displaying and [sic] plurality of instructions sequentially"

| Claim | Claim Term | Visteon's Proposed Construction | Garmin's Proposed Construction |
|---|---|---|---|
| 4 | "means for displaying and [sic] plurality of instructions sequentially" | This claim element is governed by 35 U.S.C. § 112(6).<br><br>**Function (AGREED):** Displaying a plurality of instructions sequentially.<br><br>**Structure:** A display device (*e.g.*, a CRT display device) and equivalents thereof. | This claim element is governed by 35 U.S.C. § 112(6).<br><br>**Function (AGREED):** Displaying said plurality of instructions sequentially.<br><br>**Structure:** A CRT display device and equivalents thereof. |

Visteon and Garmin agree that the above-recited claim term qualifies for means-plus-function treatment under 35 U.S.C. § 112(6), and further agree on the function for this term. The Parties, however, disagree regarding the structure. The main difference is whether the structure

---

[1] A complete copy of the '060 patent may be found at Docket No. 42-2. A complete copy of the file history for the '060 patent may be found at Docket No. 42-6 through 42-8.

is "a display device (*e.g.,* a CRT display device) and equivalents thereof" (Visteon's proposal) or "a CRT display device and equivalents thereof" (Garmin's proposal). The differences between these two constructions are substantial.

Visteon's proposed structure, in contrast to Garmin's, is pulled verbatim from the specification of the '060 patent. At Column 3, lines 6-9, the '060 patent states: "The microcomputer 10 sequentially outputs path information, corresponding to the present position of the vehicle, to **a display device 60 (e.g. a CRT display device)**, so that the display device 60 displays each path information." '060 Patent, Col. 3:6-9 (emphasis added). The specification, thus, specifically identifies the structure as "a display device," notes that *one example* of such a device is a CRT display device, and also links the display device to the function of displaying a plurality of instructions sequentially. *See e.g.,* '060 Patent, Col. 3:6-9; Col. 4:36-38 ("Of course, the thus output path information is displayed on the display device 60."); Col. 4:39-43 ("Therefore, when the preview switch 70 is operated before the vehicle is started from the starting point, the path information (shown in FIG. 6(B) next to the path information shown in FIG. 6(A) is displayed on by the display device 60."); *see also B. Braun Med., Inc. v. Abbott Labs.*, 124 F.3d 1419, 1424 (Fed. Cir. 1997) ("structure disclosed in the specification is 'corresponding' structure [under 35 U.S.C. § 112(6)] only if the specification or prosecution history clearly links or associates that structure to the function recited in the claim").

It would be improper to limit the claim term to only a CRT display device, and its equivalents. Other types of display devices existed at the time the '060 patent was filed, and the '060 patent was prosecuted in light of these other display devices. For example, during prosecution, the Examiner cited to U.S. Patent No. 4,757,455 to Tsunoda et al., in part for its disclosure of a liquid crystal display. *See* Office Action (6/15/93) at p. 4; *see also* Preliminary

Amendment (12/31/91) at p. 3; Office Action (6/15/93) at p. 4; Amendment (9/14/93) at p. 5; Office Action (11/01/93) at pp. 3 and 4; Amendment (3/1/94) at pp. 5-6; and Office Action (10/17/94) at p. 6. The clarity of the specification and the references during prosecution by the Applicants and the Examiner to display devices other than CRT display devices confirm that the structure for the "means for displaying and [sic] plurality of instructions sequentially" is "a display device (*e.g.*, a CRT display device) and equivalents thereof."

Garmin ignores the plain language of the specification and well-established canons of claim construction as it latches onto only the preferred display device as the structure for carrying out the function of "displaying a plurality of instructions sequentially." The Federal Circuit has made it clear that "under § 112 every structure disclosed in the specification and its equivalents should be considered" and "the description of the preferred embodiment is not a sufficient reason for … limiting the claims." *Altiris, Inc. v. Symantec Corp.*, 318 F.3d 1363, 1377 (Fed. Cir. 2003). Garmin's proposed construction of the structure, therefore, is fundamentally incorrect. Through consultation with Garmin, Visteon has learned that Garmin's rationale for limiting the structure to the preferred embodiment is Garmin's difficulty in envisioning what would be an equivalent to a "display device." Garmin's purported confusion is not a legitimate reason to limit the claims to the preferred embodiment. Garmin's proposed construction should be rejected in favor of Visteon's.

