UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VISTEON GLOBAL TECHNOLOGIES, INC.
AND VISTEON TECHNOLOGIES, LLC,

Plaintiffs,

Case No. 10-cv-10578

Paul D. Borman
United States District Judge

v.

Mark A. Randon
United States Magistrate Judge

GARMIN INTERNATIONAL, INC.,

Defendant.

______________________________/

OPINION AND ORDER AFFIRMING
THE MAGISTRATE JUDGE'S MAY 24, 2012 ORDER (ECF NO. 124)

This matter is before the Court on Defendant Garmin International, Inc.'s ("Garmin") Objections to and Appeal of the Magistrate Judge's Order Compelling the Deposition of Garmin's In-House Litigation Counsel and Compelling Discovery Into Garmin's Legal Investigation. (ECF No. 132, Garmin's Objections.) Plaintiffs Visteon Global Technologies, Inc. and Visteon Technologies, LLC ("Visteon") filed a response to Garmin's Objections (ECF No. 144, Visteon's Sealed Response) and Garmin filed a reply (ECF No. 145). For the reasons that follow, the Court AFFIRMS the Magistrate Judge's May 24, 2012 Order.

## I. BACKGROUND

This action involves Visteon's claims that Garmin infringes several separate Visteon patents relating to the function and operation of vehicle navigation devices. The Court issued its Claim

Construction Order on December 12, 2011, adopting the Special Master's original May 2, 2011 Claim Construction Report and adopting the Special Master's August 16, 2011 Response to the Parties' Objections to the Special Master's original Claim Construction Report. (ECF No. 103, Order Adopting Special Master's Claim Construction.)

The parties are presently before the Court on Garmin's Objections to Magistrate Judge Mark A. Randon's May 24, 2012 Order on Visteon's motion to compel. Visteon's motion to compel (ECF No. 106), sought the Court's determination of two discovery disputes that the parties were unable to resolve through meet and confers. Following a hearing on Visteon's motion to compel discovery, the Magistrate Judge ordered Garmin (1) to produce a 30(b)(6) witness to testify as to the dates when Garmin first became aware of its defenses in this litigation ("Topic 156" or the "date(s) evidence") and (2) to produce Garmin's in-house counsel, Sam Korte, to testify regarding Garmin's design-arounds produced for purposes of this litigation, to the extent the subject matter is not privileged and not work product. (ECF No. 124, 5/24/12 Order.)

## II. STANDARD OF REVIEW

28 U.S.C. § 636(b)(1)(A) and Federal Rule of Civil Procedure 72(a) both provide that a district judge must modify or set aside any portion of a magistrate judge's non-dispositive pretrial order found to be "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed.R.Civ.P. 72(a). The United States Supreme Court and the Sixth Circuit Court of Appeals have stated that "a finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948) (explaining the clearly erroneous standard under Rule 52(a)); *Hagaman v. Comm'r of Internal Revenue*, 958 F.2d 684, 690 (6th Cir.

1992) (quoting *U.S. Gypsum Co.*). *See also United States v. Mandycz*, 200 F.R.D. 353, 356 (E.D. Mich. 2001) (explaining the standard under Rule 72(a)).

This standard does not empower a reviewing court to reverse the Magistrate Judge's finding because it would have decided the matter differently. *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985) (interpreting the clearly erroneous standard in Rule 52(a)). The Sixth Circuit has noted that: "[t]he question is not whether the finding is the best or only conclusion that can be drawn from the evidence, or whether it is the one which the reviewing court would draw. Rather, the test is whether there is evidence in the record to support the lower court's finding, and whether its construction of that evidence is a reasonable one." *Heights Cmty. Cong. v. Hilltop Realty, Inc.*, 774 F.2d 135, 140 (6th Cir. 1985).

"The 'clearly erroneous' standard applies only to the magistrate judge's factual findings; his legal conclusions are reviewed under the plenary 'contrary to law' standard. . . . Therefore, [the reviewing court] must exercise independent judgment with respect to the magistrate judge's conclusions of law." *Haworth, Inc. v. Herman Miller, Inc.*, 162 F.R.D. 289, 291 (W.D. Mich.1995) (citing *Gandee v. Glaser*, 785 F. Supp. 684, 686 (S.D. Ohio 1992)).