### B. The ’060 Patent: “means for enabling an operator of said vehicle to preview said optimal path”

| Claim | Claim Term | Visteon’s Proposed Construction | Garmin’s Proposed Construction |
|---|---|---|---|
| 4 | “means for enabling an operator of said vehicle to preview said optimal path” | This claim element is governed by 35 U.S.C. § 112(6).<br><br>**Function (AGREED):** Enabling an operator of the vehicle to preview the optimal path.<br><br>**Structure:** A switch and equivalents thereof. | This claim element is governed by 35 U.S.C. § 112(6).<br><br>**Function (AGREED):** Enabling an operator of the vehicle to preview the optimal path.<br><br>**Structure:** A first switch, coupled to a computer programmed to perform the algorithm of steps 100 through 103 of Figure 3, that initiates the algorithm of steps 100-103 and equivalents thereof. |

Visteon and Garmin agree that the above-recited claim term qualifies for means-plus-function treatment under 35 U.S.C. § 112(6). The Parties agree on the function for this term, and further agree that the structure includes a switch. Garmin seeks, and indeed contends that it is proper, to include within the structure additional elements that do not perform the identified function. The law is otherwise. *See e.g., Asyst Techs. v. Empak Inc.*, 268 F.3d 1364, 1369-70 (Fed. Cir. 2001) (“structural features that do not actually perform the recited function do not constitute corresponding structure”).

35 U.S.C. § 112(6) provides that “[a]n element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.” For claims that qualify for means-plus-function treatment under 35 U.S.C. § 112(6), claim construction

involves two steps. "First, the court must determine the claimed function. Second, the court must identify the corresponding written description of the patent that performs the function." *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1332 (Fed. Cir. 2006).

As noted above, in means-plus-function limitations, the "corresponding" structure for carrying out the claimed function is that which the specification clearly links to the identified function. *B. Braun Med.*, 124 F.3d at 1424. Care must be taken not to read to read too much from the specification into the structure for carrying out the function. On this point, the Federal Circuit has noted:

> Section 112, paragraph 6 does not "permit incorporation of structure from the written description beyond that necessary to perform the claimed function." *Micro Chem., Inc. v. Great Plains Chem. Co.*, 194 F.3d 1250, 1257-58 … (Fed. Cir. 1999). Structural features that do not actually perform the recited function do not constitute corresponding structure and thus do not serve as claim limitations.

*Asyst Techs.*, 268 F.3d at 1369-70 (Fed. Cir. 2001). In this case, the specification specifically identifies a switch[2] as the structure for carrying out the function of "enabling an operator of the vehicle to preview the optimal path." For example, the '060 patent states that "each time the preview switch 70 is operated, the relevant path information is displayed, and therefore the optimal path can be displayed before the vehicle is started." '060 Patent, Col. 5:33-35. In other words, the structure that permits the user to preview the optimal path is the switch.

In *Asyst Techs. v. Empak Inc.*, 268 F.3d 1364 (Fed. Cir. 2001), the Federal Circuit, faced with a similar claim construction debate, addressed the issue of exactly how much structure recited in the specification is the "corresponding" structure for a means-plus-function limitation. In that case, the Federal Circuit reviewed the district court's determination that the structure for the term "second microcomputer means for receiving and processing digital information" was "a

[2] The '060 patent refers to this particular switch as a "preview" switch. The '060 patent uses the term "preview" to distinguish this particular switch from the other switches, such as the "cancel" switch, discussed in the specification.

local control processor 20 connected to the second two-way communication means 50 via a line 51 over which an electronic signal can be transmitted in either direction." *See id.* at 1369-71. The Federal Circuit held that the district court's construction was incorrect because it included the "line 51," which did not perform the function of "receiving and processing" digital information. *See id.* In particular, the Federal Circuit stated:

> It is well established that "it is not necessary to claim in a patent every device required to enable the invention to be used." *Hughes Aircraft Co. v. United States*, 640 F.2d 1193, 1197 … (Ct. Cl. 1980). An electrical outlet enables a toaster to work, but the outlet is not for that reason considered to be part of the toaster. The corresponding structure to a function set forth in a means-plus-function limitation must actually perform the recited function, not merely enable the pertinent structure to operate as intended, which is the case for the structure identified as line 51. We therefore disagree with the district court that line 51 should be regarded as part of the structure corresponding to the functions set forth in the "microcomputer means" limitation.

*Id*. at 1371 (emphasis added).