## III. ANALYSIS

### A. Topic 156 - The Dates on Which Garmin Became Aware of Its Defenses

With regard to Topic 156, which the parties appear to agree relates to Visteon's willful infringement claim, Garmin argues that it does not intend to use the date(s) on which it became aware of any of its defenses to refute the claim that it willfully infringed Visteon's patents. The parties' dispute over Topic 156 centers around whether evidence regarding the date(s) on which Garmin became aware of its defenses to Visteon's claims is nonetheless relevant in the instant case

and, if so, whether the information is privileged.

Proof of willful infringement is established under the two-prong standard set forth in *In re Seagate Technology, LLC*, 497 F.3d 1360 (Fed. Cir. 2007). "[I]t is indisputable that the proper legal standard for willful infringement informs the relevance of evidence relating to that issue and, more importantly here, the proper scope of discovery." *Id.* at 1371-72. Under *Seagate*, willful infringement requires proof of both an objective and a subjective component:

> [T]o establish willful infringement, a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent. *See Safeco* [*Ins. Co. of Am. v. Burr*,127 S.Ct. 2201(2007)], at 2215. ("It is [a] high risk of harm, objectively assessed, that is the essence of recklessness at common law."). The state of mind of the accused infringer is not relevant to this objective inquiry. If this threshold objective standard is satisfied, the patentee must also demonstrate that this objectively-defined risk (determined by the record developed in the infringement proceeding) was either known or so obvious that it should have been known to the accused infringer.

497 F.3d at 1371.

Visteon claims a need to discover evidence regarding the dates on which Garmin learned of its defenses because "a routine tactic employed by a defendant [in a willful infringement claim] is to suggest the various defenses it possesses prove that it could not have acted with willful disregard of an issued patent." (ECF No. 144, Visteon's Resp. Br. 12.) There is no dispute, as Visteon suggests, that such evidence *can be* and often is relevant to proving willful infringement, where the alleged infringer attempts to refute the claim of willfulness by proving that it was aware of its defenses to the patent holder's claims at the time of the infringing activity and therefore cannot be held liable for willful infringement based on its subjective belief that it had legitimate defenses to the infringement claims.

Garmin argues, however, that its willingness to concede the subjective prong of the *Seagate*

analysis and to stipulate "that it will not present evidence showing or suggesting that Garmin was aware of any of its defenses before those defenses appeared in Garmin's contentions," obviates any need Visteon may have for the dates evidence that it seeks. Visteon responds that there is a "split of authority" regarding whether the timing of an alleged infringer's knowledge of its defenses implicates the objective or the subjective prong of the *Seagate* analysis. But Garmin suggested at the hearing before Magistrate Judge Randon that its proposal not to rely on any date(s) evidence applies without regard to whether the evidence is offered under the objective or the subjective prong. Regardless of the label, objective or subjective, Garmin's position is that it will not seek to rely on such evidence and will not seek to introduce it, rendering discovery related to it irrelevant. (ECF No. 132-1, May 24, 2012 Hr'g Tr. 38-42.)

Were the Court to end its analysis with the relevance of the date(s) evidence to the *Seagate* analysis and to a finding of willful infringement, it might be inclined to agree with Garmin given its concession on the subjective prong, and indeed its agreement not to rely to any degree on the date on which it knew of a certain defense to refute a charge of willfulness, that such information is simply not relevant. However, more importantly, Garmin has not responded to Visteon's contention that even assuming such a concession on the *Seagate* analysis, Visteon is still entitled to discover the dates evidence as relevant to the amount of enhanced damages, if any, to which Visteon will be entitled if willful infringement is established, even assuming such a finding may be based solely on the objective prong of the *Seagate* analysis, without reference to when Garmin became aware of its defenses.

Following a finding of willful infringement, enhanced damages are available under 35 U.S.C. § 284, which authorizes a court, in its discretion, to "increase the damages up to three times the

amount found or assessed." 35 U.S.C. § 284. "Enhancement of damages under 35 U.S.C. § 284 involves the fact-finder determining that the infringer engaged in culpable conduct and the court exercising its discretion to determine whether and to what extent to enhance the damages." *Jurgens v. CBK, Ltd.*, 80 F.3d 1566, 1570 (Fed. Cir.1996).