Garmin is making the same mistake the district court made in the *Asyst* case – confusing structure that might be needed to enable the pertinent structure to operate as intended with structure that actually performs the recited function. The '060 patent indicates that once the preview switch has been operated, the microcomputer 10 executes a series of steps, such as those identified in FIG. 3, to transmit the path information to the display. *See e.g.*, '060 Patent, Col. 4:26-49. In executing these steps, the microcomputer performs functions unrelated to the function of "enabling an operator of the vehicle to preview the optimal path." Specifically, the microcomputer will compare the value Kv of a counter K with the value Nv of the counter N (Step 101 in FIG. 3) and "[i]f Kv≥Nv is obtained, (kv+1) is written on to the counter K (Step 102 [in FIG. 3])." '060 Patent, Col. 4:30-34. The '060 patent discloses that the counters are used to ensure that the path information (i.e., information necessary for guiding the vehicle along the optimal path) displayed on the screen corresponds to the location of the vehicle. For example,

"each time the vehicle arrives at a point where the path information is switched, the value of a counter N is changed by one." *Id.* at Col. 3:22-24. This ensures that the value for counter N is in conformity with the path information, which is determined based on the value of the counter K. *See id.* at Col. 3:24-Col. 4:49.

Nothing in the specification or the prosecution history, however, indicates that the microcomputer 10 enables the operator of the vehicle to preview the optimal path. This is important because the structure at issue is the component that allows the user to request a preview of the optimal route, not the components that may be involved in generating the preview. The '060 patent plainly and repeatedly states that it is the switch alone that performs the function of the "means for enabling" limitation. *See e.g.,* '060 Patent, Col. 4:43-45 ("each time the preview switch is operated, the path information based on the optimal path is displayed); Col. 5:33-35 ("each time the preview switch 70 is operated, the relevant path information is displayed, and therefore the optimal path can be displayed before the vehicle is started"); and Col. 5:49-51 ("the relevant path information is displayed each time the preview switch 70 is operated"). If the corresponding structure was the switch coupled to the computer, as proposed by Garmin, the specification would specify as much. The absence of such statements indicates that the computer does not enable the operator of the vehicle to preview the optimal path, and, thus, the computer is not, and cannot be, part of the structure for the "means for enabling" limitation. *Asyst*, 268 F.3d at 1370. For this reason, the "computer programmed to perform the algorithm of steps 100 through 103 of Figure 3, that initiates the algorithm of steps 100-103" should not be included as part of the structure for the "means for enabling" limitation, as proposed by Garmin.

### C. The ’060 Patent: “input means for permitting said operator of said vehicle to request an alternate optimal path on demand”

| Claim | Claim Term | Visteon’s Proposed Construction | Garmin’s Proposed Construction |
|---|---|---|---|
| 4 | “input means for permitting said operator of said vehicle to request an alternate optimal path on demand” | This claim element is governed by 35 U.S.C. § 112(6).<br><br>**Function (AGREED):** Permitting the operator of the vehicle to request another optimal path from the starting point and destination used to generate the first optimal path on demand.<br><br>**Structure:** A switch and equivalents thereof. | This claim element is governed by 35 U.S.C. § 112(6).<br><br>**Function (AGREED):** Permitting the operator of the vehicle to request another optimal path from the starting point and destination used to generate the first optimal path on demand.<br><br>**Structure:** A second switch, coupled to a computer programmed to perform the algorithms of Figures 4 and 5, that initiates the algorithm of Figure 4, and a third switch, coupled to the computer, that initiates the algorithm of Figure 5 and equivalents thereof. |

The same issues involved in the construction of the “means for enabling” limitation, discussed in the preceding Section, are present with respect to the “input means for permitting said operator of said vehicle to request an alternate optimal path on demand” limitation in Claim 4 of the ’060 patent. The Parties agree that the limitation is governed by 35 U.S.C. § 112(6), agree on the function, and agree that the structure includes a switch. But here again, Garmin insists that the limitation include additional structure that does not perform the (agreed) function of “permitting the operator of the vehicle to request another optimal path from the starting point and destination used to generate the fist optimal path on demand.”

The specification of the ’060 patent provides that

> The cancel switch 80 serves to determine whether or not the path displayed in response to the operation of the preview switch 70 is canceled. When the cancel switch 80 is operated, the displayed path is canceled. The cancellation of the path is effected when re-calculating the optimal path … and when the optimal path is to be re-calculated, the canceled path is excluded from the optimal path to be calculated.

’060 Patent, Col. 4:10-17. Thus, the specification specifically identifies a switch[3] as the structure for carrying out the claimed function of "permitting the operator of the vehicle to request another optimal path from the starting point and destination used to generate the fist optimal path on demand."