Visteon argues that the Federal Circuit's decision in *Spectralytics, Inc. v. Cordis Corp.*, 649 F.3d 1336 (Fed. Cir. 2011), teaches that "'the test for willfulness is distinct and separate from the factors guiding a district court's discretion regarding enhanced damages. . . . Although a finding of willfulness is a prerequisite for enhancing damages . . . the standard for deciding whether—and by how much—to enhance damages is set forth in *Read* [*Corp. v. Portec, Inc.*, 970 F.2d 816 (Fed. Cir. 1992), *abrogated in part on other grounds*, *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (en banc), *aff'd* 517 U.S. 370 (1996)], not *Seagate*. . . .'" 649 F.3d at 1348 (quoting *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 859 (Fed. Cir. 2010), *cert. granted on other grounds*, —— U.S. ——, 131 S.Ct. 647 (2010)).

The *Read* factors that this Court would be called upon to consider assuming a finding of willful infringement are:

> (1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer, when he knew of the other's patent, investigated the patent and formed a good faith belief that it was invalid or that it was not infringed; (3) the infringer's behavior in the litigation; (4) the infringer's size and financial condition; (5) the closeness of the case; (6) the duration of the misconduct; (7) the remedial action by the infringer; (8) the infringer's motivation for harm; and (9) whether the infringer attempted to conceal its misconduct.

*Read*, 970 F.2d at 826–27.

In an effort to avoid placing the date(s) on which it became aware of its defenses at issue in this case, "to obviate the need for this discovery and to streamline the issues for trial," Garmin

proposed a "trial stipulation" that "neither party will present any evidence related to the subjective prong of the *Seagate* standard, including for example, any evidence of advice of counsel (pre or post filing) or any evidence pertinent to Garmin's knowledge of (1) the Asserted Patents or (2) any objectively-defined risk of infringement." (ECF No. 132-5, Page ID 4743, March 22, 2012 email from Paul Hart to Jitty Malik.) So far as it goes, this seems a possible solution to the dispute as it relates to the proofs regarding willful infringement – Garmin is prepared to stand or fall on Visteon's ability to establish the objective prong of the willful infringement inquiry. However, Garmin fails to address the further relevance of the date(s) evidence to the inquiry the Court will be asked to make in the event that Visteon sustains its burden of establishing the objective prong of willful infringement:

> The principal considerations in enhancement of damages are the same as those of the willfulness determination, but in greater nuance as may affect the degree of enhancement. Thus egregiousness of the infringer's conduct may receive greater emphasis, as may any mitigating factors. *See Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826-27, 23 USPQ2d 1426, 1435-36 (Fed.Cir.1992) (collecting factors). All aspects relevant to a particular case should be given the weight appropriate to their substance. A broad range of discretion is reposed in the trial court, founded on this need to weigh and balance multiple factors in determining a just remedy.

*SRI Int'l Inc. v. Advanced Technology Laboratories, Inc.*, 127 F.3d 1462, 1469 (Fed. Cir. 1997). In this regard, Garmin's proposed stipulation deems irrelevant, and would withhold from the Court's consideration, evidence of many of the subjective factors that courts are expressly instructed to consider in deciding whether to award enhanced damages.

Although Visteon never mentioned or argued the *Read* factor test to Magistrate Judge Randon as a separate and independent basis for the relevance of the date(s) evidence, the Court finds that evidence tending to demonstrate when, if at all, Garmin formed a good faith belief that it was

not infringing the patents in suit is relevant to any determination that the Court may be called upon to make regarding enhanced damages, if there is a finding of willful infringement. Unless Garmin is also willing to concede the issue of enhanced damages, the Court cannot conclude at this discovery stage that the date(s) evidence that Garmin seeks in Topic 156 is wholly irrelevant to any potential issue in the litigation. In its reply brief, Garmin did not even address Visteon's argument for relevance based on the *Read* factors. The Court assumes that if Garmin had a response to this point, it would have raised it and put such an argument before the Court for consideration. It failed to do so.[1]