As with the "means for enabling" limitation, the specification of the ’060 patent teaches that once the switch has been operated, the microcomputer will perform a series of steps, such as those identified in FIG. 5, in order to calculate another optimal path. *See e.g.*, ’060 Patent, Col. 5:8-31. In fact, the ’060 patent discloses that in carrying out the algorithms disclosed in FIGS. 4 and 5, the microcomputer performs functions unrelated to the function of "permitting the operator of the vehicle to request another optimal path from the starting point and destination used to generate the fist optimal path on demand." Specifically, the microcomputer will write onto the counter N the path information corresponding to the value of the counter K (Step 201 in FIG. 4), and also will re-calculate the optimal path, excluding the canceled path information (Step 301 in FIG. 5). *See* ’060 Patent, Col. 5:1-19.

The ’060 patent clearly discloses that the "cancel" switch performs the function of "permitting the operator of the vehicle to request another optimal path from the starting point and destination used to generate the fist optimal path on demand." *See e.g.,* ’060 Patent, Col. 5:8-9 ("[i]f part of the path information is canceled by the cancel switch 80, the optimal path is re-

[3] The ’060 patent refers to this particular switch as a "cancel" switch. The ’060 patent uses the term "cancel" to distinguish this particular switch from the other switches, such as the "preview" switch, discussed in the specification.

calculated"); and Col. 5:17-18 ("if the judgment result is that the cancel switch 80 has been operated, the optimal path is re-calculated"). For clarity, the structure is the component that allows the user to request another optimal path. The structure does not include components that may be involved in cancelling the originally calculated path or in calculating the new optimal path. Nothing in either the specification or the prosecution history suggests, much less specifies, the structure proposed by Garmin. Consequently, inclusion of "a computer programmed to perform the algorithms of Figures 4 and 5, that initiates the algorithm of Figure 4, and a third switch, coupled to the computer, that initiates the algorithm of Figure 5" as part of the structure for the "input means" limitation, as Garmin proposes, would violate basic claim construction principles. *See Asyst*, 268 F.3d at 1369-71. Visteon requests, therefore, that the Court adopt Visteon's proposed construction of the term "input means for permitting said operator of said vehicle to request an alternate optimal path on demand" recited in Claim 4 of the '060 patent.

**CONCLUSION**

For the foregoing reasons, Visteon respectfully requests that the Court adopt Visteon's proposed claim constructions.

This 11th day of February, 2011.

/s/ Anthony J. Kochis
WOLFSON BOLTON PLLC
Scott A. Wolfson (P53194)
Anthony J. Kochis (P72020)
3150 Livernois, Suite 275
Troy, MI 48083
(248) 247-7105
akochis@wolfsonbolton.com
P72020

*Pending admission under
E.D. Mich. LR 83.20

Richard M. McDermott*
rick.mcdermott@alston.com
William M. Atkinson*
william.atkinson@alston.com
Jeffrey M. Connor*
jeffrey.connor@alston.com
Jitendra Malik*
jitty.malik@alston.com
ALSTON & BIRD LLP
Bank of America Plaza
101 South Tryon Street,
Suite 4000
Charlotte, North Carolina 28280-4000
(704) 444-1000 - Telephone
(704) 444-1111 - Facsimile

**Attorneys for Plaintiffs Visteon Global Technologies, Inc. and Visteon Technologies, LLC**

**CERTIFICATE OF SERVICE**

I hereby certify that on February 11, 2011, I caused a copy of the foregoing document to be electronically filed with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

Adam P. Seitz - aseitz@shb.com, ewithers@shb.com, iplitigation@shb.com, jglidewell@shb.com, phinton@shb.com

Andrew S. Doctoroff adoctoroff@honigman.com, pfisher@honigman.com

Eric A. Buresh eburesh@shb.com, iplitigation@shb.com, patchison@shb.com

Holly L. Teeter - hteeter@shb.com, iplitigation@shb.com, rschletzbaum@shb.com, rsexton@shb.com

Scott A. Wolfson swolfson@wolfsonbolton.com, Bill.Atkinson@alston.com, Jeffrey.Connor@alston.com, Jitty.Malik@alston.com, Rick.McDermott@alston.com, stravis@wolfsonbolton.com

I further certify that I mailed the foregoing paper(s) by United States Postal Service to the following non-ECF participants: None.

/s/ Anthony J. Kochis
WOLFSON BOLTON PLLC
Scott A. Wolfson (P53194)
Anthony J. Kochis (P72020)
3150 Livernois, Suite 275
Troy, MI 48083
(248) 247-7105
akochis@wolfsonbolton.com
P72020