The test at this discovery stage is solely one of relevance and the applicable legal standard defines the proper scope of that discovery. "[T]he proper legal standard for [obtaining enhanced damages] informs the relevance of evidence relating to that issue and, more importantly here, the proper scope of discovery." *Seagate*, 497 F.3d at 1471-72. Given that the Court may be called upon to examine the *Read* factors upon a finding of willful infringement, even if as Garmin would have it such a finding would be made only on the objective prong of the *Seagate* analysis, the Court cannot agree with Garmin that there is no relevance to the requested date(s) evidence.

Accordingly, the Court concludes that Magistrate Judge Randon's conclusions are not clearly erroneous or contrary to law, and AFFIRMS the Magistrate Judge's Order compelling Garmin to respond to Topic 156 with the dates on which it became aware that it possessed the defenses advanced in this litigation. The parties can agree that this information be provided in any mutually

---

[1] Nor has Garmin provided the Court with any authority that would support a claim that evidence bearing on the *Read* factors, which courts are expressly directed to consider in evaluating the appropriate amount (if any) of enhanced damages, can categorically be withheld based on a claim of privilege.

agreed upon format. Whether such evidence will be admissible and, if so, at what stage of the proceedings, are issues on which the Court expresses no opinion and leaves for another day.

**B. The Deposition of Sam Korte - The Design Around Process and the Hypothetical Negotiation**

The design around issue relates to the damages aspect of the case against Garmin and the process by which the trier of fact might arrive at a reasonable royalty figure that hypothetically would have been due to Visteon in the event that Garmin's liability is established:

> A patentee is entitled to "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty." 35 U.S.C. § 284. A reasonable royalty can be calculated from an established royalty, the infringer's profit projections for infringing sales, or a hypothetical negotiation between the patentee and infringer based on the factors in *Georgia–Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y.1970). *Lucent Techs. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed.Cir. 2009); *Minks v. Polaris Indus.*, 546 F.3d 1364, 1372 (Fed. Cir.2008). The hypothetical negotiation "attempts to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began," and "necessarily involves an element of approximation and uncertainty." *Lucent*, 580 F.3d at 1324–25 (citation omitted).

*Wordtech Systems, Inc. v. Integrated Network Solutions, Inc.*, 609 F.3d 1308, 1319 (Fed. Cir. 2010).

In arriving at a reasonable royalty figure, the hypothetical negotiation may take into account the availability of noninfringing alternatives at the time that the infringement first began. *See Carnegie Mellon University v. Marvell Technology Grp., Ltd.*, No. 09-290, 2012 WL 3686736, at *4 (W.D. Pa. Aug. 24, 2012) (noting that the Federal Circuit, in *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1373 (Fed. Cir. 2008), acknowledged that the presence or possibility of noninfringing alternatives "can play a role in the reasonable royalty analysis" where the alleged infringer had "the ability, the resources, and the desire to design around [the infringed] patents") (internal citation and quotation marks omitted); *Zygo Corp. v. Wygo Corp.*, 79 F.3d 1563, 1571-72 (Fed. Cir. 1996)

(noting that the alleged infringer "would have been in a stronger position to negotiate for a lower royalty rate knowing it had a competitive noninfringing device 'in the wings,'" and remanding to the district court to reconsider its royalty award in light of the alleged infringer's ability to market its noninfringing product). The alleged infringer need not demonstrate that the noninfringing alternative in fact existed at the time but must establish that it was more than "theoretically possible," and in fact "available" to be marketed:

> Although the Federal Circuit has not addressed whether a non-infringing alternative that is not on the market during the accounting period is relevant to the reasonable royalty analysis, it has addressed this issue in the context of lost profit damages. *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1393 (Fed. Cir.2003). In *Grain Processing*, the Federal Circuit explained that, when an alleged alternative is not on the market during the accounting period, the court may reasonably infer that it was not available as a non-infringing alternative. *Grain Processing Corp. v. Am. MaizeProds. Co.*, 185 F.3d 1341, 1353 (Fed. Cir.1999). The accused infringer, however, can rebut this presumption by showing that the substitute was in fact "available" to the infringer. *Id.* "Mere speculation or conclusory assertions will not suffice" to overcome the presumption of non-availability. *Id.* The court must, therefore, "proceed with caution in assessing proof of the availability of substitutes not actually sold during the period of infringement" because only those substitutes that the infringer proves were "available" during the accounting period can limit a patentee's damages—substitutes only "theoretically possible" will not. *Id.* . . . *Grain Processing* requires the court to consider whether, among other things, [the alleged infringer] had the necessary equipment, know-how, and experience to implement those non-infringing alternatives.

*LaserDynamics, Inc. v. Quanta Computer, Inc.*, No. 06-348, 2011 WL 197869, at *2, 3 (E.D. Tex. Jan. 20, 2011). If Garmin can prove that it could have implemented a non-infringing alternative at the time that the infringement occurred, then, the argument goes, at a hypothetical negotiation that would have occurred at the time of infringement, the existence of the noninfringing alternative would have been used to negotiate a lower reasonable royalty rate. Garmin asserts that "[t]he design around inquiry is straightforward - if Garmin shows it could have implemented a noninfringing alternative

at the time of a hypothetical negotiation between the parties, the reasonable royalty Garmin would have paid for Visteon's technology is decreased." (ECF No. 145, Garmin's Reply, 1.)

Garmin's engineer, Kent Bolton, at the request of Sam Korte, Garmin's in-house counsel, designed the allegedly noninfringing modified alternative that Garmin intends to rely on in the instant case. Visteon has deposed Mr. Bolton at great length about "how the design-around operates." According to Garmin, at several points in his deposition, Mr. Bolton was unable to answer certain questions and continually asserted that he was simply carrying out the directives of Sam Korte to implement four specific software changes in the allegedly infringing products. (ECF No. 144-1, Sealed "Attorneys' Eyes Only" Deposition of Kent Bolton, May 2, 2012, 8-12.) Mr. Bolton testified that in implementing the changes ordered by Mr. Korte, Mr. Bolton did not examine the patents or any documents but simply followed Mr. Korte's very direct instructions to design around four specified features. *Id.* at 13. Mr. Bolton testified that he was unaware that he was implementing the requested changes to design around a specific patent, and was told only that he was to make these changes "for the Visteon matter." *Id.* at 15, 18-19. He never examined the claims in the patent and did not form an opinion as to whether the modifications he implemented actually achieved a design around an existing patent. *Id.* at 16-17. He implemented each of the requested changes through a modification of the source code. *Id.* at 21. Mr. Bolton had no discussions with anyone at Garmin apart from Mr. Korte regarding the design around and never had discussions with anyone regarding the marketing or sales prospects for the design around products he implemented. Visteon claims that now having learned that Sam Korte was closely involved in the design-around process on which Garmin intends to rely in the damages phase of the trial, Visteon is entitled to depose Mr. Korte with regard to his involvement in the design-around process.

Garmin responds that any information that Mr. Korte may have regarding his involvement in the design-around process is privileged and/or work product. Garmin argues that as Garmin's in-house counsel, discovery can be obtained from Mr. Korte only within the confines of the *Shelton* rule, which permits discovery from opposing counsel only if "'(1) no other means exist to obtain the information . . .; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case.'" *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 278 F.3d 621, 628 (6th Cir. 2002) (quoting *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986)). As to privilege, it is surely conceivable that Mr. Korte may possess relevant, non-privileged information:

> By definition . . . all "design-around" product development requires such consultations [with counsel]. The goal is to avoid litigation by developing a product that does not infringe upon the "designed-around" patent. A lawyer is integral to the process; but to characterize such interchanges as protected attorney-client communications or work product would pull both doctrines from their respective roots. Permitting the discovery Upjohn seeks would discourage neither prospective attorney-client communications nor attorney diligence, because the information would be generated (and therefore discoverable) regardless of the attorney's involvement. The trial and error testing of prospective formulations will always be integral to research and development. This aspect of the scientific method cannot be immune from discovery simply because an attorney was involved in the process.

*Upjohn Co. v. Mova Pharmaceutical Corp.*, 936 F. Supp. 55, 58 (D. Puerto Rico 1996). "Information relating to redesign efforts are not immune from discovery simply because an attorney was involved in the process." *Thermos Co. v. Starbucks Corp.*, No. 96-3833, 1998 WL 781120, at *5 (N.D. Ill. Nov. 3, 1998). Thus, Mr. Korte is not shielded by privilege merely by his role as counsel in the design around process.

The Court agrees with Garmin that the relevant date for the "hypothetical negotiation" is the date on which the alleged infringement occurred, not the date on which the alleged infringer created

a design around product. "[A] reasonable royalty must be based on the 'terms of a [hypothetical] licensing agreement reached . . . between the patentee and the infringer at the time infringement began.'" *Powell v. Home Depot USA, Inc.*, 663 F.3d 1221, 1238 (Fed. Cir. 2011) (quoting *Rite–Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995)). "'The key element in setting a reasonable royalty after determination of validity and infringement is the necessity for return to the date when the infringement began.'" *Id.* (quoting *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1158 (6th Cir. 1978)). Garmin fails to indicate, however, how the "timing" of the suppositious negotiation somehow disqualifies Mr. Korte from testifying or suggests that Mr. Bolton is uniquely able to assist the fact finder in this hypothetical inquiry.

Garmin presumably would seek to introduce the design around product in an effort to diminish the amount of any royalty that might be calculated based upon a hypothetical negotiation that would acknowledge (or refute) Garmin's ability to implement the noninfringing product. Relevant to the inquiry should it occur, among other things, will be Garmin's "ability, resources and desire" to design around the Visteon patents at the time of the alleged infringement. *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1373 (Fed. Cir. 2008). Mr. Bolton has testified that his only role in the design around process was to spend several hours modifying source code to achieve specific changes in the Garmin Nuvi 3750 that were dictated by Mr. Korte. Mr. Bolton never reviewed the patents in suit or the claims at issue. Mr. Korte appears to be the only other Garmin witness with knowledge regarding the design around process. In view of Mr. Bolton's pointed references to Mr. Korte throughout his deposition as the individual from whom he took direction, and further considering Mr. Bolton's testimony that he never reviewed the patent and had no knowledge of the claim(s) he was designing around, and given his testimony that he acted solely at

the direction of Sam Korte and that to his knowledge no one else from Garmin was involved in the design around process, it was reasonable for Magistrate Judge Randon to conclude that Mr. Korte might possess relevant, non-privileged information relating to the design around product and its potential for reducing the royalty in a hypothetical negotiation. To the extent that Visteon has questions that either were propounded to Mr. Bolton that he could not answer, or additional questions that Visteon did not propound to Mr. Bolton because of his inability to answer certain other questions, Visteon should be permitted to seek that discovery from Mr. Korte, within the confines of the *Shelton* rule.

The Court finds it not inconsequential that Mr. Korte was designated by Garmin as a 30(b)(6) witness on various topics long before the instant dispute regarding the design around process arose. Indeed, Mr. Korte's deposition was actually scheduled, but abruptly cancelled by Garmin. It is certainly possible that Mr. Korte may possess relevant, non-privileged information regarding the design around process that may be critical to Garmin's case, and which Garmin could not obtain from Mr. Bolton, the only other Garmin witness who appears to have knowledge on the subject. Whether certain inquiries will call for material that is privileged under the *Shelton* rule, the Court can only speculate at this point, as the questions have yet to be asked of Mr. Korte. Nor does the Court express any opinion regarding the admissibility of any of the proposed design around evidence.

The Court agrees with the Magistrate Judge's conclusion, which is not clearly erroneous or contrary to law, that Mr. Korte's deposition should go forward and that, as necessary, he should be instructed not to answer to the extent that Garmin is prepared to establish that the matters inquired into are legitimately the subject of privilege, given Mr. Korte's admitted role in the design around

process.

## IV. CONCLUSION

For the foregoing reasons, the Court AFFIRMS Magistrate Judge Randon's May 24, 2012 Order.

IT IS SO ORDERED.

Paul D. Borman
United States District Judge

Dated: 10-12-12