**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **VISTEON GLOBAL TECHNOLOGIES, INC. AND VISTEON TECHNOLOGIES, LLC** | ) ) ) ) | |
| **Plaintiffs,** | ) ) | Civil Action No. 2:10-cv-10578-PDB-MAR |
| **v.** | ) ) | |
| **GARMIN INTERNATIONAL, INC.** | ) ) | |
| **Defendant** | ) | |

**SPECIAL MASTER'S REPORT AND RECOMMENDATIONS**
**RELATING TO THE PARTIES' MOTIONS FOR PARTIAL SUMMARY JUDGMENT**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **VISTEON GLOBAL TECHNOLOGIES, INC. AND VISTEON TECHNOLOGIES, LLC** | ) ) ) ) | |
| **Plaintiffs,** | ) ) | Civil Action No. 2:10-cv-10578-PDB-MAR |
| **v.** | ) ) | |
| **GARMIN INTERNATIONAL, INC.** | ) ) | |
| **Defendant** | ) | |

## TABLE OF CONTENTS

INTRODUCTION ………………………………………………………………………..1

VISTEON'S MOTION RELATING TO THE '408 PATENT ....................................................2

    LEGAL STANDARDS ...........................................................................................................2

        Summary Judgment ..............................................................................................2

        Infringement..........................................................................................................3

    VISTEON'S OPENING POSITION ....................................................................................4

        Garmin and its Customers Directly Infringe Claims 4 and 5 of the '408 Patent .....4

        The nüvi 3750 was Designed to Infringe the '408 Patent............................4

        Garmin's Infringement Witness Does Not Dispute that the nüvi 3750 Includes the Accused Features..................................................................................7

        Garmin Actively Induces Infringement of Method Claims 1, 4, and 5 of the '408 Patent ........................................................................................................ 10

    GARMIN'S OPPOSITION ............................................................................................11

Visteon Has Failed To Present Even A Prima Facie Level Of Proof ...................12

Even Visteon's Conclusory Charts Do Not Demonstrate Infringement of the '408 Claims.................................................................................................14

Visteon Fails to Demonstrate Selection of A Second Destination ...........14

Visteon Alters The Plain Claim Language And Takes The Specification Out Of Context.........................................................................................................15

Visteon Cannot Use Case Law To Rewrite "First" And "Second" .......................18

Visteon's Motion Also Fails to Make Out A Prima Facie Case Of Induced Infringement For Method Claims 1, 4, and 5.........................................................19

VISTEON'S REPLY ......................................................................................................20

The Court Should Grant Visteon's Motion on Infringement of the '408 Patent.....................................................................................................................20

Direct Infringement....................................................................................20

Induced Infringement.................................................................................22

ADDITIONAL ARGUMENTS BASED ON THE REEXAMINATION RECORD .......22

Arguments Relating to Claim Construction Issues..................................................22

Claim Construction Issue Raised in the original MSJ Briefings ...............22

Visteon's Arguments ............................................................................22

Garmin's Arguments.............................................................................23

New Claim Construction Issue ...................................................................25

Garmin's Position .................................................................................26

Visteon's Response...............................................................................27

SPECIAL MASTER'S ANALYSIS AND RECOMMENDATIONS ..............................29

Claim Construction Issues .......................................................................................29

Do the method steps of Claim 1 of the '408 patent require the selection of two destinations?................................................................30

Do the terms "displaying a first list of destinations" and
"displaying a second list of destinations" in Claim 1 require
that all destinations within the selected category be displayed?.............34

Direct Infringement.........................................................................36

Evidence relating to use of Garmin devices by its employees.........................36

Evidence of use of Garmin devices by a customer ...........................................44

Conclusion and recommendation relating to evidence of direct infringement 47

Inducing Infringement ........................................................................47

Visteon's Position ...................................................................48

Garmin's Position ...................................................................48

Special Master's Conclusions ................................................................50

The Guiding Legal Principles ..................................................................51

The Summary Judgment Evidence on the Issue ........................................52

VISTEON'S MOTION SEEKING DISMISSAL OF GARMIN'S § 112 DEFENSES
AS TO THE '357 AND '060 PATENTS .........................................................53

VISTEON'S OPENING POSITION ..........................................................53

Patents are Presumed Valid by Statute ..................................................53

Enablement and Written Description.................................................53

Enablement ..........................................................................54

Written Description.................................................................55

Garmin's Enablement and Written Description Arguments................................56

Enablement and Written Description of the '375 Patent ...........................56

Enablement and Written Description of the '060 Patent ...........................57

Garmin's Enablement Defenses are Fatally Flawed...............................58

Garmin's Written Description Defenses Also Fail .................................................61

GARMIN'S OPPOSITION .....................................................................................61

Visteon Has Manipulated The Scope Of The Claims Beyond Their Support .......62

The '060 Patent ................................................................................62

The '375 Patent ................................................................................63

Visteon Badly Misconstrues Garmin's Defenses ...................................................64

Visteon's Attack On Dr. Michalson's Report Is Wrong Both Legally
And Factually ..............................................................................................67

VISTEON'S REPLY .............................................................................................68

SPECIAL MASTER'S ANALYSIS AND RECOMMENDATIONS ...........................71

GARMIN'S MOTION FOR NON-INFRINGEMENT OF '375 AND '892 AND FOR
INVALIDITY OF '892 UNDER § 112 ......................................................................78

THE MOTION AS TO THE '357 PATENT ..............................................................78

GARMIN'S ARGUMENT IN SUPPORT ..................................................................78

VISTEON'S RESPONSE ......................................................................................80

GARMIN'S REPLY ...............................................................................................83

SPECIAL MASTER'S ANALYSIS AND RECOMMENDATIONS
RELATING TO THE '375 PATENT .........................................................................84

THE MOTION AS TO THE '892 PATENT ..............................................................89

GARMIN'S OPENING POSITIONS ON NON-INFRINGEMENT AND
LACK OF WRITTEN DESCRIPTION......................................................................89

The '892 Patent:  On the Fly Direction Computation ...........................................89

Garmin's Products Compute All Directions of Advance Up Front,
Not On-the-Fly.........................................................................................91

Users of the Accused Garmin Products Cannot Predetermine a Time or
Distance At Which Directions of Advance Are Computed ...................................91

Continuously Computing Directions of Advance Lacks Written Description ......92

VISTEON RESPONSE TO BOTH OF GARMIN'S DEFENSES....................................94

    Infringement..............................................................................................................94

        The Accused Products Infringe the '892 Patent ........................................94

        The Accused Products Compute "On the Fly" ..........................................96

        The Special Master Did Not Reject Visteon's Theory of Infringement ....98

    Written Description.................................................................................................100

        Applicable Law .......................................................................................100

        Garmin has Failed to Carry its Burden with Respect to its '892
        Written Description Defense....................................................................100

GARMIN'S REPLY ..................................................................................................102

SPECIAL MASTER'S ANALYSIS AND RECOMMENDATIONS ............................104

    Garmin's New Claim Construction Arguments in Support of its
    Non-Infringement Defense ...................................................................................104

    Garmin's Non-Infringement Defense ...................................................................106

    Garmin's Lack of Written Description Defense ...................................................108

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| VISTEON GLOBAL TECHNOLOGIES, INC. AND VISTEON TECHNOLOGIES, LLC | ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 2:10-cv-10578—PDB-MAR |
| v. | ) ) | |
| GARMIN INTERNATIONAL, INC. | ) ) | |
| Defendant | ) | |

## SPECIAL MASTER'S REPORT AND RECOMMENDATIONS
## RELATING TO THE PARTIES' MOTIONS FOR PARTIAL SUMMARY JUDGMENT

This patent infringement action is now before the Court on the following motions for partial summary judgment:

1. Plaintiffs' Visteon Global Technologies, Inc. and Visteon Technologies, LLC (collectively, "Plaintiffs" or "Visteon") revised Motion for Partial Summary Judgment seeking a finding that Garmin International, Inc. ("Garmin") is liable for infringement of Claims 4 and 5 (dependent on Claim 1) of U.S. Patent No. 5,832,408 ("the '408 patent") under 35 US.C. §§ 271(a) [direct infringement] and 271(b) [inducing infringement]. The original Motion also included claims of infringement of (1) Claims 1-3, cancelled in reexamination, and (2) Claim 6, which was amended during reexamination and withdrawn from the MSJ by Visteon.

2.  Visteon's Motion for Partial Summary Judgment that Garmin cannot meet its clear and convincing burden to prove that the asserted claims of U.S. Patent Nos. 5,987,375 ("the '375 patent") and 5,544,060 ("the '060 patent") are not enabled or fail to meet the written description requirement of 35 U.S.C. § 112.

3.  Garmin's motion for an Order granting summary judgment of no infringement for the asserted claims of the '375 Patent, and U.S. Patent No. 5,654,892 ("the '892 Patent"). Garmin further moves this Court for an Order granting summary judgment of invalidity for the asserted claims of the '892 Patent as lacking written description support, pursuant to 35 U.S.C. § 112, ¶ 1.

Each of the foregoing motions will be addressed separately. The Report includes a recitation of the parties' arguments, followed by the Special Master's analysis and recommendations.

## **VISTEON'S MOTION RELATING TO THE '408 PATENT**

## **LEGAL STANDARDS**

### **Summary Judgment**

Law on this issue as stated by Visteon :

A motion for summary judgment is granted under Fed. R. Civ. P. 56(c) when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law.  Summary judgment is also proper where the moving party shows that the non-moving party is unable to meet its burden of

> proof. *Celotex Corp v. Catrett*, 477 U.S. 317, 326, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Facts and inferences must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 600, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). However, the non-moving party must present "specific facts showing that there is a genuine issue for trial" that demonstrates that there is more than "some metaphysical doubt as to the material facts." *Moore v. Philip Morris Co., Inc.,* 8 F.3d 335, 339-40 (6th Cir. 1993) (internal citations omitted). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

*Morris v. Correctional Medical Services, Inc.*, 2012 U.S. Dist. LEXIS 165424, at *2-3 (E.D.

Mich. Nov. 20, 2012).

> Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). . . . If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," will mandate the entry of summary judgment. *Celotex*, 477 U.S. at 322-23. The non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). The rule requires the non-moving party to introduce "evidence of evidentiary quality" demonstrating the existence of a material fact. *Bailey v. Floyd County Bd. of Educ*., 106 F.3d 135, 145 (6th Cir. 1997); *see Anderson*, 477 U.S. at 252 (holding that the non-moving party must produce more than a scintilla of evidence to survive summary judgment).

*Flowers v. IDS Prop. Cas. Ins. Co.*, 2012 U.S. Dist. LEXIS 167307, at *8-10 (E.D. Mich.

Nov. 26, 2012).

**Infringement**

Again, the controlling law as stated by Visteon:

Whoever without authority makes, uses, offers to sell, or sells any patented invention within the United States infringes the patent.  35 U.S.C. § 271(a).  Direct infringement under § 271(a) requires a party to perform or use each and every step or element of a claimed method or product.  *BMC Resources, Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1378-79 (Fed. Cir. 2007).  Further, whoever actively induces infringement of a patent shall be liable as an infringer.  35 U.S.C. § 271(b).  Induced infringement under § 271(b) requires that the accused infringer knowingly induced infringement and possessed specific intent to encourage another's infringement.  *See Akamai Techs. v. Limelight Networks, Inc.*, 692 F.3d 1301, 1308 (Fed. Cir. 2012) (citing *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006)).

## VISTEON'S OPENING POSITION

Visteon's arguments in support of its motion, taken directly from its brief, but edited to eliminate the arguments relating to Claims 1-3 and 6, are as follows:

### Garmin and its Customers Directly Infringe Claims 4 and 5 of the '408 Patent

### The nüvi 3750 was Designed to Infringe the '408 Patent

[Although Claims 1 and 6 are no longer in the case, Visteon's discussion of these claims is included below to give the Court the background information necessary to better understand asserted Claims 4 and 5.]

Claim 6 is directed to a vehicle navigation system that allows a user to select a desired destination using one of two searching mechanisms: (1) a search by category (here, Points of Interest, or POIs); and (2) a search by name (collectively, the "accused features").  Claims 1, 4, and 5 of the '408 patent cover methods for using the vehicle navigation system of Claim 6.  Under each of the claims, "where [a user causes] a selection signal correspond[ing] to category [to be] generated," the system "display[s] a first list of destinations corresponding to the first category," thus enabling the user to select "a first destination from the first list."  Additionally,

"where [a user causes] an alphanumeric input signal [to be] received via the alphanumeric input means," the system "display[s] a second list of destinations corresponding to the alphanumeric input signal," thus enabling the user to select "a second destination from the second list."

The claim charts provided in Dr. Anatole Lokshin's expert report on infringement show that the accused devices satisfy each of the elements of Claim 6. *See* Decl. of Anatole Lokshin, Exh. E at Infringement Report: 122-24. Likewise, Dr. Lokshin shows how when using the accused devices, the steps of Claims 1, 4, and 5 are satisfied. *Id.* at 76-86. The elements of Claim 6 are satisfied, in short, because the nüvi 3750: "display[s] a first list of destinations corresponding to a first category," "select[s] a first destination from the first list," "display[s] a second list of destinations corresponding to an alphanumeric input signal," and "select[s] a second destination from the second list." By the same token, the elements of Claim 1 [important because the claims still in suit, Claims 4 and 5, are dependent on Claim 1] are satisfied when a user uses the nüvi 3750 as described. For Claim 4, no further user action is needed (other than those described for Claim 1) because the step of "displaying the plurality of categories of destinations with an additional selection" is automatically performed by the nüvi 3750. *Id.* at 80, 85. For Claim 5, the same is true because the step of "displaying an alphanumeric input screen" is performed by the nüvi 3750 in response to the act of choosing to enter the name of a destination described above for Claim 1. *Id.* at 80, 85. Garmin cannot and does not deny that its devices include these prominent search and select mechanisms. Therefore, use of the accused devices by consumers infringes Claims 1, 4, and 5, and Garmin's manufacture and sale of the accused devices infringe Claim 6.

Garmin admits the accused devices are designed to enable the user to search for a destination by category and by name. *See* Garmin's Responses to Visteon's Second Set of

Requests for Admission, Exh. F at Nos. 202, 204; nüvi 3700 Series Owner's Manual, Exh. G at 6. Further, Garmin's employees and its customers have used the accused devices to select a destination via the accused features. During the deposition of Garmin employee Rachel Jones, Ms. Jones testified that Garmin loaned Ms. Jones a nüvi 2455 and nüvi 2585 for purposes of testing the devices and providing feedback to Garmin. *See* Jones Dep. Tr., Exh. H at 33:18-34:15. In testing the accused devices on behalf of Garmin, Ms. Jones testified that she used the accused "search by category" feature to find a destination corresponding to the "food" (restaurants) category and the accused "search by name" feature to find a destination corresponding to the name "Walmart." *See Id.* at 36:12-37:8; 37:15-22. Other Garmin employees, including Kevin Rauckman, Ryan Moore, and J.D. Krull, have also testified to using the same accused features of the accused devices on behalf of Garmin. *See*, *e.g.*, Rauckman Dep. Tr., Exh. I at 157:21-158:13; Moore Dep. Tr., Exh. J at 107:17-108:4; Krull Dep. Tr., Exh. K at 251:18-252:4. Likewise, a customer of Garmin also testified that she used the same accused features of her Garmin device. *See* Rens Decl., Exh. L at ¶¶ 13-14; Rens Dep. Tr., Exh. M at 78:20-80:23. Garmin and its customers, therefore, directly infringe Claims 1 and 6 of the '408 patent.

Claim 4 is dependent on Claim 1, and further requires the step of displaying the plurality of, *i.e.,* more than one, categories of destinations with an additional selection option, which facilitates electronically searching for a destination across the plurality of categories. Claim 5 is dependent on Claim 4, and further requires "the step of displaying an alphanumeric input screen in response to a fourth selection signal generated by the selection control, the fourth selection signal corresponding to selection of the additional selection option." Thus, Claim 5 requires that when the user selects the "additional selection option" described in Claim 4 to enter the name of

a destination from a display screen showing categories of destinations, the navigation system generates a selection signal corresponding to the user's selection and, in response thereto, displays a depiction of the alphanumeric keyboard.

This is precisely how the "search by name" feature is implemented in the nüvi 3750, as illustrated by the following screenshots included in Dr. Lokshin's Infringement Report:



*See* Exh. E at 80, 85-86.   Specifically, the nüvi 3750 displays several POI destination categories with a "Spell Name" selection option that allows the user to search for a POI destination across more than one category of destinations (*e.g.*, "Food and Drink," "Fuel," etc.) as described above for Claim 1.  *See Id.* at 80, 85.  When the "Spell Name" option is selected, the nüvi 3750 displays the alphanumeric keyboard.  Since using this "Spell Name" selection option is the <u>sole</u> means for searching for a destination by name in the nüvi 3750, Garmin and its customers directly infringe Claims 4 and 5 of the '408 patent when the destination searching functions are employed by the same actions discussed above for Claim 1.

**Garmin's Infringement Witness Does Not Dispute that the nüvi 3750 Includes the Accused Features**

Garmin's sole infringement witness, John Lavrakas, agrees that the accused devices allow a user to search by both name and by category.  *See* Lavrakas Dep. Tr., Exh. N at 67:19-68:8 (search by category); 73:22-74:6 (search by name); 76:17-25 (searching by name across many categories).  The only rebuttal to the above assertions of infringement (as set forth in the

Expert Report of Dr. Lokshin) is Mr. Lavrakas's erroneous conclusion that the destinations selected under the accused features described in independent Claims 1 and 6 must "co-exist." *See* Lavrakas Noninfringement Report, Exh. O at 92-93.

Mr. Lavrakas's requirement for co-existence appears to be based on the claim term "and" that separates the two claim limitations that describe the searching mechanisms, to wit, searching by category and searching by name, (Claim 1) and on the terms "first list" and "second list" describing the lists resulting from each search mechanism (Claims 1 and 6). *See* Exh. N at 59:9-14, 85:13-22; Exh. O at 92-93. Mr. Lavrakas's conclusions, and Garmin's noninfringement defenses based on them, are simply obtuse. The plain wording of Claims 1 and 6 is clear; both require that the system be able to set a destination by one of two methods. Claim 1 states "<u>where</u> a first selection signal corresponding to a first category is generated by the selection control," the system allows the selection of the destination by category; and "<u>where</u> an alphanumeric input signal is received via the alphanumeric input means," the system allows the selection of the destination by name. (Emphasis added.) As to Claim 6, to infringe, a device must be "capable" of both ways of selecting a destination.

Through Mr. Lavrakas, Garmin is attempting to read the claim as requiring the selection of <u>two</u> destinations, one by category and then another by name in the same route sequence. To do so is nonsensical in light of the claim language. It is also contrary to the '408 patent's specification. Clearly, the wording of the claims contradicts Garmin's position. *See, e.g., 3M Innovative Props. Co. v. Avery Dennison Corp.*, 350 F.3d 1365, 1371 (Fed Cir. 2003) (use of the terms "first" and "second" is common patent-law convention to distinguish repeated instances of an element and should not necessarily be interpreted to impose a serial or temporal limitation on the claims). So, too, does the '408 patent specification in describing a preferred embodiment.

*See* '408 patent, Dkt. No. 1-6 at 2:17-30 ("[W]here a first selection signal corresponding to a first category is generated by the selection control, the display presents a first list of destinations corresponding to the first category.  A first destination may then be selected…  Alternatively, a second destination corresponding to an alphanumeric input may be found and selected…") (italics added).

The flowchart of Figure 7 of the '408 patent, particularly at step 708, squarely illustrates this point (by reference to the narrowest dependent claim, Claim 5):



Dkt. No. 1-6 at Fig. 7.  As the '408 patent explains, where "a selection signal is received (step 706) and the selection signal corresponds to the global search option (step 708), the system presents an alphanumeric input screen."  *Id.* at 6:20-25.  Where "the global search option is not selected at step 708, a list of destinations corresponding to the selected category is displayed (step 718) from which the user may name a selection."  *Id.* at 6:30-33.  Obviously, step 708 is a

proverbial "fork-in-the-road;" to wit, depending on whether the question posed is answered "yes" or "no," divergent paths stem from step 708. These divergent paths prove that both search mechanisms, while both being enabled, are not both performed in a given search sequence.

Thus, Garmin's noninfringement defense is based on a contorted construction of the claim language that *excludes a preferred embodiment of the '408* patent invention, something the Federal Circuit has repeatedly stated is improper. *Mems Tech. Berhad v. ITC*, 447 Fed. Appx. 142, 150 (Fed. Cir. 2011) ("[A] construction that excludes a preferred embodiment is rarely, if ever, correct.") (emphasis added); *Helmsderfer v. Bobrick Washroom Equip., Inc.*, 527 F.3d 1379, 1383 (Fed. Cir. 2008); *Primos Inc. v. Hunter's Specialties Inc.*, 451 F.3d 841, 848 (Fed. Cir. 2006). Because Garmin's defense is based on an improper reading of the '408 claims, Visteon is entitled to summary judgment that Garmin and its customers have directly infringed Claims 4 and 5 of the '408 patent.

### Garmin Actively Induces Infringement of Method Claims 1, 4, and 5 of the '408 Patent

[Visteon's arguments in reliance on Garmin's responses to certain Request for Admissions that have been withdrawn, have been deleted]

The Owner's Manual instructs Garmin's customers how to use features of the nüvi 3750, and that page 6 of the Manual describes both the accused features. The Owner's Manual is publicly distributed to purchasers of the nüvi 3750 and is also publicly available for download on Garmin's website. Further, a condensed Quick Start Manual is provided by Garmin to its customers with the purchase of the nüvi 3750. Exh. R ("What's in the Box"). The Quick Start Manual includes the same exact instructions for use of the accused features as provided on page 6 of the Owner's Manual. *See* nüvi 3700 Series Quick Start Manual, Exh. S at 5. The Quick

Start Manual [advises] users of the nüvi 3750 to contact Garmin directly (via its website or by phone) if they have any questions. *See Id.* at 12. From there, Garmin directly instructs its customers on how to use the accused features. *See* Wiegers Dep. Tr., Exh. T at 99:23-102:23.

As illustrated above, use of the accused features by Garmin and its employees constitute direct infringement of the '408 patent. Garmin has had knowledge of the '408 patent since at least May 6, 2009, when Visteon notified Garmin of its infringement of the patents-in-suit. *See* 5/6/2009 Notice of Infringement Letter, Exh. U. In light of (1) the direct infringement by Garmin's employees and customers, (2) Garmin's knowledge of the patent and the assertions of infringement by the accused functionalities of the nüvi 3750, (3) [admission argument eliminated] and (4) Garmin's specific acts of encouragement to use the accused functionalities, Garmin has induced infringement of Claim 1 of the '408 patent. As Claims 4 and 5 describe the only method for implementing the accused search by name function in the nüvi 3750, Garmin likewise induces infringement of Claims 4 and 5 of the '408 patent. Therefore, Garmin is liable for inducement of infringement of the '408 patent under 35 U.S.C. § 271(b).

## **GARMIN'S OPPOSITION**

Garmin's position, as stated in its brief in support of its opposition to the motion, is, in relevant parts, restated as follows:

Visteon's motion for summary judgment of infringement fails on numerous levels. First, Visteon moves for summary judgment on an issue on which it bears the burden of proof, yet offers virtually no evidence of infringement whatsoever—Visteon only submits a conclusory expert opinion, devoid of factual underpinnings. This significant break from summary judgment protocol makes it virtually impossible for Garmin to substantively respond given that there are

no facts at all, much less facts to controvert.  Second, even Visteon's factually unsupported and conclusory expert opinion does not align with the claim requirements as actually written. Accordingly, Visteon's motion for partial summary judgment as to the '408 patent should be denied.

### Visteon Has Failed To Present Even A Prima Facie Level Of Proof

Visteon requests an affirmative judgment that Garmin's products literally infringe claims 1, 4, 5, and 6 of the '408 patent.  "Infringement, however, is a question of fact . . . that a court is not to resolve on summary judgment unless no genuine factual issue remains."  *Beckson Marine, Inc. v. NFM, Inc.*, 292 F.3d 718, 722 (Fed. Cir. 2002); *see also Amhil Enterprises Ltd. v. Wawa, Inc.*, 81 F.3d 1554, 1557 (Fed. Cir. 1996) ("A district court should approach a motion for summary judgment on the fact issue of infringement with great care.").  "To establish literal infringement, <u>every</u> limitation set forth in a claim must be found in an accused product, <u>exactly</u>." *Southwall Technologies, Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995) (emphasis added).  And where, as here, "a patentee with the burden of proof seeks summary judgment of infringement, it must make a prima facie showing of infringement as to each accused device before the burden shifts to the accused infringer to offer contrary evidence."  *L & W, Inc. v. Shertech, Inc.*, 471 F.3d 1311, 1318 (Fed. Cir. 2006); *see also* 11 James Wm. Moore, Moore's Federal Practice § 56.13[1] (3d ed. 2009) ("[I]f the movant has the burden of persuasion on an issue, the movant must make a stronger claim to summary judgment by introducing supporting evidence that would conclusively establish movant's right to a judgment after trial . . . .").

Yet *here*, Visteon attempts to satisfy its heavy burden through a <u>single</u> conclusory sentence as to claim 6 and a <u>single</u> conclusory sentence as to claims 1, 4, and 5, both of which

conclusorily cite to a series of claim charts in an expert report.  *See* Br. at 12 ("The claim charts provided in Dr. Anatole Lokshin's expert report on infringement show that the accused devices satisfy each of the elements of claim 6.").  This is a far cry from being sufficient to discharge Visteon's burden.  *See*, *e.g.*, *Globespanvirata, Inc. v. Texas Instruments, Inc*, No. 03-2854-GEB, 2005 WL 3077915, at *23 (D.N.J. Nov. 15, 2005) ("In their moving brief, [the patentees] fail to address each and every limitation that exist in claims 15-21. In one paragraph, Defendants attempt to prove infringement of six method claims, consisting of approximately eighteen claim limitations. Defendants provide a conclusory statement that "Globespan's ADSL Products practice each and every element of the methods claimed by claims 15 through 21 of the '604 Patent.  This is not enough to warrant summary judgment.").

An expert's claim charts could hypothetically provide factual support to support a prima facie summary judgment showing.  But in a problem that has extended to the beginning of this case, Visteon's claim charts do not even define a comprehensible infringement theory, much less factually support such a theory. The charts on which Visteon now relies for summary judgment do not set forth specific facts, admissions, or deposition testimony from fact witnesses.  Further, the charts do not even explain how the various product screenshots and unsupported narratives meet the various claim limitations.  Visteon's approach does not comport with Rule 56 and is not even close to providing a sufficient factual foundation to support the finding Visteon seeks.  *See Intell. Sci. and Tech., Inc. v. Sony Electronics, Inc.,* 589 F.3d 1179, 1183-84 (Fed. Cir. 2009) ("To satisfy the summary judgment standard, a patentee's expert must set forth the factual foundation for his infringement opinion in sufficient detail for the court to be certain that features of the accused product would support a finding of infringement under the claim construction adopted by the court, with all reasonable inferences drawn in favor of the non-movant.")

(applying Sixth Circuit law).  It is very difficult for Garmin—nor is it this Court's job – to unravel the vague conclusions in Visteon's expert's claim chart to determine how Visteon is specifically contending each claim limitation is met and what evidence it believes supports such contentions.  *See Schumer v. Lab. Computer Sys., Inc.*, 308 F.3d 1304, 1316 (Fed. Cir. 2002) ("It is not our task, nor is it the task of the district court, to attempt to interpret confusing or general testimony to determine whether a [claim] has been made out, particularly at the summary judgment stage.").  While not providing specific opinion as to whether each and every claim element is present exactly, Dr. Lokshin does offer an ultimate opinion that there is infringement.  *See*, *e.g.*, Dkt. No. 157-7 at 76 & 122.  Not surprisingly, however, a Garmin expert witness, John Lavrakas, disputes this ultimate opinion.  *See* Ex. C, Lavrakas Declaration at ¶¶ 17-18; *see also Id.* at Ex. 1 (Lavrakas Expert Report) at 89-94.  With the complete absence of specific factual support for Visteon's motion, little more need be said to justify denying Visteon's motion.

### Even Visteon's Conclusory Charts Do Not Demonstrate Infringement of the '408 Claims

#### Visteon Fails to Demonstrate Selection of A Second Destination

Tellingly absent from Dr. Lokshin's conclusory claim charts in this case is any opinion as to how a "second destination" is selected from a "second list" in the Garmin devices.  *See* Dkt. No. 157-7 at 80 & 123.  Instead, for these claim elements, Dr. Lokshin merely states that the device "<u>also</u> enables the user to search for a destination by alphanumeric input" (*Id.* at 80) and that the device "<u>may also</u> display a list of destinations corresponding to an alphanumeric input . . . ." (*Id.* at 123).  Dr. Lokshin attempts to identify two independent "halves" of a single claim, but offers no opinion as to how the <u>whole</u> claim is satisfied, including how any "second destination" whatsoever is selected.  This is fatal to his analysis as he has not shown how each and every

element is satisfied.  *See*, *e.g.*, *Mirror Worlds, LLC v. Apple Inc.*, 692 F.3d 1351, 1360 (Fed. Cir. 2012) (performance of claimed steps "in isolation" but not "together" cannot support infringement). Garmin's expert has pointed out repeatedly that a person of ordinary skill in the art would not understand Dr. Loksin's "may also" approach to meet the claims' requirement that a "second destination" be selected from a "second list."  *See* Ex. C, Lavrakas Dec. ¶¶ 17-18; *see also Id.* at Ex. 1 (Lavrakas Expert Report) at 89-94.  Yet Visteon has never identified any evidence to suggest the Garmin devices are capable of making this "second destination" selection.  Because Visteon has failed to show infringement of each and every element, at a minimum, Visteon's motion should be denied.

**Visteon Alters The Plain Claim Language And Takes The Specification Out Of Context**

Visteon knows it is exposed on its failure to identify a "second destination" selection in the Garmin devices and so offers a series of contorted arguments to justify not applying the plain claim language.  Visteon goes so far as to contend that Garmin's suggestion that the claim language be applied as written is "nonsensical" and "contrary to the '408 patent's specification." Br. at 16.  The opposite is true.

First, claims 1 and 6, by simple English, both require that a first destination <u>and</u> a second destination must be selected.  Specifically, claim 6 requires a navigation system that is "operable to:"

<u>display a first list of destinations</u> corresponding to a first category . . . ,

<u>select a first destination from the first</u> list in response to [a] second selection signal generated by the selection control;

15

> display a second list of destinations corresponding to an alphanumeric input signal . . . ; and
>
> select a second destination from the second list in response to a third selection signal generated by the selection control.

Claim 1 is similarly straightforward:

> displaying a first list of destinations corresponding to the first category; and
>
> selecting a first destination from the first list in response to a second selection signal generated by the selection control; and . . .
>
> displaying a second list of destinations . . . and
>
> selecting a second destination from the second list in response to a third selection signal generated by the selection control.

Each claim, on its face, requires the selection of two destinations as part of the claimed method or series of operable steps.

The description of the inventions in the '408 patent paints a consistent picture. Visteon focuses on Figure 7 in advancing its argument. *See* Br. at 17. Figure 7 is certainly part of the story, but it is important to understand the full context of the '408 patent. Starting with the Abstract, we see that the purpose of the '408 patent is more than simply selecting destinations. The destination selections in the '408 patent are made with a purpose – to assemble a list of pre-selected destinations for ease of later access. The Abstract introduces this concept:

A first destination is selected from a primary list of destinations in response to a selection signal generated by the selection control. The first destination is placed on a secondary list of destinations in response to its selection. The secondary list includes previously selected destinations from the primary list.('408 Patent, Abstract) (emphasis added).

One can see the secondary list depicted in Figure 4, as the user selects destinations, the destinations are placed at the top of the list in italics for ease of later

access.  As summarized in the Background of the '408 patent, "[a] vehicle navigation system is therefore desirable which allows a user to select from a **plurality** of previously selected destinations."  '408 patent, col. 1, ll. 49-51.  This concept of selecting from a plurality of previously selected destinations was apparently important to the inventors. The inventors indicated they were aware that "[i]n some currently available vehicle navigation systems, attempts have been made to avoid [ ] inefficiency by making it easier for a user to select a previously selected destination."  '408 patent, col. 1, ll. 33-36. Apparently because of the increasing complexity of "some large metropolitan areas," the inventors wanted to provide a solution that allows a user to select from a **plurality** of previously selected destinations."

Moving beyond the purpose of the '408 patent and getting into the operational details, the patent consistently shows the concept of selecting a plurality of destinations.  Starting with Figure 5, the patent provides a "flowchart illustrating a portion of the destination selection process."  '408 patent, col. 5, ll. 29-30.  The sequence at 508-512 is informative:  (1) select a destination; (2) store it as part of a destination history list; and (3) **"proceed with destination selection."**  A destination is selected and then you proceed with destination selection, i.e., selecting one destination is not the end of the process.  Figure 7 is another flowchart illustrating the same concept.  Visteon is correct, for what it's worth, that step 708 provides a "fork-in-the-road" depending on whether the user has selected the "global search" or the single category list option.  But, the most important part of Figure 7 for purposes of the present discussion is step 720 – after a destination is selected in 716, 720 indicates the device is to "Proceed with destination selection", or as described in narrative form "the destination selection process continues."  '408 patent, col. 6, l. 30.  So, once again, after one destination is selected, the

"destination selection process continues."  One destination is not enough.  This, of course, brings us back to the claims—each of which as described above requires the selection of two destinations as part of the claimed method.

Visteon's efforts to remove the selection of a "second destination" from the claims ignores not only the claim language itself but also the '408 patent description, which consistently describes a method that involves the selection of more than one destination.  Not even Visteon's conclusory claim charts suggest that Garmin's products satisfy this claim requirement.[1]

### Visteon Cannot Use Case Law To Rewrite "First" And "Second"

Visteon also relies on *3M Innovative Props. Co. v. Avery Dennison Corp.*, 350 F.3d 1365, 1371 (Fed. Cir. 2003), to argue that the use of "first" and "second" in the '408 claims does not require a sequential limitation.  *See* Br. at 16. Visteon misapplies this precedent.  This case and similar cases hold that the use of "first" and "second" in patent claims does not necessarily require a specific ordering of the elements.  *See 3M Innovative*, 350 F.3d at 1371-73 (holding that a "first" and "second" embossed pattern could be created simultaneously in one step, so long as two separate embossed patterns were created).  Under this line of cases, distinct "first" and "second" elements must still exist in the accused product, but their order does not matter.  *Id.*; *see also Gillette Co. v. Energizer Holdings, Inc.*, 405 F.3d 1367, 1373, 74 U.S.P.Q.2d 1586 (Fed. Cir. 2005) ("[T]he 'first,' 'second,' and 'third' blades need not necessarily appear in that order or necessarily limit the blade unit to only three blades. Instead, these ordinal terms designate different blades within the 'unit' according to their location and elevation.").  Garmin has never

---

[1] Visteon also asserts that "Garmin and its customers" have "used the accused features" and cites to a series of deposition transcripts.  *See* Br. at 13-14.  But Visteon relies on the same flawed theory, which omits the requirement of a "second destination."  None of the cited testimony ever refers to using the features to select both a first and a second destination.  *See id.*

contended that order matters.  The point is that, regardless of order, Visteon has not even suggested that two destinations are selected as part of any method in the Garmin products. Accordingly, Visteon's motion for partial summary judgment of infringement of claims 1, 4, 5, and 6 should be denied.

### Visteon's Motion Also Fails to Make Out A Prima Facie Case Of Induced Infringement For Method Claims 1, 4, and 5

Finally, Visteon seeks summary judgment that Garmin is liable for inducing infringement under 35 U.S.C. § 271(b) as to method claims 1, 4, and 5.  *See* Br. at 18.  But while Visteon acknowledges that "specific intent" to cause infringement is required to prove induced infringement (*see Id.* at 12 (citing *Akamai Techs. V. Limelight Networks, Inc.*, 692 F.3d 1301, 1308 (Fed. Cir. 2012)), Visteon's motion is <u>entirely silent</u> as to this element.  Visteon fails to come forward with <u>any</u> evidence whatsoever as to how this element is met.[2]   Visteon does not even come close to establishing the absence of a triable fact as to this highly factual element of specific intent.  *See, e.g.*, *Illinois Tool Works, Inc. v. MOC Products Co.*, 856 F. Supp. 2d 1156, 1166 (S.D. Cal. 2012) ("Because the Court finds that there is a genuine issue of fact as to the knowledge element, however, summary judgment as to the inducement of infringement claim is not appropriate.")

Visteon broadly suggests that it provided Garmin with knowledge of the '408 patent in a letter, and that Garmin had knowledge that users searched for POIs by name and by category as described in product manuals.  *See* Br. at 18-19.  But the law is clear that the specific intent

---

[2] Visteon suggests that Garmin ignored Visteon's Request for Admission No. 43 and therefore admitted that Garmin "induces users of the Representative product to use the 'Finding a Location by Spelling the Name' functionality as described on page 6 of the Manual."  Br. at 18.  Garmin made no such admission.  First, Visteon misquotes this request as it did not ask about whether Garmin "induces" anything.  Second, Garmin merely stated that it would expect users would use the "Finding a Location By Spelling A Name" functionality and denied the remainder of the request.

element requires more than mere knowledge of the patent and acts alleged to infringe:

> To establish liability under § 271(b), a patent holder must prove that once the defendants knew of the patent, they actively and knowingly aided and abetted another's direct infringement. However, knowledge of the acts alleged to constitute infringement is not enough. The mere knowledge of possible infringement by others does not amount to inducement; specific intent and action to induce infringement must be proven.

*DSU Med. Corp. v. JMS Co.*, Ltd., 471 F.3d 1293, 1305 (Fed. Cir. 2006) (en banc).  That is, "[t]he specific intent necessary to induce infringement 'requires more than just intent to cause the acts that produce direct infringement. Beyond that threshold knowledge, the inducer must have an affirmative intent to cause direct infringement.'" *Kyocera Wireless Corp. v. ITC*, 545 F.3d 1340, 1354 (Fed. Cir. 2008) (quoting DSU Med. Corp. v. JMS Co., 471 F.3d 1293, 1306 (Fed. Cir. 2006) (en banc)).  Visteon's motion is silent as to any affirmative intent to cause direct infringement, and, therefore, must be denied.

## VISTEON'S REPLY

Visteon's reply brief states its response to Garmin's opposition as follows:

### The Court Should Grant Visteon's Motion on Infringement of the '408 Patent

#### Direct Infringement

Garmin's argument that Visteon provides only "a <u>single</u> conclusory sentence" to meet its burden of proving infringement ignores the abundant evidence cited by Visteon establishing infringement.  *See* Visteon's Motion, Dkt. No. 157 at 12-18 (addressing not only infringement of each claim at issue, but providing conclusive evidence of such, including expert testimony, [admissions omitted], citations to the owner's manual for the representative accused product, and testimony by Garmin's own witnesses).  Neither Garmin nor its only witness, Mr. Lavrakas,

dispute the relevant facts put forth by Visteon regarding operation of the accused product. Rather, Garmin contends the asserted claim language should be interpreted "as a whole" to require the selection of two destinations.[3]   *See*, *e.g.*, Dkt. No. 170 at 12; Dkt. No. 170-9 at 92. This dispute does not raise an issue of fact.  *See Athletic Alternatives, Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1578 (Fed. Cir. 1996) ("Where, as here, the parties do not dispute any relevant facts regarding the accused product but disagree over [claim interpretation], the question of literal infringement collapses to one of claim construction and is thus amenable to summary judgment.").

Simply stated, Claims 1, 4, 5, and 6 cover methods of using a system and/or a system having the facility for searching for a destination both by category and by name.  As shown in Visteon's Motion, none of these claims requires the selection of two co-existing destinations; indeed, such a requirement is not only nonsensical, but is at odds with the patent claims and specification.  *See* Dkt. No. 157 at 16-18.  The linguistic structure of the claims ("where [a first stimuli leads to a first effect], and where [a second stimuli leads to a second effect]") follows the bifurcated flowchart shown in Figure 7 of the '408 patent and requires two *alternative* mechanisms to search for a destination, but ultimately the selection of only one destination.[4] Garmin's arguments, which would exclude the embodiment of Figure 7, are wrong.  *Funai Elec. Co., Ltd. v. Daewoo Elecs. Corp.*, 616 F.3d 1357, 1371 (Fed. Cir. 2010) ("We affirm the district court's claim construction, for it is in accordance with the specification including the drawings, *whereas Daewoo's construction would exclude the embodiment in Figure 5.*") (emphasis added).

---

[3] In responding to Dr. Lokshin's expert report, Mr. Lavrakas does not suggest that Dr. Lokshin's report fails to define a "comprehensible infringement theory."  *See* Dkt. No. 170-9 at 93 (describing Dr. Lokshin's theory regarding when "the claims are satisfied").

[4] Garmin's argument that step 720 of Figure 7 discloses the selection of a second destination fails, as Figure 7 clearly shows parallel searching processes that merge into a single selection step.  If Garmin's argument were correct, steps 710, 712, and 714 would be shown *in series* with step 718, not in parallel; or, step 720 would loop back to step 702 for a second selection.

### Induced Infringement

Visteon also conclusively establishes that Garmin has induced infringement of the '408 patent.   [Admissions eliminated]  Similarly, Garmin's Response ignores evidence proving Garmin's specific intent to induce both searching by name and searching by category.  *See* Dkt. No. 157 at 18-20.  Indeed, there is no dispute that, with almost four-year-old knowledge of the '408 patent and Visteon's charge of infringement, Garmin continues to make and sell (the accused) devices that it admittedly designed to operate in the precise manner that infringes and, further, that Garmin expects its customers to use the devices in such a manner.  *See Id.*[5]  Given the other conclusive evidence cited in Visteon's Motion, reasonable juries could only find that Garmin induces its customers to infringe the '408 patent.

### ADDITIONAL ARGUMENTS BASED ON THE REEXAMINATION RECORD

### Arguments Relating to Claim Construction Issues

### Claim Construction Issue raised in the original MSJ briefings:

During the reexamination process, an issue arose as to whether the Patent Office Examiners were construing Claim 1 as permitting a user to set two destinations, as asserted by Garmin.

### Visteon's Arguments

Visteon cites to the Examiners' clarification of the disjunctive nature of the claims as separately memorialized in a summary of the interview by the primary Examiner:

The patent owner's representatives and the examiner first focused on how the two

---

[5] Garmin fails to cite any authority for its creative position that the alleged possession of an *invalidity* defense can negate specific intent to induce *infringement*.

"where" statements were considered in the Final Office Action. The examiner responded by noting the '408 patent specification in conjunction with Figure 7 describes two paths; one for an alphanumeric process and one for a category process. The examiner acknowledged that both paths are described in the '408 patent to be alternatives to one another. *In light of the claim language, the examiner acknowledged that nothing in the "alphanumeric method" requires any part of the "category method" and thus the two "where" methods are written in a manner consistent with the patent specification which describes two alternative destination selection methods...* The patent owner's representative asked for clarification over at least one statement set forth in the Final Office action which stated "[w]hile the second 'where' statement does not state that it require [(sic)] the first 'where' statement, the claim does not preclude the two steps from being part of the same method." The examiner emphasized that this statement was made in order to support the position with respect to the prior art. *The examiner again acknowledged that the '408 patent discloses of [(sic)] a two path alternative for selecting a destination.* (*See* July 5, 2013 Ex Parte Reexamination Interview Summary, Exhibit D at 2 (emphasis added) (Visteon's Supplemental Summary Judgment Brief, page 4). Thus, according to Visteon, its position is not only supported by the claim language and the specification, but also by the Patent Office."

### Garmin's Arguments

As to the construction issue discussed above, Garmin contends that the reexamination record does not support Visteon's construction. Its arguments are as follows:

Visteon claims the Examiner agreed with its litigation positions on the '408 patent, and points to its own interview summary. The Examiner's summary of the same interview does not reflect any such agreement. In fact, the Examiner's summary did not

23

even discuss the disputed point before the Court.  Whether or not the two search modes (category search and alphanumeric search) described in claims 1 and 6 of the '408 patent are alternatives to each other has never been the issue in this case.  Garmin's point has always been that the claims require the selection of <u>two</u> destinations (and not one, as Visteon contends).  *See* Br. at 2.

The only portion of the '408 reexamination history that actually addresses this point is an interview summary prepared by *Visteon and its litigation counsel*:  "Upon further discussion, the Examiners indicated that they had not construed Claim 1 as permitting a user to set two destinations, agreeing with the Patent Owner."  Br. at 3-4.  Tellingly, the Examiner's description of the same interview did not even include a discussion of this topic, much less state an agreement with Visteon's position. *See* Br. at 4; *see also* Ex. 8.

The reexamination discussion, by the Examiner's account, revolved around whether the '408 patent's "alternative destination selection methods," were *strict* alternatives, *i.e.*, mutually exclusive methods for selecting destinations, or whether the methods could overlap (*e.g.*, performing a category search within an alphanumeric search to further refine the alphanumeric results or vice versa) as was disclosed in the Morimoto reference being discussed.  *See* Ex. 8 at 2; Ex. 6 at 12-14. Visteon ultimately ended the discussion by amending claim 6 to expressly require the two search methods be "mutually exclusive" alternatives, *i.e.* one cannot be performed within the other.[6]

Visteon's summary judgment motion does not turn on whether the two search methods are mutually exclusive alternatives or not.  Rather, Visteon's claims in this litigation fail because

---

[6] *See* Ex. 9 at 8; Ex. 10 at 3-5; Ex. 11 at 8-9; Ex. 12 at 15-16.

the '408 claims require the selection of a first <u>and a second</u> destination using the alternative methods, regardless of whether they are mutually exclusive or not.  The written description is consistent with this requirement.  *See*, *e.g.*, '408 patent, 2:27-30 (disclosing that a user can select a first destination using one method and can then "alternatively" <u>select a second destination</u> using the other); *Id.* at Fig. 5 & 5:38-44 (a "destination is selected" and "the destination selection process continues"); *Id.* at Fig. 7 and 6:27-30 ("one of these destinations is selected and the destination selection process continues").

Visteon's self-serving statement, which was not adopted or even mentioned by the Examiner, should be wholly ignored. The '408 reexamination history does not support Visteon's summary judgment motion in any way.[7]  (Garmin's Supp. Summary Judgment Br., pages1, 2)

In addition to the foregoing arguments, Garmin now also contends that the reexamination record gives rise to a new and different basis for a finding of non-infringement. Although Garmin does not phrase the issue as one requiring a new claim construction (one not previously briefed or raised), the following discussion makes it clear that Garmin's new non-infringement defense works only if the Court interprets the language of Claim 1 of the '408 patent to require that any "list of destinations," contain each and every destination in any category selected. This issue and parties arguments in support of their positions are set forth below.

**New Claim Construction Issue**

---

[7] Visteon, of course, also omits that the breadth, *i.e.*, outer scope, of claim language as applied during reexamination must utilize the liberal "broadest reasonable interpretation" standard and not the more strict *Phillips* standard required in District Court.  *See*, *e.g.*, *In re Am. Acad. Of Sci. Tech Ctr.*, 367 F.3d 1359, 1369 (Fed. Cir. 2004); *TDM Am., LLC v. U.S.*, 100 Fed. Cl. 485, 492 (Fed. Cl. 2011).

**Garmin's Position**

Before this Court, Visteon has contended that claim 1's recitation of "displaying a first list of destinations corresponding to the first category" is met when Garmin's devices display a **partial** list of destinations from a selected category.[8]   *See* Dkt. 157-7 (Ex. E to Visteon's Motion) at 78-79 ("a list of **local** destinations corresponding to the POI category 'Fuel'") (emphasis added).   Before the USPTO, Visteon contended just the opposite—that claim 1's recitation of "displaying a first list of destinations corresponding to the first category" requires "the display of **each and every one** of the destinations within the category."   *See* Ex. A, *Visteon's March 28, 2013 Response to Office Action*, at 27 (emphasis added). And "[i]n no way does this recitation suggest that a partial list of destinations is provided."   *Id.*   Repeating its position to the USPTO, Visteon further explained:

> Claim 1 recites "each category corresponding to a list of destinations" and then recites that a first selection signal is generated corresponding to a first category. The claim then recites "displaying a first list of destinations corresponding to the first category."   The recitation of a first list of destinations would be understood to mean the destinations in the first category—i.e., all such destinations.   The use of "a" rather than "the" merely reflects adherence to rules of proper antecedent basis in patent claims, since Claim 1 did not earlier recite "a first list of destinations."

*Id.* at n.17 (underlined emphasis added; other emphasis in original).

Visteon cannot now take a contradictory position before this Court.   Whether or not the USPTO accepted Visteon's argument (which the USPTO did not), Visteon is bound to its expression of the plain and ordinary meaning of the claim language. *See Lifestream Diagnostics, Inc. v. Polymer Tech. Sys., Inc.*, 109 F. App'x 411, 414–16 (Fed. Cir. 2004) ("We agree with the district court that arguments deliberately and repeatedly advanced by the patent applicant in

---

[8] *See* Dkt. 157-12 (Ex. J), *Moore Tr.* at 88:6-90:20 (explaining that not all destinations in a category are searched or displayed because of spatial storage of POI data and because a proximity radius limit and threshold count limit are applied); *see also id.* at 82:16-83:7.

regard to the scope of a claim term during prosecution may be used for purposes of claim construction even though the Patent Office rejected the arguments."); *Springs Window Fashions LP v. Novo Industries*, L.P., 323 F.3d 989, 995 (Fed. Cir. 2003) ("[T]he examiner's remarks do not negate the effect of the applicant's disclaimer."); *Am. Piledriving Equip., Inc. v. Geoquip, Inc.*, 637 F.3d 1324, 1336 (Fed. Cir. 2011) (finding disclaimer based on applicant statements during reexamination with which "examiner explicitly disagreed"); *see also Microlinc, LLC v. Intel Corp.*, No. 2:07-CV-488, 2013 WL 2471551, at *27 (E.D. Tex. June 7, 2013) (Ex. B) ("This argument is without merit because the patentee representation [during reexamination] is binding regardless of whether the USPTO accepted the patentee's argument.").  "The public notice function of a patent and its prosecution history requires that a patentee be held to what he declares during the prosecution of his patent. A patentee may not state during prosecution that the claims do not cover a particular device and then change position and later sue a party who makes that same device for infringement."  *Springs Window*, 323 F.3d at 995.  Because Visteon has admitted that claim 1 (and, thus, dependent claims 4 and 5) require all destinations within the selected category to be displayed and because Visteon has presented no evidence that this requirement is met in the Garmin devices, Visteon's motion for summary judgment on the '408 patent must be denied.[9]

### Visteon's Response

Garmin improperly parses the Reexamination record in an attempt to create an alleged disclaimer where none exists. During the Reexamination, and in response to the Examiner's assertion that Morimoto '452 anticipated Claim 1 of the '408 patent, Visteon argued that Morimoto's search mechanisms did not operate independently, rather "Morimoto '452 must

---

[9] Claim 6, though withdrawn, is also not infringed for the same reason. *See* Dkt. 157 at 12 ("Claims 1, 4, and 5 of the '408 patent cover methods for using the vehicle navigation system of Claim 6").

perform an alphanumeric search before enabling a narrowing based on category, which is unlike the claims of the '408 patent . . . ." *See* Dkt. No. 221-1 at 23 (emphasis added). That is, in Morimoto, the displayed "category" search results were necessarily truncated by virtue of a user's previously initiated alphanumeric search. In making this argument, Visteon consistently emphasized the "alphanumeric search" qualifier in relation to the category search: 2

> [S]election of the category causes the display of each and every one of the destinations within the category, unaffected by an alphanumeric search. In no way does this recitation suggest that the partial list of destinations is provided, or that the category is used to reduce destinations generated after the alphanumeric search.

Dkt. No. 221-1 at 27 (emphasis added).  Visteon also explained that a "partial list" was a category list narrowed by the earlier, user-initiated alphanumeric search.  Dkt. No. 221-1 at 28. ("In contrast, Morimoto '452 teaches that the list of destinations selected by category (Fig. 39(c)) is a partial list of destinations in that category because first a text input is performed to eliminate those destinations that do not match the text input...."). Visteon's statement, with which the Examiner expressly disagreed,[10] concerned the independent nature of the two search mechanisms of Claim 1, and was not a disclaimer at all, much less, a "clear and unmistakable" disclaimer. *Elbex Video, Ltd. v. Sensormatic Elecs. Corp.*, 508 F.3d 1366, 1371 (Fed. Cir. 2007); *see also* Dkt. 67-1 at 78-79 (Special Master Methvin explaining that parsed file history statements do not constitute a disclaimer).

The cases cited by Garmin also do not support its position. As these cases make clear, argument-based estoppel stems from "detailed, consistent, and repeated arguments" that are

---

[10] Exh. A at 14-15 ("The Examiner disagrees and maintains that the patent owner is **arguing limitations that are not claimed**. The claimed limitations only require the display [of] a list of destinations corresponding to the first category. **Whether the list is incomplete or is affected by other methods is immaterial since the claim only requires a list of destinations that correspond to the first category to be displayed.**") (Emphasis added).

neither retracted nor acquiesced to by the Applicant. *Lifestream Diagnostics, Inc. v. Polymer Tech. Sys., Inc.*, 109 Fed. Appx. 411, 415 (Fed. Cir. 2004) ("The patent applicant never retracted any of his statement nor explicitly acquiesced to the Patent Office's rejection by amending the pending claims ...."); *Springs Window Fashion LP v. Novo Industries L.P.* 323 F.3d. 989, 995-96 (Fed. Cir. 2003) ("[N]or did he acquiesce in the examiner's comments regarding the overlapping scope of Pluber").[11]   Here, Visteon's argument was advanced only once and was expressly rejected by the Examiner in the next Office Action. Exh. A at 14-15. Thereafter, Visteon acquiesced in the Examiner's position by canceling Claim 1. Exh. B at 2; *Shire LLC v. Sandoz, Inc.*, 2008 U.S. Dist. LEXIS 110168, at *26 (D. Colo. Sept. 24, 2008) (no disclaimer where Applicant acquiesced to the PTO by canceling and amending claims). Only after the Examiner (and Visteon) construed Claim 1 "in accordance with the broadest reasonable construction consistent with the specification," were Claims 4 and 5 allowed because of the other limitations. *See*, *e.g.*, Statement of Examiner's Reasons at 2-3 (Exh. C at 2-3).  On this record, the words of the claim control – and as the Examiner indicated, "whether the list is incomplete or is affected by other methods is immaterial." Exh. A at 14.[12]

## SPECIAL MASTER'S ANALYSIS AND RECOMMENDATIONS

### Claims Construction Issues

Although neither of the current claim construction disputes was raised during the

---

[11] *See also Microlinc, LLC v. Intel Corp*., No. 2:07-CV-488, 2013 WL 2471551, at *27 (E.D. Tex. June 7, 2013) (noting the "repeated statements" in at least three declarations, an appeal brief, and three Reexamination responses).
[11] Claim 6 was also amended to overcome the Examiner's position regarding its original breadth. *See, e.g.*, Exh. C at 13-17.
[12] *Am. Piledriving Equip., Inc. v. Geoquip, Inc.*, is also distinguishable because the claim alone supported the construction, and comported with the Applicants' arguments before the Patent Office. 637 F.3d 1324, 1335-1336. Unlike this case, the claims in *American Piledriving* were never cancelled.*Id.*at 1335, 1336.

*Markman* claim construction process, the issues are now ripe for the Court to review and decide in this summary judgment context.

### Do the method steps of Claim 1 of the '408 patent require the selection of two destinations?

Garmin's position is that the plain language of Claim 1 dictates that the navigation system disclosed in the claim must select not one, but two destinations. As seen above, Garmin initiates its arguments in support of its position with a truncated rewrite of Claim 1. According to Garmin, "Claim 1 is (similarly) straightforward:

> displaying a first list of destinations corresponding to the first category; and
>
> selecting a first destination from the first list in response to a second selection signal generated by the selection control; and . . .
>
> displaying a second list of destinations . . . and
>
> selecting a second destination from the second list in response to a third selection signal generated by the selection control.

(Garmin's Opening Brief in Opposition to Visteon MSJ, page 13) (emphasis by Garmin); *See also*, Lavrakas Noninfringement Report, Dkt. No. 157-17, at 92).

Tellingly, Garmin omits the introductory preamble to the claim which states that what is claimed is "A method for selecting **a** destination…" (Col.6, l 40) (emphasis added). Also omitted are the "where" introductions to the two separate and distinct methods for selecting a destination found in the claim. In particular, these critical claim limitations spell out two alternative methods for selecting a destination: a first method selects a destination from a "list of destinations" and a second method selects a destination using an "alphanumeric" means (Col. 6, ll. 46-60). By omitting these particular limitations, Garmin is attempting to obscure the fact that its proposed

claim interpretation results in the selection of two destinations, but with one destination being determined by one method and the second destination being determined by an entirely different method. On its face such a scheme makes no sense, and Garmin offers no reasonable explanation for why such a scheme would be of interest to anyone. Indeed, Garmin does not, and cannot, provide the Court with citations from the specification which disclose or even reference in any way, such a method for finding a destination.

Garmin, however, does argue that the preamble reference to  "selecting **a** destination", does not support Visteon's interpretation.   At the hearing on the pending MSJ, Garmin noted that the use of  "a" in a claim doesn't limit the method to "just one" and that "the context of the claim" must be read to "determine what 'a' means" (Tr. p.62). Both statements are correct as far as they go. First, it is a given that the claimed method can be used to select more than one destination. The specification makes this clear as it discloses, in detail, a method for building a history of destinations that allows for multiple destinations to be added to the history. However, as will be detailed below, the destinations are selected one at a time and there is nothing in this intrinsic evidence that even suggest a selection of two destinations at one time to be added to the history.

Next, counsel is correct that claim construction requires viewing the claim limitation at issue in context. Of course, the starting place is the context of the claim, but where, as here, there is a bona fide dispute as to the meaning of the claim language, *per se*, the Court must review not only the claim language, but all of the intrinsic evidence, including the teachings of the specification and the prosecution history, to arrive at a proper construction of the limitation.

The law on this point is quite clear. "Claims must be read in view of the specification, of

which they are a part", *Phillips v. AWH Corp.*, 415 F.3d 1303,1314(Fed. Cir. 2005)(quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967,979 (Fed. Cir. 1995). "[T]he specification is always highly relevant to the claim construction analysis . Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." Phillips (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576,1582 (Fed. Cir. 1996); *Teleflex, Inc. v. Ficosa N. Am .Corp.*, 299 F.3d 1313,1325 (Fed. Cir. 2002).

As the following review will demonstrate, the teachings of the specification of the '408 patent relate to the selection of a single destination. Further, and to repeat, the specification does not disclose a method of navigation that requires the selection of two destinations at once. As mentioned earlier, a large portion of the specification relates to the concept of maintaining a "destination history". Although this concept is not claimed in the '408 patent, the disclosures in the specification relating to this concept are nevertheless relevant in understanding the meaning of the terms used to describe the method that is claimed.

The teachings of the patent specification relating to building the "destination history" are quite clear. In describing this concept, the specification always uses singular language to describe the selection of "a" destination. (*See* Background of the Invention: Col.1, ll. 50-20; Summary of Invention: Col. 1, ll. 62-63, 66; Col. 2, ll. 6; Description of the Preferred Embodiment: Col. 3, ll. 61-67, Col. 4 ll. 4 to Col. 5, l 44, all relating to selecting a single destination to go into the history ["the…destination is selected…The selected destination is then stored…"].)

The portions of the specification of the '408 patent not specific to building a destination history, but closely tied to Claim 1 (which in no wise relates to building a destination history),

also make clear that the method described is for selecting a single destination: Title: Method and Apparatus for Selecting A Destination …; Summary of Invention: Col. 2, ll. 17-30 ("selecting a destination…search for a destination", "A first destination may be selected…Alternatively, a second destination …may be …selected); Description of Preferred Embodiment: Col. 5, ll. 45-63 (relating to Fig. 6 and general discussion of use of alternative means for destination selection like that in Claim 1--" a destination is selected", "selected a destination"), Col 6, ll. 13-38 (relating to Fig. 7 which also supports the options in Claim 1 for selecting "a" destination--"In response to a selection signal, a currently highlighted one of these destinations is selected…." "a list of destinations …is displayed from which the user may make a selection".)

In sum, the specification fully supports Visteon's position that the claims at issue are directed to selecting a single destination using one of the two alternative methods disclosed in the claim. The specification does not provide any support for Garmin's proposed interpretation.

Finally, as to the teaching of the prosecution history, only the reexamination record bears on the current claim construction issue.  As seen in the quote from the Examiner's Summary of Interview set forth above by Visteon, the Patent Office confirmed Visteon's interpretation. In the briefing relating to the reexamination record and at the hearing on this MSJ, Garmin made no effort to refute the Examiner's conclusions.

In sum, Visteon's interpretation is fully supported by the intrinsic evidence and Garmin's interpretation is not. Based on the foregoing analysis, it is the Special Master's recommendation that the Court adopt Visteon's interpretation of the method claims of Claim 1 of the '408 and find that the method is for determining a single destination using one of two alternative methods disclosed in the claim. It follows that Garmin's non-infringement defense, based on its

misinterpretation of the limitations of Claim 1, is without merit.

### Do the terms "displaying a first list of destinations" and "displaying a second list of destinations" in Claim 1 require that all destinations within the selected category be displayed?

Garmin argues that the question must be answered in the affirmative. An affirmative finding supports its argument that its system, which displays a partial list and not a complete list of destinations, does not infringe the '408 patent. The fact that the issues are raised as a non-infringement defense doesn't change the fact that Garmin is presenting the Court with a claim construction issue and it must be addressed as such.

Garmin did not raise these claim construction issues in the *Markman* proceedings for obvious reasons—there was nothing in the intrinsic record at that point in time that supported the interpretation now sought by Garmin. The claims then, and now, simply spell out a need for "a list of destinations". A list, whether in full or in part, is still a list, and that is all that is required by the claim. The plain language of the claim does not support Garmin's position and Garmin is silent on the point. Likewise, Garmin does not rely on any teachings of the specification to support its position because the disclosures in the specification are consistent with the use of the term "list" in the claim. There is no discussion calling for a distinction between a complete and partial list of destinations. Finally, since Garmin does not rely on the file history as it existed at the time of the claims construction proceeding to support its position, it is safe to say that the prosecution history at the time of the *Markman* proceedings is devoid of any statements by the inventors of the '408 patent that would support Garmin's position.

As the Court can readily see from Garmin's briefings on the issue, Garmin relies solely on isolated statements from the reexamination record to support is proposed change in the plain

meaning of "list" in Claim 1 of the'408 patent. Since there is no possible support for Garmin's position anywhere in the intrinsic evidence, except the reexamination record, this record must clearly and unambiguously show that Visteon made admissions that, in and of themselves, are sufficient to support a finding that the claims should be rewritten as proposed by Garmin. The reexamination record of interest has been fully disclosed and debated in the parties' briefs and at the hearing on this MSJ. Nothing in this record in any way indicates that Visteon was intending to change the plain meaning of the terms at issue. Visteon's briefs and its presentations at the hearing (Tr. pages 37-46 and 75) provide the Court with the correct analysis of the facts and the law governing its statements in the reexamination history. It is recommended that the Court adopt Visteon's analysis on both the facts and the law.

In sum, the intrinsic record, including the claims, the specification and the file history, including the reexamination statements, do not support Garmin's position. Accordingly, it is recommended that the Court find that the "list of destinations" limitation of Claim 1 of the '408 patent includes both full and partial list of any given category. It follows that Garmin's non-infringement defense based on its misinterpretation of the claim, is without merit.

The analysis of the claim construction issues and recommended findings above, if adopted by the Court, eliminate Garmin's non-infringement defenses based on such constructions. Nevertheless, Visteon must still meet its burden of proof and bring such proof within the guidelines established by the Federal Circuit and summarized above. A review of the evidence provided by Visteon in support of its request for a summary judgment finding of direct infringement of Claims 4 and 5 of the '408 patent, is provided in the next section of this report.

### Direct Infringement

The legal principles governing the issue of whether Visteon is entitled to a summary judgment of direct infringement of the '408 patent are detailed above.

### Evidence relating to use of Garmin devices by its employees

The factual evidence presented by Visteon in support of its assertion that Garmin directly infringes method Claims 4 and 5 of the '408 patent is summarized in the Declaration of its expert, Dr. Anatole Lokshin.  Since Claims 4 and 5 are dependent from Claim 1, proof of infringement of these claims must include evidence of infringement of each and every limitation of all three claims. As to the method claims 1, 4 and 5, Dr Lokskin sets forth in claim chart format, each of the claim limitations and for each element he describes various aspects of the operation of the Garmin nüvi 3750 device (the "3750") which, when used by an operator would, in his opinion, satisfy each of the limitations in the claims. His description of the operation of the device includes references to Request for Admissions (any of such which are no longer in the record have been ignored by the Special Master); paraphrases of the Manual related to the 3750; screenshots from the display system of the 3750, and source code.

In support of his conclusion that Garmin's employees' use of its devices infringes the method claims, he cites to excerpts from the deposition of four employees. (*See* Decl. of Anatole Lokshin, Exh. E [to Visteon Opening Brief] at: 76-86).

Dr. Lokshin is clearly qualified to testify as to how Garmin's commercially sold devices function when operated by a user (and Garmin does not challenge his analysis). However, his conclusions regarding the actual proof of such use by Garmin' employees are conclusory and of no value.  Here are his conclusions based on the employees' deposition testimony alone:

133.   As the various deposition testimony shows, Gamin provides its employees with its devices to use on behalf of the company. (*See* supra, para 46.) Therefore, use in an infringing manner by Garmin's employees constitutes direct infringement of the method claim of the '408 patent.

134. The following deposition testimony shows use in an infringing manner by Garmin employees. [Dr. Lokshin then list the employees by name with cites to what he terms "Relevant Deposition Citations"] (Decl. of Anatole Lokshin, Ex. E at Infringement Report  at 86.)

The statements in paragraph 133 beg the question and prove nothing. Paragraph 134 is nothing more than a bald conclusion, without any tie between each and every limitation of the claims and the testimony of the employees. In paragraph 132 of his Declaration, Dr. Lokshin lays out a road map (so to speak) for proof of direct infringement. However, he makes no effort to tie the testimony to this road map. In short, he provides no credible evidence of direct infringement by the employees. Nevertheless, the testimony of these employees must be reviewed to see if Visteon has provided sufficient proof of direct infringement to entitle it to summary judgment on the issue.

The following is a complete recitation and analysis of the testimony of each of the employees relied on by Visteon to prove direct infringement of Claims 4 and 5 of the '408 patent.

Kevin Rauckman testified as follows:

Q: And have you used that functionality by spelling the name of the point of interest?

A: Usually through Google search I would, yes, do the local search.

Q: And then put in the name—

A: Restaurant, whatever, yes.

Q: Okay. Similar question. Have you ever, on the 3790, have you ever located a certain point of interest that you're interested in by searching within the point of interest category to which that point of interest belongs?

A: So if I understand your question, I go into point of interest, look for a hotel or restaurant. Yeah, absolutely."

(Rauckman Dep. Tr. 157:21 -158:13).

First, counsel for Visteon, like Dr. Lokshin, did not try to show how use of the device was tied to each and every limitation in the claims, either through use of the patent claims per se, or through use of Dr. Lokshin's road map. As to the testimony that was elicited, the first Q and A seems to be directed toward establishing that the witness used an alphanumeric keyboard on the device to do a "point of interest" search. However, there is nothing in the deposition, or the record in this case, that advises the Court of how a "Google search" works or how it is tied to the claims at issue. Further, the fact that the witness says he "put in the name….of a Restaurant" is a far cry from proving that the witness used the alphanumeric keyboard in the manner required by the limitations of Claim 1. Specifically, the limitation at issue, according to Dr.Lokshin's break down of the claim, is as follows:

"**[e]** where an alphanumeric input signal is received via the alphanumeric input means" (Decl. at 80) (emphasis in original).

This limitation requires that the "signal" must be "received" from the keyboard. According to Dr. Lokshin's analysis of how the nüvi 3750 works (found in the column adjacent the claim language), the touch screen keyboard is used to type in a destination. However, merely typing in the name of the destination (as Mr. Rauckman may have done) does not satisfy the claim limitation, as this act alone does not generate the required signal that must be sent from the alphanumeric means. According to Dr. Lokshin:

38

"When the user touches the 'Done' button after inputting the alphanumeric search term(s), an alphanumeric input signal is received by the nüvi 3750 requesting it to return a list of destinations corresponding to the alphanumeric input signal …"

(Decl.at 80).

There is no testimony by Mr. Rauckman that this critical step was preformed. Therefore, his testimony on this point does not prove direct infringement of a limitation of the claims.

Mr. Rauckman's additional testimony that he used the device to select a "point of interest" to "look for a hotel..", relates to  the limitation "where a first selection signal corresponding to a first category is generated by the selection control." However, as Dr. Lokshin makes clear in portion of his opinion, which follows, it is the first signal corresponding to a first list of **categories of destinations** that satisfies the claim limitation, not just a list of categories such as "Points of Interest" (emphasis added).

Specifically, Dr. Lokshin opines that this limitation is satisfied because:

"The nüvi 3750 can generate a selection signal when the user selects (or touches) a touchscreen selection control corresponding to a first category of destinations. …For example, the POI functionality of the nüvi 3750 device enable the user to search for certain destinations by the category of the destination. When the user selects the 'Points of Interest" touchscreen selection control, the devices generate a list of destinations by category." [reproduction of screenshots depicting the icons for "Points of Interest" and other categories of interest, but not categories of actual destinations, are omitted].

(Decl. at 77).

Dr. Lokshin goes on to explain:

"Each of the categories listed is a touchscreen selection control. When a user selects (or touches) a category (*e.g.*, 'Fuel'), the nüvi 3750 generates a signal corresponding to the category that creates a list of destinations corresponding to the 'Fuel' category."

(Decl. at 78).

Perhaps if Visteon's counsel had taken Mr. Rauckman through the foregoing explanation he might or might not have agreed that he was doing all the steps necessary to get to the list of hotels or restaurants, but that was not done. Instead, the only testimony on the point is: "I go into points of interest, look for a hotel or restaurant. Yeah, absolutely." How he got to the hotel or restaurant from the points of interest icon is not explained. This brief statement does not provide the Court with reliable evidence of direct infringement of the limitation at issue.

In sum, the testimony of Mr. Rauckman does not establish use of each and every limitation in Claims 1, 4 and 5, and does not come close to satisfying Visteon's burden of providing evidence of direct infringement by Garmin.

Rachel Jones testified as follows:

> Q. And other than these two devices, over your tenure at Garmin, has Garmin loaned you various other devices?
>
> A. Yes, they have.
>
> Q. What is the purpose of providing you with those devices?
>
> A. To test the device and to provide feedback.
>
> Q. And how do you test the device?
>
> A. Us in my day-to-day life.
>
> Q. And do you provide feedback to Garmin?
>
> A. Yes, I do.
>
> Q. What kind of feedback?

A. Anywhere from bugs or unit problems to feedback that a feature is—doesn't make sense to me as a user.

* * * *

Q: What are "points of interest"?

A: They are saved locations that are built into the map data and something that the used can select for a destination to go to.

Q: Have you ever used the "points of interest" feature?

A: Can you explain what you mean by "feature"?

Q: Sure. Have you ever pushed the "points of interest" button and either selected, by category, food, drink, fast food or gas stations? Have you ever pushed the button?

A: Yes, I have.

Q: What were you searching for?

A: Food.

Q: Okay. Do you use that feature when you're testing the device?

A: Yes.

Q: Why do you use that feature?

A: It's part of jut the day-to-day functionality of testing a PND. That's something that a customer would use.

Q: Do you use it in your personal capacity?

A: Yes, I have.

Q: Do you use it a lot?

A: Not specifically, no.

41

Q: But do you use it sometimes?

A: Yes.

Q: Are you also aware that you can search for points of interests by alphanumerical means, typing it in?

A: Yes.

Q: Have you ever used that feature?

A: Yes.

Q: What kind of things were you looking for?

A: A Walmart or grocery store.

(Jones Dep. Tr., 33:18-34:15; 36:12-37:8; 37:15-22).

There are numerous holes in this testimony as, once again, the witness is not taken through either the specific claim limitation language or Dr. Lokshin's road map to demonstrate clear proof that each and every element of the claims has been used. The first problem is that the Court is not provided with any evidence as to the exact nature of the devices Ms. Jones actually operated. Visteon does not provide the Court with the critical information about whether the models used were ones sold by Garmin and used by customers or were test /prototype versions provided so she could give feedback to the company? As a starting point, the Court must be provided with clear evidence, not vague descriptions, of all aspects of the device tested and how the device's operation ties into the claims at issue. This proof is missing and this failure of proof alone deflates to zero the value of the testimony of Ms Jones.  The remaining testimony by Ms. Jones merely shows that she used two features of the test devices: (1) she used the device and hit the "points of interest" button and selected a "food" category; and, (2) she used an alphanumeric means to search for "Walmart or grocery store".

42

The '408 patent claims a "method of selecting a destination" and the steps detail how this is to be done to satisfy the limitations of the claim.  Nothing in Ms. Jones testimony proves that she actually selected a destination on her devices. Finding a food category or Walmart is just one of the steps necessary to go to a destination, but it is not the final step required to prove infringement of any limitation. The final step required by the claims is to actually select the destination and there is no proof she completed this step. Again, the testimony of Ms. Jones does not satisfy Visteon's burden of proof.

Ryan Moore testified as follows:

> Q: Okay. And in your—from your use of Garmin's personal navigation devices, have you found points of interest by using the spell name feature?

> A: I've use the spell name feature.

> Q: Have you sued specific categories of points of interest to find points of interest to find points of interest in, for instance we used the fuel. Have you used—

> A: I've used the fuel and a few others. (Moore Dep. Tr. 107:17-108:4)

J. D. Krull testified as follows:

> Q: Have you ever used the spell name functionality for locating a particular point of interest, other than what we did here today?

> A: I have exercised that feature. Having knowledge of how the device works, I would rarely, if ever, do that real world.

> Q: Okay. Have you ever located a point of interest using the specific categories like restaurants, as we did today?

> A: Yes, and that being why, because I can get to what I need to get to quicker, easier.  (Krull Dep. Tr. 251:18-252:4).

For the reasons outlined above in connection with the analysis of the testimony of Mr.

Rauckman and Ms. Jones, the testimony of Messrs. Moore and Krull also fails to provide the Court with the requisite summary judgment evidence of direct infringement by Garmin. The devices used are not identified in sufficient detail to establish that the features used by the witnesses are the same as those in the devices commercially sold by Garmin. Furthermore, none of the requirements to prove direct infringement of each and every claim limitation, as found in Dr. Lokshin's road map, have been met.  To repeat--merely showing that a point of interest feature has been used or that the alphanumeric feature has been used is not enough.

To summarize: the testimony of the Garmin employees, either individually or in total, does not provide sufficient evidence of direct infringement by Garmin to support a summary judgment. Accordingly, it is recommended that the Court deny Visteon's MSJ of direct infringement of the '408 patent by Garmin.

### Evidence of use of Garmin devices by a customer

As noted earlier, Visteon has also provided the Court with a declaration and deposition testimony from Jody Rens, a non-Garmin user. The first portion the declaration of Ms. Rens relied on Visteon follows:

> 13. I have, on at least one occasion, pressed the "Where to?" button on my Garmin nüvi 855. I then pressed the "Points of Interest" button followed by the "Spell Name" button. I then used the alpha-numeric touch-screen keyboard to enter the name of a business (*e.g.* Starbucks). This is a fast and convenient method for locating a particular entity on my Garmin nüvi 855.

(Rens Decl., Doc # 158-14)

This statement relates to the same claim limitation discussed above in connection with the analysis of Mr. Rauckman's deposition--namely, per Dr. Lokshin: "[e] where an alphanumeric input signal is received via the alphanumeric input means".  Ms Rens' statement

44

tracks very closely the example used by Dr. Lokshin to explain how use of the Garmin nüvi 3750 meets the elements of this claim. Both examples require the use of the "Spell Name" button to call up an alphanumic keyboard. In each case, the keyboard is then used to input the name of the destination the user is trying to find. These two steps end the statement of operations by Ms. Rens. However, Dr. Lokshin declaration goes on to add one more step that is necessary in order for the alphanumeric input signal to be received--the user must touch the "Done" button.  Ms. Rens does provide a screen shot of the keyboard, which shows the word "Metrolina", the name or the start of a name of the business of interest. The keyboard for her Garmin device also has a "Done" button, but Ms. Rens never mentions it, or that she used it to call up the name of the business corresponding to the name typed in. Thus, Ms. Rens' declaration does not, on its face, prove that the limitations at issue have been satisfied, i.e., there is no evidence that the signal from the alphanumeric input was received.

Visteon also provides the Court with one other statement from Ms. Rens:

> 14. I have, on at least one occasion, pressed the "Where to?" button on my Garmin nüvi 855, followed by the "Points of Interest" button to find at least either a hospital, bank, gas station, restaurant and/or another entity based on the selection provided. This is a fast and convenient means of finding the closest desired point of interest.

(Rens Decl.)

As seen, Visteon has provided the Court with just a brief summary of one operation carried out by a witness. Visteon's arguments in support of its claim that customers of Garmin have directly infringed the '408 patent, do not demonstrate how this brief summary of operations meets any of the limitations in the method claims at issue. Likewise, Visteon makes no effort to tie Ms Rens' declaration to any aspect of Dr. Lokshin's road map. Nevertheless, it does appear

that the example given by Ms Rens is similar to the example given by Dr. Lokshin in connection

with his explanation of how use of the Garmin device would meet the requirements of the

following limitation:

> **[b]** where a first selection signal corresponding to a first category is
> generated by the selection control.

(Decl. at 77).

> According to Dr. Lokshin, this limitation is met as follows:

> The nüvi 3750 can generate a selection signal when the user selects (or
> touches) a touchscreen selection control corresponding to a first category of
> destinations. Therefore, the requirement that 'a first selection signal
> corresponding to a first category is generated by the selection control' is satisfied.

> For example, the POI functionality of the nüvi 3750 device enables the
> user to search for certain destinations by the category of destination. When the
> user selects the 'Points of Interest' touchscreen selection control, the devices
> generate a list of destinations by category. [The screenshot provided by Dr.
> Lokshin is not duplicated here, but it shows icons for hospital, bank, etc.](Dr.
> Lokshin Decl. at 77 and 78).

> Dr. Lokshin example, to this point, tracks closely the steps outlined by Ms. Rens.

However, Dr. Lokshin goes beyond these steps and states:

> Each of the categories listed is a touchscreen selection control. When a
> user selects (or touches) a category (*e.g.*, 'Fuel'), the nüvi 3750 generates a signal
> corresponding to the category that creates a list of destinations corresponding to
> the 'Fuel' category.

(Dr. Lokshin Decl. at 78).

> Had Dr. Lokshin been of the opinion that the step of touching the POI button satisfied the

claim limitation at issue, he would have terminated his example after describing use of the POI

button.  He didn't stop with this step, however, because the claim, per Dr. Lokshin, requires that

the first selection signal must come from the selection of a category of destinations. Thus, as shown by Dr. Lokshin, the claim limitation is not met by merely hitting the POI button. The limitation is met only when the user selects one of the categories, such as "Fuel", because it is at this point that the nüvi 3750 "generates a signal corresponding to the category that creates a list of destinations corresponding to the "Fuel" category."

In sum, Ms. Rens' description of the operation of her devices does not include all the steps required to prove direct infringement of any element of the method claims at issue.

### Conclusion and recommendation relating to evidence of direct infringement

Based on the foregoing analysis of the evidence relied on by Visteon in support of its MSJ for a finding of direct infringement by Garmin and its customers, it is recommended that the Court find that such evidence falls short of proving direct infringement. Accordingly, it is recommended that the Court find that Visteon has failed to carry its burden of proof of direct infringement by either Garmin employees or a customer. If the Court agrees with this conclusion, it is recommended that Visteon's motion be denied.

### Inducing Infringement

The parties do not dispute that inducement must be predicated on a showing of direct infringement. It follows that if the Court agrees with the Special Master's recommendation that the Court find that Visteon has failed to carry it burden of proving direct infringement by either Garmin or its customers, Visteon's MSJ for a finding that Garmin has induced infringement of the '408 patent should also be rejected. However, since the Court may disagree with the Special Master's recommendations, the subject will be addressed in full.

Although, as noted, the parties agree that inducement must be predicated on a showing of direct infringement, they disagree about whether the predicate direct infringement is satisfied by a showing of direct infringement by Garmin. Visteon contends proof of direct infringement by Garmin satisfies the requirement, but Garmin contends that only a showing of direct infringement by a customer will satisfy this requirement.  The Special Master, in a post hearing email ,posed the issue to the parties.  The parties' positions on the issue are as follows:

### Visteon's Position

Evidence of direct infringement by Garmin's employees can be used to support a claim of induced infringement by Garmin.  While it may be true that a company cannot be liable for inducing infringement of a *product* claim based on the same acts that also constitute direct infringement, that is not the case with respect to a *method* claim.  In the case of *method* claims 4 and 5, the "inducing" acts of selling a device that when used according to instructions will perform a patented process and affirmatively instructing others (whether customers or Garmin's own employees) how to so use the device, are not in and of themselves acts of direct infringement.  In that sense, Visteon has offered evidence that Garmin has engaged in "inducing" acts independent of the acts that constitute direct infringement.  *See Wordtech Systems, Inc. v. Integrated Networks Solutions, Inc.,* 609 F.3d 1308, 1316 n. 3 (Fed. Cir. 2010) (noting the broad reach of § 271(b) and that corporate officers may induce infringement by the corporation for whom they work). "

### Garmin's Position

Visteon must prove direct infringement by a customer of Garmin as a prerequisite to establishing inducement by Garmin, and even if direct infringement by Garmin were to be shown through its employees performing all steps of the claimed method, that would not support a claim

for inducement by Garmin.  A corporation cannot induce itself to infringe.  If a corporation (or those acting on its behalf) has practiced all steps of a claimed method, it is direct infringement by the corporation.  Those same acts cannot support an allegation of induced infringement by the corporation.  Again, the corporation cannot induce its own direct infringement.  Visteon's apparent suggestion to the contrary plainly conflates direct and indirect patent infringement.

Prior to Mr. Malik's email (setting forth Visteon's position), [Garmin] did not understand Visteon to be alleging any theory of inducement in which Garmin induces itself to infringe.  It is well established that a theory of inducement is predicated on inducing infringement **by another**.  Visteon states this requirement in its opening summary judgment brief:  "Induced infringement under § 271(b) requires that the accused infringer knowingly induced infringement and possessed specific intent to encourage **another's** infringement. *See Akamai Techs. v. Limelight Networks, Inc.*, 692 F.3d 1301, 1308 (Fed. Cir. 2012) (citing *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006))" Visteon Motion (Dkt. 157), at 12.  Many other cases could be cited for this well-established principle:  "A person induces infringement under § 271(b) by actively and knowingly aiding and abetting another's direct infringement." *C.R. Bard, Inc. v. Adv. Cardiovascular Sys., Inc.*, 911 F.2d 670, 675 (Fed. Cir. 1990); *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) ("[I]nducement requires that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement.") (emphasis added).

Mr. Malik contends that 'evidence of direct infringement by Garmin's employees can be used to support a claim of induced infringement by Garmin.'  While Visteon's argument is not clear, to the extent Visteon is asserting Garmin employees are "another" for purposes of establishing Garmin's inducement, Mr. Malik's arguments are entirely new, are inconsistent with

49

the summary judgment record, and should be disregarded.  Visteon has consistently argued throughout the case and at summary judgment that Garmin's employees were acting on behalf of Garmin and thus their actions would constitute, if anything, direct infringement by Garmin.  *See* Visteon Motion (Dkt. 157), at 13 ("In testing the accused devices **on behalf of Garmin**, Ms. Jones testified . . ."); *Id.* at 14 ("Other Garmin employees, . . . have also testified to using the same accused features of the accused devices **on behalf of Garmin**.") (emphasis added).  If these employee acts constitute infringement, it is direct infringement by Garmin according to Visteon's own allegations.  As noted above, Garmin cannot induce its own direct infringement.

The case cited by Visteon, *Wordtech Sys., Inc v. Integrated Networks Solutions, Inc.*, 609 F.3d 1308, 1315 (Fed. Cir. 2010), is not at all relevant here.  *Wordtech* dealt with the situation where two corporate officers (Khatemi and Assadian) had also been named, personally, as defendants, in addition to their company, Integrated Network Solutions, Inc.  The portion relied on by Visteon dealt with the issue of whether those two corporate officers could be personally liable for inducing the infringement of their corporation.  Thus, even in that case, inducement was premised on inducing the infringement of "another."  Here, no corporate officers of Garmin are named defendants, and Visteon has not alleged that any third party induced Garmin to directly infringe the claimed methods."

### Special Master's Conclusions

Garmin has  provide the correct guidelines on the issue and it is recommended that the Court find, as a matter of law, that Visteon must prove direct infringement by a customer of Garmin as a predicate to any claim for inducing infringement by Garmin. If the Court agrees with the above recommendation that Visteon has not proven direct infringement by neither Garmin nor its customers, Visteon's request for summary judgment finding that Garmin has

induced infringement of the '408 patent, should also be denied. However, should the Court disagree and determine that the direct infringement predicate has been satisfied, the merits of the issue of whether Visteon has established that Garmin has induced infringement, will be reviewed.

### The Guiding Legal Principles

As set out above, the parties have provided the Court with the law that governs the determination of inducing infringement. A couple of Federal Court cases, provided by Garmin, summarize the applicable law:

> To establish liability under § 271(b), a patent holder must prove that once the defendants knew of the patent, they actively and knowingly aided and abetted another's direct infringement. However, knowledge of the acts alleged to constitute infringement is not enough. The mere knowledge of possible infringement by others does not amount to inducement; specific intent and action to induce infringement must be proven.

*DSU Med. Corp. v. JMS Co.*, Ltd., 471 F.3d 1293, 1305 (Fed. Cir. 2006) (en banc). That is, "[t]he specific intent necessary to induce infringement 'requires more than just intent to cause the acts that produce direct infringement. Beyond that threshold knowledge, the inducer must have an affirmative intent to cause direct infringement.'" *Kyocera Wireless Corp. v. ITC*, 545 F.3d 1340, 1354 (Fed. Cir. 2008) (quoting *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Corp. v. ITC, 545 F.3d 1340, 1354 (Fed. Cir. 2008).

At the hearing on the MSJ, Garmin cited one additional Federal Circuit case:

> Accordingly, one could be aware of a patent and induce another to perform the steps of the patent claim, but have a good faith belief that the patent is not valid. Under the circumstances, it can hardly be said that the alleged inducer intended to induce infringement. Thus, a good faith belief of invalidity is evidence that may negate the specific intent to encourage another's infringement, which is required for induced infringement.

51

*Commil USA, LLC v. Cisco Sys.,Inc.* 720 F.3d 1361,1368-69 (Fed. Cir. 2013)

### The Summary Judgment Evidence on the Issue

The evidence on which Visteon relies to prove inducement is not in dispute and can be summarized as follows:

> Garmin has continued to sell its devices after knowledge of the patent;
>
> Garmin has issued Manuals and other materials demonstrating how to use the devices and encouraging customers to use its devices;
>
> Garmin is aware of Visteon's infringement contentions;
>
> Garmin is aware of use of its devices by employees and customers;

(*See* Visteon's MSJ hearing slide 59 to 61).

Visteon contends the foregoing evidence is sufficient to show intent to infringe, but it cites no cases in support of this position. Indeed, as Garmin correctly pointed out in its briefs and at the hearing, the evidence relied on by Visteon merely shows that Garmin was going about its business of selling its products and does not, in and of itself, prove an intent to infringe. The issue is clearly not ripe for a summary determination. This issue can only be determined at trial, with the burden on Visteon to demonstrate that Garmin conducted its business with full knowledge of the patent infringement claims, but without a good faith belief in either its invalidity or its non-infringement defenses.

It is the Special Master's recommendation that the Court deny Visteon's MSJ for inducing infringement.

## VISTION'S MOTION SEEKING DISMISSAL OF GARMIN'S § 112 DEFENSES AS TO THE '357 AND '060 PATENTS

### VISTEON'S OPENING POSITION

Garmin alleges that the '375 patent and the '060 patent are invalid under 35 U.S.C. § 112 for lack of enablement and a proper written description.  Enablement is a question of law; written description is a question of fact.  *Falko-Gunter Falkner v. Inglis*, 448 F.3d 1357, 1363 (Fed. Cir. 2006).  By this motion, Visteon demonstrates, as a matter of law, that Garmin cannot prove by clear and convincing evidence that the '375 and '060 patents are invalid under 35 U.S.C. § 112.

#### Patents are Presumed Valid by Statute

35 U.S.C. § 282 (2010) provides:

> A patent shall be presumed valid. Each claim of a patent…shall be presumed valid independently of the validity of other claims . . . .  The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity.

A party asserting invalidity must do so by clear and convincing evidence.  *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2242 (2011) (holding that "§ 282 requires an invalidity defense to be proved by clear and convincing evidence.").

#### Enablement and Written Description

35 U.S.C. § 112 ¶ 1 states in pertinent part:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same.

This provision of § 112 gives rise to two separate requirements for patentability: the "enablement" requirement and the "written description" requirement. *Ariad Pharmaceuticals, Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351-52 (Fed. Cir. 2010).

### Enablement

To satisfy the enablement requirement, a patent specification must disclose to one of ordinary skill in the art how to make and use the claimed invention without undue experimentation. *See, e.g., Phillips Petroleum Co. v. U.S. Steel Corp.*, 673 F. Supp. 1278, 1291 (D. Del. 1987) *aff'd*, 865 F.2d 1247 (Fed. Cir. 1989); *Lindemann Maschinenfabrik v. American Hoist and Derrick Co.*, 730 F.2d 1452, 1463 (Fed. Cir.1984).  The enablement requirement is satisfied if, given what persons of skill in the art know, the specification teaches them to "make and use the invention." *Amgen Inc. v. Hoechst Marion Roussel*, 314 F.3d 1313, 1334 (Fed. Cir. 2003) (quoting *Genentech, Inc. v. Novo Nordisk, A/S*, 108 F.3d 1361, 1365, 42 USPQ2d 1001, 1004 (Fed. Cir.1997)).  "The 'invention' referred to in the enablement requirement of § 112 is the *claimed* invention." *Christianson v. Colt Indus. Operating Corp.*, 822 F.2d 1544, 1562 (Fed. Cir. 1987) *vacated on other grounds*, 486 U.S. 800, 108 S. Ct. 2166, 100 L. Ed. 2d 811 (1988).

The Federal Circuit established the relevant factors to be "considered in determining whether a disclosure would require undue experimentation" in the seminal case *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988).  The factors include:  "(1) the quantity of experimentation necessary, (2) the amount of direction or guidance presented, (3) the presence or absence of working examples, (4) the nature of the invention, (5) the state of the prior art, (6) the relative skill of those in the art, (7) the predictability or unpredictability of the art, and (8) the breadth of the claims." *Id*.

Importantly, "the dispositive question of enablement does <u>not</u> turn on whether the accused product is enabled." *Durel Corp. v. Osram Sylvania Inc.*, 256 F.3d 1298, 1306 (Fed. Cir. 2001) (emphasis added).  Indeed:

> [E]nablement does not require the inventor to foresee every means of implementing an invention at pains of losing his patent franchise.  Were it otherwise, claimed inventions would not include improved modes of practicing those inventions. Such narrow patent rights would rapidly become worthless as new modes of practicing the invention developed, and the inventor would lose the benefit of the patent bargain.

*Invitrogen Corp. v. Clontech Labs., Inc.*, 429 F.3d 1052, 1071 (Fed. Cir. 2005).  This holding recently was reinforced by the Federal Circuit in *Edwards Lifesciences AG v. Corevalve, Inc.*:

> Precedent establishes that "[t]he enablement requirement is met if the description enables any mode of making and using the invention." *Johns Hopkins Univ. v. CellPro, Inc.*, 152 F.3d 1342, 1361 (Fed. Cir. 1998) (quoting *Engel Indus., Inc. v. Lockformer Co.*, 946 F.2d 1528, 1533 (Fed. Cir. 1991)). *See also Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F.3d 1296, 1307 (Fed. Cir. 2010) ("the district court erroneously required Transocean to enable the most efficient commercial embodiment, rather than the claims"); *Durel Corp. v. Osram Sylvania Inc.*, 256 F.3d 1298, 1307 (Fed. Cir. 2001) ("If the disclosure enables a person of ordinary skill in the art to make a particular metal oxide coating from at least one of the suggested precursors, the enablement requirement for that oxide coating is satisfied"). Continuing development is often contemplated and necessary, while early filing is often essential.

2012 U.S. App. LEXIS 23385, at *6-7 (Fed. Cir. Nov. 13, 2012).

### Written Description

Whether a patent specification enables the claimed invention is a separate inquiry from whether the specification satisfies the written description requirement.  *Ariad Pharmaceuticals, Inc.*, 598 F.3d at 1351.  The "test for sufficiency [of the written description] is whether the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." *Id.* (internal citations

omitted).  To determine whether the written description requirement is satisfied, "an objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art" is required.  *Id*.  "Based on that inquiry, the specification must describe an invention understandable to that skilled artisan and show that the inventor actually invented the invention claimed."  *Id*.

However, "[t]he law does not require the impossible.  Hence, it does not require that an applicant describe in his specification every conceivable and possible future embodiment of his invention."  *SRI Intern. v. Matsushita Elec. Corp. of America*, 775 F.2d 1107, 1121 (Fed. Cir. 1985) (emphasis added); *Tyco Healthcare Group v. Biolitec, Inc.*, 2010 U.S. Dist. LEXIS 79560 *13 (N.D. Cal. August 3, 2010) ("for purposes of the written description requirement, the issue is not whether a specification provides an adequate description of an accused product, but, rather, whether the specification provides an adequate description of the claimed invention"); *see also Moba, B.V. v. Diamond Automation, Inc.*, 325 F.3d 1306, 1321 (Fed. Cir. 2003); *Inline Connection Corp. v. Earthlink, Inc.*, 684 F. Supp. 2d 496, 528, 531 (D. Del. 2010) (holding "written description analysis examines whether the inventor possessed the claimed invention, not whether he possessed or invented the accused technology.").

### Garmin's Enablement and Written Description Arguments

### Enablement and Written Description of the '375 patent

Garmin's defenses that Claims 1, 8, and 9 of the '375 patent are invalid under 35 U.S.C. § 112 are set forth in the Expert Report of Dr. William Michalson.  Exh. B at 627-31.  According to Dr. Michalson, the '375 patent neither enables nor properly describes the inventions of Claims 1, 8 and 9 because "under Visteon's [infringement] theory, Visteon accuses products that do not

add 'Home' to the history list when the user employs the shortcut 'GO Home,'" and because "Visteon's infringement theory applies…privacy claims to Garmin and Navigon software that, not only do not keep the user's 'Home' address private, but provide a specific button to make it easier for subsequent users to access that 'Home' address." *Id.* at 628-30.  During his deposition, Dr. Michalson summarized his analysis stating:

> Q: So in your analysis, you're basically determining whether or not the claims, as Visteon is applying them to the Nuvi 3750 and the Navigon device, are enabled; is that correct?
>
> A: I believe that's correct.

Michalson Dep. Tr., Exh. C at 175:12-17.

### Enablement and Written Description of the '060 Patent

Visteon has accused Garmin of infringing Claims 3, 4, and 6 of the '060 patent.  Garmin has asserted that Claims 3 and 4 (but not Claim 6) are invalid under the enablement and written description requirements.  These defenses are set forth in the report of Dr. Michalson.  Exh. B at 338-42.  A review of Dr. Michalson's report shows that Garmin's defenses center on, and are limited to, whether the '060 patent describes and/or explains the features of Garmin's Accused Products that form the basis for Visteon's claims of infringement.  In other words, on pages 338-41 of his report, Dr. Michalson focuses on Visteon's "first" or "GO" theory of infringement; on pages 339 and 341-42, he focuses on Visteon's "Second" or "Detour" theory of infringement. *See Id.*  Dr. Michalson summarizes his position stating:

> In sum, the '060 patent specification teaches away from both Visteon's infringement theories for claims 3 and 4. Thus, because a person of ordinary skill in the art, after reading the specification, would not understand the '060 specification to provide any guidance whatsoever as to how to practice Visteon's interpretation of the claimed invention without undue experimentation, claims 3

and 4 of the '060 patent are invalid for failing to meet the enablement requirement. Similarly, because the specification does not indicate that the inventors considered their invention to relate, in any way, to well known detour functionalities, the specification demonstrates that the inventors were not in possession of what is now being asserted to be the claimed invention.

*Id*. at 342.

### Garmin's Enablement Defenses are Fatally Flawed

Garmin's arguments fail to provide any basis for concluding that the asserted claims of the '375 and '060 patents lack enablement or fail to comply with the written description requirement. Instead, Garmin's defenses focus on the irrelevant inquiry of whether the patents enable and/or describe Garmin's accused products. At least one court has called such an approach "flatly contrary to a proper enablement analysis." *Inline Connection Corp*, 684 F. Supp. 2d at 526. Importantly, Garmin does not contend that the asserted claims of the '375 and '060 patents are invalid *per se*; rather, its contentions are predicated on Visteon's infringement allegations. *See, e.g.*, Exh. B at 628 ("*If* Visteon is correct that its strained interpretation is within the scope of the asserted claims of the '375 patent, *then* these claims lack enablement. . . .") (emphasis added). "The enablement requirement is met if the description enables any mode of making and using the invention." *Edwards Lifesciences A.G.*, 2012 U.S. App. LEXIS 23385, at *6-7. Garmin's defenses fail as a matter of law for several reasons.

As the Federal Circuit has stated, "the dispositive question of enablement does not turn on whether the <u>accused product</u> is enabled." *Durel Corp*, 256 F.3d at 1306 (emphasis added). For this reason alone, Garmin's enablement defenses should be dismissed. District courts applying the proper standard have repeatedly rejected non-enablement theories like those presented by Garmin. For example, in *Kemin Foods, L.C., v. Pigmentos Vegetales Del Centros*

58

*S.A. De C.V.*, the Court held that:

> [The defendant] cannot use its own product as the basis for an enablement analysis, as this issue is not determined by whether the accused product is enabled. . . . Further, [the defendant] has not demonstrated that undue experimentation would be required to prove the '714 patent was not enabling to one skilled in the art.

2004 U.S. Dist. LEXIS 17737, at *79 (S.D. Iowa Sept. 2, 2004).  Similarly, in Inline Connection

Corp, the court held that:

> [The defendant's] assertion that the patents must enable a system that can transmit up to 16,000 feet because that is the distance over which the *accused system* operates is flatly contrary to a proper enablement analysis. . . . By requiring that the patent enable an end-to-end ADSL system, defendants ignore the rule that the specification "need not enable anything broader than the scope of the claims." This protects patentees from having someone avoid infringement merely by adding one additional element to an otherwise infringing product. . . . Thus, while defendants' ADSL service allegedly uses the claimed system to infringe, that does not mean that the patent specification must enable the ADSL service as opposed to merely the claimed system. . . . The court again rejects [the defendant's] argument that the patents-in-suit must enable the accused product, and that the accused product embodies the full scope of the claims at issue.

684 F. Supp. 2d at 526-27 (holding that the patents-in-suit were enabled) (emphasis

original).  Like the defendants in *Kemin* and *Inline*, Garmin cannot use its own product (*i.e.*, the

accused devices) as the basis for an enablement analysis.   Furthermore, a proper enablement

inquiry focuses on whether "the specification . . . enable[s] one of ordinary skill in the art to

practice the claimed invention without undue experimentation." *Nat'l Recovery Techs., Inc. v.*

*Magnetic Separation Sys., Inc.,* 166 F.3d 1190, 1196 (Fed. Cir. 1999).  In *Wands*, the Federal

Circuit set forth the factors that should be "considered in determining whether a disclosure would

require undue experimentation."  *Wands*, 858 F.2d at 737; *Boston Sci. Corp. v. Johnson &*

*Johnson*, 647 F.3d 1353, 1369 (Fed. Cir. 2011) ("*Wands* lists the factors to be considered in

determining whether a disclosure would require undue experimentation.").

The *Wands* factors are set forth in Section II.B above (page 54). Even Garmin's Dr. Michalson acknowledged that a proper enablement analysis requires consideration of the *Wands* factors. Exh. B at 15 (explaining that he "should consider [these] . . . factors in determining whether the level of disclosure in the patent would require undue experimentation and show a lack of enablement."). Notwithstanding Garmin's bare allegations that undue experimentation would be required to practice the claimed inventions, the *Wands* factors are not discussed or analyzed in Garmin's Final Invalidity Contentions or in Dr. Michalson's report with respect to the '375 and '060 patents. *Id.* at 338-42, 627-31; Garmin's Final Invalidity Contentions at 33-34, 37-38. Garmin's failure to adduce evidence referencing the *Wands* factors with respect to either the '375 patent or the '060 patent (despite acknowledging their relevance) precludes preservation of Garmin's enablement defenses with respect to these patents. *Inline Connection Corp.*, 684 F. Supp. 2d at 526-27 (holding that the patents-in-suit were enabled where there "was no testimony concerning the amount of experimentation required to practice the claimed inventions."); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); Exh. B at 15-16; Exh. C at 26:9-28:13.

Further, "[t]he enablement determination proceeds as of the effective filing date of the patent." *MagSil Corp. v. Hitachi Global Storage Techs.*, 687 F.3d 1377, 1380 (Fed. Cir. 2012). Nowhere in the relevant section of Dr. Michalson's Report does he provide any discussion about the state of the art on those dates, what one of skill in the art knew at the time, or whether, based on such knowledge, the claims were enabled at that time. Instead, showing his confusion about how to conduct a proper enablement analysis, Dr. Michalson focuses on Garmin's accused PNDs – products that did not come into existence until 2004, years after the filing dates of the '060 and '375 patents. *See* Garmin's Fifth Supplement Response to Visteon's First Set of Interrogatories,

Exh. D at 2-7. This is precisely why the Federal Circuit cautioned against looking to later developed "modes of practicing the invention" in the enablement inquiry. *Invitrogen Corp.*, 429 F.3d at 1071. For these reasons, Visteon is entitled to summary judgment that Garmin has not proven, and cannot prove that the '375 patent and '060 patent are invalid for lack of enablement.

### Garmin's Written Description Defenses Also Fail

Garmin's arguments regarding written description are merely a second rendition of its arguments on enablement. Garmin argues that because the patents do not textually describe the accused products, the patents are invalid under the written description requirement. Garmin's argument is contrary to law and common sense. "Again, the written description requirement examines the claimed inventions, not the accused product." *Inline Connection Corp.*, 684 F. Supp. 2d at 534. Furthermore, the Federal Circuit has repeatedly stated that, in assessing written description, the relevant inquiry is "an objective inquiry into the four corners of the specification," rendering irrelevant any assessment of written description as against an accused product. *Centocor Ortho Biotech, Inc. v. Abbott Laboratories*, 636 F.3d 1341, 1348 (Fed. Cir. 2011) *cert. denied*, 132 S. Ct. 1542, 182 L. Ed. 2d 162 (2012) ("Assessing such 'possession as shown in the disclosure' requires 'an objective inquiry into the four corners of the specification.'").

Because Garmin's written description was not separately analyzed and focuses improperly on the accused devices, Visteon is entitled to Summary Judgment that Garmin cannot prove that the '375 and '060 patents are invalid for failure to comply with the written description requirement of 35 USC § 112, ¶1.

**GARMIN'S OPPOSITION**

Visteon has manipulated the scope of its patent claims in this case to such an extent that it has rendered its own patents invalid. Claims have a fixed meaning, and when a patent owner decides to extend those claims too far out-of-context, problems rightfully arise. The enablement and written description requirements of § 112 both stand in the way of unfettered claim manipulation. *Reiffin v. Microsoft Corp.,* 214 F.3d 1342, 1345 (Fed. Cir. 2000) ("The purpose of [§ 112, ¶ 1] is to ensure that the scope of the right to exclude, as set forth in the claims, does not overreach the scope of the inventor's contribution to the field of art as described in the patent specification."). Visteon seeks to loose these fetters through summary judgment. Yet, Visteon's summary judgment papers all but ignore the actual record in this case.

### Visteon Has Manipulated The Scope Of The Claims Beyond Their Support

Visteon's claim scope manipulations are the starting point for this discussion. As an initial matter, Garmin notes that it has submitted the '060 patent for reexamination based on Visteon's overreaching assertion of the patent. *See* Garmin's Motion to Stay (Dkt. No. 155). The USPTO has granted that reexamination. *See* Reexam Order (Dkt. No. 155-1). Because considering the '060 patent here is very likely to be a waste of time, Garmin has requested a stay of proceedings related to that patent. *See* Garmin's Motion to Stay (Dkt. No. 155). Nonetheless, Garmin will respond to Visteon's motion should the Court wish to consider arguments regarding the '060 patent at this time.

### The '060 Patent

The '060 patent generally describes a navigation system that allows a user to preview a route to their destination before they start traveling and, if there is something the user does not

like about the route, to request that the device calculate an alternate route to the destination. In shorthand, the '060 describes a route preview and edit functionality. Each of the asserted claims requires this ability to preview and edit a route. *See, e.g.,* '060 patent, col. 6, ll. 56-59 ("means for enabling an operator of said vehicle to preview said optimal path; and input means for permitting said operator of said vehicle to request an alternate optimal path on demand."). According to the '060 patent, a user edits a route by operating a cancel switch to specify a portion of the original route to cancel, and "the optimal path is re-calculated, excluding the canceled portion." *Id.* at col. 5, ll. 17-19; *see generally* col. 4, l. 66 – col. 5, l. 21 (further description of the cancel function). Unfortunately for Visteon, Garmin's products do not have a feature that allows a user to preview and then edit a route before traveling.

Because Garmin's products lack this feature, Visteon resorts to manipulating the scope of the patent to argue that its claims are broad enough to cover the mere change of a route calculation preference (*e.g.*, shortest route, fastest route, etc.). *See* Lokshin Declaration (Dkt. No. 157-7) at 23. The '060 patent does refer to the concept of route calculation preferences – just not in a way that helps Visteon. '060 patent, col. 2, ll. 52-53 ("Usually, the optimal path is calculated so that the shortest distance or the shortest time can be obtained."). This passing reference to route calculation preferences has absolutely nothing to do with the patent's discussion of requesting and/or calculating an alternate optimal route. Ex. A, Michalson Declaration at ¶¶ 16-17. The '060 patent never so much as suggests that a user changing their device's route calculation preferences could constitute a request for an alternate route. *Id*. And this is only one example of how Visteon has contorted the scope of the '060 patent to suit its interests.

### The '375 Patent

Visteon's approach to the '375 patent is badly off-target.  Garmin would ask that the Court review Garmin's motion for summary judgment of non-infringement on this patent for salient context.  *See* Dkt. No. 159 at 11.  For purposes of the instant issue, the '375 patent generally describes a method for creating a category-specific destination history.  Each asserted claim requires that a selected destination is automatically added to a destination history "only where the [ ] destination belongs to [a] specific category."  *See, e.g.*, '375 patent, col. 7, ll. 24-26. The patent describes this feature at col. 5, l. 45 – col. 6, l. 16, which describes the creation of a category-specific destination history in language very similar to the claims themselves.

Visteon contends that the scope of the asserted claims is broad enough to be satisfied by a destination history that is not category specific. *See* Garmin's Motion for Summary Judgment (Dkt. No. 159) at 11; *see also* Lokshin Dec. (Dkt. No. 157-7) at 126.  Visteon's asserted claim scope is 180° opposite of the invention described in the '375 patent.  Ex. A, Michalson Dec. at ¶¶ 24-27.  A claim that is purportedly broad enough to be antithetical to the patent's description is neither enabled nor does it satisfy the written description requirement.  *See id.*

### Visteon Badly Misconstrues Garmin's Defenses

Visteon emphasizes that neither the enablement nor written description requirements focus on the accused product.  Visteon's Motion ("Br.") at 4-5.  While true, this speaks to a different issue than the one at hand.  The premise of the cases relied upon by Visteon is a simple one: accused products may have features that are outside the scope of the asserted claims, and there is no need for the patent to enable or describe anything beyond the scope of the claims.  For example, assume an accused product has features A, B, C, and D, and that the claim scope addresses only A, B, and C.  In this circumstance, the law does not require the patent to enable or

describe D – only A, B, and C, i.e., the full claim scope.  This concept is described in *Inline Connection Corp.*, a case relied on by Visteon, where the court stated:

> [The defendant's] assertion that the patents must enable a system that can transmit up to 16,000 feet because that is the distance over which the *accused system* operates is flatly contrary to a proper enablement analysis. . . .  *[D]efendants ignore the rule that the specification "need not enable anything broader than the scope of the claims." This protects patentees from having someone avoid infringement merely by adding one additional element to an otherwise infringing product. This distinction is particularly important in the present matter because the accused system contains features that are not part of the claimed system, but which [defendant] contends must be enabled by the specification.*

*Inline Connection Corp. v. EarthLink, Inc.*, 684 F. Supp. 2d 496, 526-27 (D. Del. 2010) (emphasis added).  Garmin has not premised any § 112 defenses on the fact that its products include features beyond the asserted scope of the claims.  *See* Ex. A, Michalson Dec. at ¶¶ 11-12; *see also* Ex. B, Michalson Tr. at 200:1-201:8.  The rule Visteon relies upon has no impact whatsoever on Garmin's defenses.

*Inline* does, however, state the applicable rule – that the patent description must enable the full scope of the claims.  *See also Automotive Techs. Int'l v. BMW of N. Am., Inc.*, 501 F.3d 1274, 1285 (Fed. Cir. 2007) ("In order to fulfill the enablement requirement, the specification must enable the <u>full scope</u> of the claims.").  For the same rule applied in the written description context, *see LizardTech, Inc. v. Earth Res. Mapping, Inc.*, 424 F.3d 1336, 1345 (Fed. Cir. 2005) (specification must demonstrate that "the inventor possesses the <u>full scope</u> of the invention.").  Every patent owner is confronted with a decision – apply the claims as originally described in the patent, or stretch the claims to ensnare more revenue.  When a patent owner elects greed over legitimate patent scope it invokes the Federal Circuit's frequent admonition to "beware of what one asks for" – if you ask for claim coverage beyond your patent's context, be prepared to face

65

the consequences. *See Liebel-Flarsheim Co. v. Medrad, Inc.*, 481 F.3d 1371, 1380 (Fed. Cir. 2007) ("The irony of this situation is that [the patentee] successfully pressed to have its claims include a jacketless system, but, having won that battle, it then had to show that such a claim was fully enabled, a challenge it could not meet."); *see also Magsil Corp. v. Hitachi Global Storage Techs., Inc.*, 687 F.3d 1377, 1384 (Fed. Cir. 2012) ("[The patentee's] difficulty in enabling the asserted claims is a problem of its own making.).  Garmin's § 112 defenses, as in each of these cases, are not based on Garmin's commercial embodiment, but on Visteon's overbroad claim interpretations as described above.  Ex. A, Michalson Dec. at ¶¶ 11-12; *see also* Ex. B, Michalson Tr. at 200:1-201:8.

Visteon should be aware at this point it is mischaracterizing Garmin's defenses.  Visteon tried this exact same game with Garmin's invalidity expert, Dr. Michalson, and was set straight in no uncertain terms:

Q. Okay. And, again, the 112 analysis is based on Visteon's infringement theories as applied to the Garmin accused devices?

A.   That's also correct.

Q. So the question you're asking yourself is whether or not a commercial embodiment is described in the specification of the '375?

A.  No.

Q. Okay. So what is the question you're asking yourself with respect to enablement as it is applied to the Nuvi devices?

. . . .

A.  In looking at, for example, enablement, but a similar argument applies to written description, Visteon -- I'm not worried about any particular commercial manifestation of a product. I'm looking at the claim interpretation that Visteon

appears to be putting forth, and that claim interpretation appears to be completely and utterly antithetical to the teachings of the specification.

Ex. B, Michalson Tr. at 200:1-201:8.  As Dr. Michalson already made clear to Visteon, Garmin's enablement/written description defenses are not predicated on Garmin's commercial embodiment, but on Visteon's overbroad claim interpretations.  The fact that Visteon elected to advance this argument despite what should have been a contrary understanding is telling.

Visteon's errant legal jab is the central premise of its motion.  Because Visteon is demonstrably misconstruing Garmin's defenses, little more need be said.  When Garmin's actual defenses are considered, they more than past muster.  Enablement and written description are the fetters that keep patent owners honest.  And Visteon cannot escape these restraints by saying Garmin's defenses are something they are not.  Visteon's motion should be denied.

**Visteon's Attack On Dr. Michalson's Report Is Wrong Both Legally and Factually**

Visteon also argues that Garmin fails "to adduce any evidence referencing the Wands factors" in its enablement analysis.  Br. at 9-10.  The *Wands* factors provide a non-exhaustive set of considerations that may be considered in determining whether a disclosure would require undue experimentation to make and use the full scope of the claim.  Visteon seems to suggest the Wands factors represent some form of magical incantation that must be spoken in a particular format satisfying to Visteon before they can constitute evidence of a lack of enablement. Contrary to this approach, the Federal Circuit has made clear that the *Wand*s factors "are illustrative, not mandatory." *Streck, Inc. v. Research & Diagnostic Sys., Inc.*, 665 F.3d 1269, 1288 (Fed. Cir. 2012); *see also Amgen, Inc. v. Chugai Pharm. Co., Ltd.*, 927 F.2d 1200, 1213 (Fed. Cir. 1991) ("[I]t is not necessary that a court review all the Wands factors . . . What is relevant depends on the facts . . .").

Furthermore, Dr. Michalson did consider and apply the relevant Wands factors in his enablement analysis, and he explained this to Visteon.  *See* Ex. B, Michalson Tr. at 92:20-95:25. Many of the *Wands* factors relate to background material set forth in Dr. Michalson's report.  Dr. Michalson explained that the enablement sections of his report were intended to build upon this background and set forth additional analysis not already provided.  Taking the '060 patent as an example (and at the risk of overkill), Dr. Michalson considered:

- the "relative skill of those in the art" with respect to the '060 patent (Ex. A, Michalson Dec. at Ex. A2 (Michalson Expert Report ("Rep.")) at 9)

- the "state of the prior art" with respect to the '060 patent (Rep. at 22-56)

- the "nature of the invention" in the '060 patent  (*Id.* at 57-68)

- the "breadth of the claims" (*Id.* at 338-339)

- the "amount of direction or guidance" – or contrary guidance – presented in the specification (*Id.* at 339-341; *see also Id.* at 57-59).

All these factors fed into Dr. Michalson's conclusion at page 342 of his report that the '060 patent's description does not enable the full scope of the claims as asserted by Visteon in this case.  *Id*. at 342.  Dr. Michalson's analysis of the lack of enablement on the '375 patent, as asserted by Visteon, was similarly set out and culminated in his conclusions set forth at pages 627-631 of his report.  *See Id*. at 627-631.  Dr. Michalson's report thoroughly addressed the enablement question, including the relevant *Wands* factors, and provides a full predicate for Dr. Michalson to offer evidence regarding the invalidating overbreadth with which Visteon has asserted these patents.

**VISTEON'S REPLY**

Viewed through the lens of Rule 56, Fed.R.Civ.P., Garmin's response to Visteon's Motion for Partial Summary Judgment is long on attorney argument and short on evidence that creates genuine issues of material fact.  Notwithstanding Garmin's attempts to distract the Court's attention from the issues at hand (by reference to irrelevant reexamination proceedings and its belated Motion to Stay), Visteon is entitled to summary judgment regarding Garmin's § 112 defenses directed at the '375 and '060 patents.

Garmin's defenses, which focus only on the irrelevant inquiry of whether the patents enable and/or describe the infringing features of Garmin's accused products, are legally untenable.  Garmin relies on inapt alphabetical analogs and misreads *Inline Connection Corp. v. EarthLink, Inc.* to support its defenses, but omits a key portion of the quoted section of *Inline*:

> The dispositive question of enablement does not turn on whether *the accused product* is enabled.  Rather, '[t]o be enabling, the specification of the patent must teach those skilled in the art how to make and use the *full scope* of *the claimed invention* without undue experimentation.'

684 F. Supp. 2d 496, 526-27 (D. Del. 2010) (emphasis in original).  While the features of the accused products on which Garmin focuses its enablement defenses are relevant to whether the accused products satisfy the asserted patent claims, that confluence does not equate to a legal requirement that the patents in suit must enable/describe the infringing features of the accused products.  To the contrary, the law is clear:  that which must be enabled/described are the patent claims, not the accused products.  *Durel Corp. v. Osram Sylvania Inc.*, 256 F.3d 1298, 1306 (Fed. Cir. 2001).  Garmin's arguments are not bottomed on claim limitations; but on particular features of the accused products —"*If* Visteon is correct that its strained interpretation is within the scope of the asserted claims of the '375 patent, *then* these claims lack enablement . . . ." (Dkt. 170-2 at 628) (emphasis added) — which is *precisely* the errant analysis that the law soundly

rejects.   In this way, *e.g.*, Garmin's "Home" feature is no more in need of enablement or description than was the "16,000 feet" feature of the accused device in Inline Connection. Garmin's focus on the features of the accused products does not meet its clear and convincing burden of showing that the claims are not enabled or lack written description. [Visteon provided the Court a complete analysis of the *Wands* factors to show that the claims are enabled and supported by a proper written description.  *See* Visteon's Motion for Partial Summary Judgment Dkt. No. 157-7 at Rebuttal Report: 15-22, 227-33.]

Garmin attempts to confuse the court by wrongly conflating § 112 defenses with infringement.  *Moba, B.V. v. Diamond Automation, Inc.*, 325 F.3d 1306, 1321 (Fed. Cir. 2003) (patented method held not invalid under § 112 where such argument "merely revive[d] its noninfringement argument in the cloak of a validity challenge.").   Indeed, Garmin's twist is exemplified in its brief repeatedly by referencing an alleged "overbroad" assertion of the claims. *See, e.g.*, Dkt. No. 170 at 4 ("Garmin's 112 defenses … are … based … on Visteon's overbroad claim interpretation.").   The claim scope already has been decided – in many respects, it was not even challenged.   If Garmin believes that its products are not covered by the claims *as interpreted by the Court*, then it can argue that its products do not infringe.  What Garmin cannot do is avoid its burden of proof by urging non-infringement under the guise of § 112.  *Moba, B.V.*, 325 F.3d at 1321.

Turning to the Wands factors, Garmin first deflects by arguing that the *Wands* factors need not even be addressed.  Dkt. No. 170 at 6-7.  Then, Garmin's *counsel* attempts to re-organize Dr. Michalson's report so as to make it appear that he cross-referenced other parts of his report in the few sections dealing with § 112.  Dr. Michalson's report and his deposition testimony belie Garmin's tact.   [Dr. Michalson's report explicitly states: "[m]y opinions

regarding written description and enablement of the '060, '892, and '375 patents are also set forth below in sections VI.E, VII.E, and IX.B" - which do not include the overriding majority of the analysis now belatedly "assembled" by Garmin's counsel.  Dkt. No. 170-2 at 8. ]  *See* Michalson Dep. Trans. Dkt. No. 157-5 at 179:18- 22 ("Q. … In the '060 112 section from 338 through 342, can you confirm for me that there are no cross-references to prior sections?  A. It doesn't look like there are cross-references to other sections of the report."); *Id*. at 205:5-11 ("Q. … And just so the record is clear, as I'm looking through 621 -- 627, 28, 29, and 30, which is the enablement analysis on the '375, there are no cross-references back to other sections of the report? A. 26, 27, and 630, I believe that's correct.").

Further, when Dr. Michalson does use terms associated with § 112 (*i.e.*, "enablement," "undue experimentation," "112," "written description," *etc.*), he opines that the (infringing) features *of the accused products* are not enabled/described, which is the incorrect the legal standard.  *See* Dkt. No. 170-2 at 338-341, 627-631.  Given Garmin's burden of proving invalidity by clear and convincing evidence, its response to Visteon's Motion is too little, too late.

## SPECIAL MASTER'S ANALYSIS AND RECOMMENDATIONS

Visteon's motion for summary judgment as to Garmin's enablement and written description defenses under § 112, presents one of those rare cases where one party is totally correct in its statement of underlying facts and law and arguments based on such facts and law, and the other party is totally wrong in every respect.  In this case, it is the Special Master's opinion that Visteon has it all right and Garmin has it all wrong.  Despite Garmin's efforts to change the basis for its § 112 defenses, it is abundantly clear that its defenses in this respect are misdirected. There can be no real doubt that Garmin has based these defenses on a claim

construction that is not tied to claim language, but instead has incorrectly based its defense on how Visteon is allegedly interpreting the claims to find infringement by the accused products. This reliance is best shown by the quote from Garmin's expert, Dr. Michalson, offered by Garmin at the hearing:

> "A. In looking at, for example, enablement, but a similar argument applies to written description, Visteon—I'm not worried about any particular commercial manifestation of a product. **I'm looking at the claim interpretation that Visteon appears to be putting forth**, and that claim interpretation appears to be completely and utterly antithetical to the teachings of the specification."

(Garmin Slide 4)(emphasis added.)

The claim interpretation that "Visteon appears to be putting forth" is not one urged by Visteon in any of the relevant intrinsic evidence, i.e., the claims, the specifications or the file histories of the '375 and the '060 patents.  Likewise, Visteon has not sought or received such a claim construction from this Court. Instead, as seen above, the claim interpretation relied on by Dr. Michalson's is one he derived from his (and Garmin's counsel, no doubt) interpretation of Visteon's infringement contentions.  The contentions, of course, assert that certain products of Garmin infringe these two patents.  Garmin does not, and cannot, cite a single case where a patentee has run afoul of the enablement and written description requirements of 35 U.S.C. § 112, based on an interpretation of the patentee's infringement contentions alone.

The law cited by Visteon fully supports its position and dictates that Garmin's approach to its enablement and written description defenses is without merit.  Indeed, the few cases cited by Garmin do not support Garmin's defenses.  The three cases Garmin focused on at the hearing were: *Inline Connection Corp. v. EarthLink, Inc.*, 684 F. Supp. 2d 496 (D. Del. 2010); *Liebel-Flarsheim Co. v.Medrad, Inc.*, 481 F.3d 1371 (Fed. Cir. 2007) and *Sitrick v. Dreamworks*, 516 F. 3d 993 (Fed. Cir. 2008).

As to the *Sitrick* case, Garmin, had this to say:

> "[T]he Court …(goes) through the **claim construction process**, they listen to the positions of the parties and the Court said, 'Mr. Sitrick, I will allow you **from a claim construction perspective** to extend the scope of our patent to cover movies because there's nothing on the face of the claim that would preclude that.'

(emphasis added.)(Tr. 20-21).

Obviously the Court being referenced in this quote is the District Court, because this is the place where the claim construction process must have taken place. After the foregoing quote from the *Sitrick* case, Garmin goes on:

> "But then the Federal Circuit looks at it and says,  'You have made a bad choice because in extending the scope of your claims beyond what was originally covered, you have now created an enablement problem. **You have interpreted the claim** to cover movie technology; your patent does not enable one skilled in the art to use your invention in that context. Now your claim is invalid.'"

(Tr. 21). (emphasis added.)

Based on the foregoing analysis of the *Sitrick* case, Garmin then paraphrases the Federal Court decisions saying "Be careful what you ask for, be careful of the choices you make." (Tr.21).   But in the present case, unlike *Sitrick*, Visteon did not seek or receive the claim construction from the Court that Garmin now attempts to attribute to Visteon by reason of its infringement contentions.   In brief, Garmin's reliance on *Sitrick* is misplaced and of no help to Garmin.

Likewise, the *Liebel-Flarsheim* case does not support Garmin's position. In this case the patentee, Liebel, during prosecution of the patent application, removed references to a pressure jacket and the issued claims did not explicitly cite a pressure jacket.   The Federal Circuit

determined that the asserted claims did not require a pressure jacket because none of the claims expressly mention a pressure jacket, the disclosures did not clearly disavow embodiments lacking a pressure jacket, and the prosecution history indicates that the claims purposefully did not claim a pressure jacket.  Based on the foregoing, the Court suggested that Liebel had overreached in amending its claims during prosecution to read on jacketless injectors, stating that "having won that battle" enablement presented a challenge that Liebel "could not meet".

Again, the patentee ran into § 112 problems by seeking and receiving claims broader than it had support for in the specification or any other evidence.  There is no evidence in this case that Visteon has ever won any battles for the construction now attributed to them by Garmin's.  It follows that since the facts in the present case are entirely different from those in the *Liebel* case, this case also does not support Garmin's position.

The third case relied on my Garmin is the *Inline* case.  This case and the opinions relied on are from the District Court of Delaware.  Visteon also relies on this case as it provides an excellent summary of the Federal Circuit law that governs the issue. As seen in its briefs and at the hearing, however, Garmin does not rely on such law.  Instead, while giving lip service to the relevant Federal Circuit cases cited in *Inline*, Garmin elects to rely on a statement in the opinion related to an earlier decision by the Court wherein it had barred enablement testimony from EarthLink's expert, Waring.  This one snippet from the case provided by Garmin is found in full above.  The following sections of the opinion, from which Garmin extracted the parts cited, puts Garmin's quote in context.   The limited cites from the opinion relied on by Garmin are underlined so the Court can readily see the critical language omitted by Garmin:

> "EarthLink [defendant] argues that the full scope of the claims, 'and that the claim scope (*as seen by the accused system*) cover[s] hardware and frequency levels that

transmit[] over telephone wires for multiple thousands of feet.'  (emphasis in original).  EarthLink concludes that the specification must enable a system that can transmit up to 16,000 feet.

"EarthLink's assertion that the patents must enable a system that can transmit up to 16,000 feet because that is the distance over which the accused system operates is flatly contrary to a proper enablement analysis. (emphasis in original).  'The dispositive question of enablement does not turn on whether the accused product is enabled.  Rather, '[t]o be enabling, the specification of the patent must teach those skilled in the art how to make and use the full scope of the claimed invention without undue experimentation.' (*Durel Corp. v. Osram Sylvania Inc.*, 256 F.3d 1298, 1306 (Fed. Cir. 2001) (quoting *Genentech, Inc. v. Novo Nordisk, A/S*, 108 F.3d 1361, 1365 (Fed. Cir.1997)) (alteration and italicization in original, underlining added).

"More surprising to the court is that EarthLink's **accused product based enablement** argument was previously rejected by the court in its preclusion of Waring's [defendant's expert] enablement testimony recited in his expert report. In precluding Waring's enablement testimony, the court stated:

'By requiring that the patent enable an end-to-end ADSL system, defendants ignore the rule that the specification 'need not enable anything broader than the scope of the claims.' This protects patentees from having someone avoid infringement merely by adding one additional element to an otherwise infringing product. This distinction is particularly important in the present matter because the accused system contains features that are not part of the claimed system, but which Waring [which Garmin changed to 'Defendant' as it better served its purposes] contends must be enabled by the specification. For example, according to Waring  'ADSL is designed to operate over distances of up to approximately three miles [approx. 18,000 feet] and do so without any additional amplification mid-way along the transmission path.' He concludes that 1,000 feet is the farthest distance discussed in the patent specifications, and therefore, the patents do not enable one of ordinary skill in the art to make an ADSL system which operates distances of 18,000 feet.

* * * *

'Thus, while defendants' ADSL service allegedly uses the claimed system to infringe, that does not mean that the patent specification must enable the ADSL service as opposed to merely the claimed system.  (D.I. 613 at 8-9 (footnotes and citations omitted)."

The court again rejects EarthLink's argument that the patents-in-suit must enable the accused product, and that the accused product embodies the full scope of the claims at issue." (684. F.Supp. at 525-28).

75

As the foregoing full quote from the case makes clear, Garmin omitted all of the relevant governing Federal Circuit law from its limited citation.  Instead, Garmin elected to ignore the rules of the Federal Circuit and urge a new rule of law, one based on a single observation by the District Court as to one possible rational for the rule:

> "This protects patentees from having someone avoid infringement merely by adding one additional element to an otherwise infringing product. This distinction is particularly important in the present matter because the accused system contains features that are not part of the claimed system, but which Waring contends must be enabled by the specification."

Not surprising, using its new rule as a guidepost, Garmin argues that the facts in the present case fit the rule and, therefore, its enablement defense is saved.  According to Garmin: "Garmin has not premised any § 112 defenses on the fact that its products include features beyond the asserted scope of the claims……The rule Visteon relies upon has no impact whatsoever on Garmin's defenses."

In fact, the non-rule/rational relied on by Garmin does not save its enablement or its written description defenses. When the facts in the present case are substituted into the last two paragraphs of the *Inline* opinion (quoted above), the resulting finding and ruling should, in the opinion of the Special Master, be the finding and ruling by the Court in the present case:

> Thus, while [Garmin's navigation devices] allegedly use the claimed system to infringe, that does not mean that the patent specification must enable [such devices] as opposed to merely the claimed system.   The Court.....rejects [Garmin's] argument that the patents-in-suit must enable the accused product(s), and that the accused product(s) embody the full scope of the claims at issue.

Finally, as noted earlier in this report, Visteon, in addition to the foregoing arguments in

support of its MPSJ, asserts that Garmin has also failed to meet its burden as to its enablement defenses because Garmin has not established that the patent specification fails to disclose to "one of ordinary skill in the art how to make and use the claimed invention *without undue experimentation*." (quote from § 112, Visteon slide 4 at the hearing). In the *Wands* case (858 F. 2d 737) the Federal Circuit set out several factors to be considered when determining whether a disclosure could be enabled without undue experimentation. As noted in the *Streck* case (cited in Visteon's Hearing slide 13), however, the *Wand* factors, (set forth in full in Visteon's hearing slide 11), are illustrative, not mandatory. Garmin's expert, Dr. Michalson, however, did not do a *Wand* factor analysis. He did not review the scope of the claims as issued; instead he just tracked Garmin's arguments on the issue with focus on the scope of the claims "as asserted by Visteon in this case" (*i.e.*, Visteon's infringement contentions)(Garmin's Opp. to Summary Judgment, quoted on Visteon's Slide 17). As a substitute for the specific analysis of the *Wand* factors, Garmin tries to back into a *Wands* factor analysis for Dr. Michalson by piecing together parts of Dr. Michalson' report that relate to other issues (*See* Visteon slides 11-18, and related arguments) Garmin's efforts in this regard fall far short of establishing that "undue experimentation" would be required by one of ordinary skill in the art to enable the claims in the patent. It is the opinion of the Special Master that Visteon has presented the Court with a correct analysis of the facts and law relating to the *Wand* analysis. Accordingly it is recommended that the Court should adopt such analysis.

In conclusion, and based on the foregoing review of the facts and law on the issue, it is the Special Master's recommendation that the Court find Garmin's § 112 enablement and written

description defenses[13] relating to the '375 and '060 patents to be without merit and grant Visteon's MPSJ.

---

[13] Garmin's defense that the claimed inventions do not satisfy the written descriptions of § 112, is based on its assertion that the patents do not textually describe the accused products.  The law on this point is the same as that cited in connection with the discussion of the enablement defense—the specification must provide an adequate description of the claimed invention, not the accused product.  (*See*,Visteon Hearing Slides 6 and 22 and related arguments)

## GARMIN'S MOTION FOR NON-INFRINGEMENT OF '375 AND '892 AND FOR INVALIDITY OF '892 UNDER § 112

## THE MOTION AS TO THE '357 PATENT

## GARMIN'S ARGUMENTS IN SUPPORT

In many navigation devices, including Garmin's, it is a common feature to create a list of destinations (restaurants, hotels, addresses, etc.) that the user has previously selected under the assumption that if a user has selected a destination once, the user may want to easily locate that same destination again.  In Garmin devices, this is called a "Recently Found" list—as the name suggests, a list of recently found destinations.  The '375 patent modifies this basic concept by creating a destination history list that is **category specific** rather than simply including every destination that the user has previously selected.  Thus, in the '375 patent, the destination history list only includes destinations selected by a user that are in a specific category of destinations.

Claim 1 plainly describes this concept.  It begins: "A method for maintaining a destination history for a **specific category** of destinations . . ."The claim then provides three steps (paraphrased unless in quotes): 1) select a destination; 2) "determin[e] whether the [] destination belongs to the specific category;" and 3) "including the [] destination in the destination history only where the [] destination belongs to the specific category."  Ex. R, '375 Patent, col. 7, l. 15, et seq.  The portion of the '375 specification describing the category-specific destination history is an equally quick read.  The entirety of the relevant disclosure is found at Col. 5, l. 45 – Col. 6, l. 16, which includes the following simple example:  "a destination history list is maintained **only for** a "points of interest" category which includes, for example, parks, shopping malls, restaurants, tourist attractions, and other businesses."  Ex. R, '375 Patent, col. 5,

ll. 61-65. Garmin does not contend the asserted claims are limited to this "points of interest" example. But, Garmin absolutely contends, in light of the plain language of the claims, that the destination history of the '375 patent is a category-specific destination history.

Visteon asserts claims 1, 8, and 9 of the '375 patent against Garmin and Navigon. SOF 7. Central to each asserted claim are the tandem requirements that the navigation system: (1) "determin[e] whether the [] destination belongs to the specific category"; and (2) "includ[e] the [] destination in the destination history **only where** the first destination belongs to the specific category." The result, as noted above, is a category-specific destination history list. Garmin's Recently Found list and Navigon's Recents list (collectively, "the Accused Lists") are quite basic. With regard to the instant non-infringement discussion, the Accused Lists function identically. In salient point, the Accused Lists are category agnostic—any and every category of destination may be found in the Accused Lists. SOF 8. The Accused Lists are not restricted in any way to any particular category of destination. SOF 9. When the Accused Lists are populated, no assessment is made whatsoever with respect to the category of the destination. SOF 10. In contrast to the tandem claim requirements, adding destinations to the Accused Lists does not include a determination of whether a destination belongs to a specific category, and destinations are not included in the Accused Lists only where they belong to a specific category. The '375 patent claims a destination history list that is category specific. The Accused Lists are not category specific. Garmin will not hazard the task of describing the tautological convulsions Visteon will present to obscure this unbridgeable divide. Suffice it to say, product operation is undisputed and the claim requirements are unambiguous. On the simple basis of these two key ingredients, summary judgment is appropriate.

**VISTEON'S RESPONSE**

Garmin argues that the Accused Products[14] are **not** capable of maintaining a destination history for a specific category of destinations.[15]   Garmin states its argument three similar ways: (1) that the destination histories of the Accused Products are "category agnostic;" (2) that the destination histories are not restricted to any particular category;" and (3) when populating the destination histories, an assessment is not made with respect to the destination's category.  *See* Garmin's Motion, Dkt. No. 159 at 12 (citing SOFs 8-10).  As shown below, repetition does not change the demonstrable fact that the Accused Products maintain a <u>category-specific</u> destination history *precisely* as required by the asserted claims.

First, the "Accused Lists"[16] are **not** "category agnostic."  Rather, the Accused Products allow, (indeed, encourage) the user to define a "Home" location, which location is described in the owner's manual as "the location you return to most often."  *See* Second Lokshin Decl., Exh. D at ¶ 13; Owner's Manual, Dkt. No. 157-9 at 12.  Once a "Home" location is saved by the user, the Accused Products assign that destination a unique reference point (commonly referred to as a "waypoint").  *See id*. at ¶ 14.  The Accused Products further provides the user with an option for selecting the saved "Home" location—for the nüvi 3750, the selection option is called "Go Home;" for the MobileNavigator Android, the analogous selection option is called "Take me home."[17]

---

[14] As used herein, the Accused Products are those products accused of infringing the ′375 and/or the ′892 patents.

[15] For the ′375 patent, the Garmin Accused Products are represented by the nüvi 3750 personal navigation system and the Navigon Accused Product is the MobileNavigator Android mobile navigation application.  See Representative Product Stipulation, Dkt. No. 120.

[16] In its Motion, Garmin defines "the Accused Lists" as the "Recently Found" list in the Garmin Accused Products and the "Recents" list in the Navigon Accused Product, collectively.  *See id*.

[17] For ease of reading, the "Go Home" and "Take me home" selection options will collectively be referred to as the "Home Feature" of the Accused Products.

*Id*. at ¶¶ 14-15.  The following screenshots illustrate the Home Feature for the Accused Products:





**Garmin nüvi 3750**                    **Navigon MobileNavigator Android**

*Id*. at ¶ 15.  The waypoint assigned to the "Home" location by the software enables the system to affect the user's selection.  *Id*. at ¶ 14.  Finally – and importantly – when a user uses the Home Feature, the "Home" location is not included in the "Accused Lists."  *Id*. at ¶ 16.

In its motion, Garmin acknowledges that a "category of destination" is not limited to points-of-interest, or POIs.  *See* Garmin's Motion, Dkt. No. 159 at 11-12.  Indeed, in his deposition, Garmin's witness on noninfringement, John Lavrakas, stated that a "category would be something that has a characteristic associated with it."  *See* Lavrakas Tr., Dkt. No. 157-16 at 109:12-13.  Under Mr. Lavrakas's definition, the destination selected by the Home Feature is a "category" due to the characteristics associated with it.  In fact, the Home Feature was specifically designed, <u>characteristically</u>, "for the location you return to most often."  *See* Owner's Manual, Dkt. No. 157-9 at 12.  Further, as described above, the Accused Products assign a unique waypoint to the saved Home location.  *See supra*.  Thus, the destination selected by the Home Feature has characteristics associated with it both from the user's perspective as well as on the software level.  This proves that Garmin's belief that "any and every *category of destination* may be found" in the destination histories of the Accused Products is plainly false.

Second, contrary to Garmin's argument, the "Accused Lists" *are restricted* to particular destinations. *Cf.* Garmin's Motion, Dkt. No. 159 at 12 (citing SOF 9). Garmin's argument to the contrary is untrue for the same reasons described above—that is, the destination selected using the Home Feature is **not** included in the destination histories. *See* Second Lokshin Decl., Exh. D at ¶ 16. Thus, by definition, the "Accused Lists" are restricted to destinations having the common characteristic of being selected other than through use of the Home Feature. *Id.*

In addition to Mr. Lavrakas's opinion, the plain meaning of "category" is "a specifically defined division in a classification system." Webster's II New College Dictionary, Exh. I at 176. By designing a navigation system/software that does not populate the "Home" location in "Accused Lists," Garmin employed a classification system divisible by categories; to wit, (1) the category selected using the Home Feature and (2) the category of destinations selected otherwise. Only destinations in this latter category are included in the "Accused Lists." *See supra*; Second Lokshin Decl., Exh. D at ¶¶ 14-16.[18]

Finally, Garmin's argument that "[w]hen the "Accused Lists" are populated, no assessment is made whatsoever with respect to the category of destination" is as false as the two prior points. As shown above, an assessment is necessarily made based on how the destination was selected. *See* Second Lokshin Decl., Exh. D at ¶¶ 14-16. As explained by Mr. Lavrakas with respect to the nüvi 3750, where a destination is selected other than through use of the Home Feature, a routine is used to save the destination to the Recently Found List. *See* Lavrakas Report, Dkt. No. 157-17 at 78 ("The relevant routine is **saveRecentlyUsed** in the

---

[18] This categorical division of destinations is fully consistent with Mr. Lavrakas's opinion that a "category would be something that has a characteristic associated with it." *See supra*, Exh. J at 109:12-13. Mr. Lavrakas testified that he believes his definition is consistent with the plain meaning of "category." *See, e.g., id.* at 119:10-14 ("when reading a patent, we often use a term with its ordinary meaning, and I had to ask myself, as one who is skilled in the art, what's the ordinary meaning of category. So I'm letting you know what it is.").

*GUI_ReviewItem.cpp* file (line 531); Lavrakas Dep. Tr., Exh. J at 19:25-20:1 ("The report is the complete set of my expert opinion").  This routine saves a recently found destination at the top of the 'Recently Found' list.") (emphasis in original).  Conversely, when the Home Feature is used, "there is no call whatsoever to **saveRecentlyUsed**."  *Id*. at 79 (emphasis in original).

As shown above, infringement of the '375 patent can be proven.  As such, Garmin's request for summary judgment on infringement of the '375 patent should be denied.

## GARMIN'S REPLY

The '375 asserted claims each require a category-specific destination history.   Directly relevant to this requirement, Garmin offered the following fact: "Garmin's Recently Found list and Navigon Android's Recents list are not restricted to any particular category or categories of destinations."  Br. (Dkt. 159) at 3 (SOF No. 9); Dkt. 159-10, Moore Decl. at ¶ 3; Dkt. 159-11, Herrig Decl. at ¶ 3.  Visteon retorts:  "The destination selected using the Home Feature is not included in the destination history." Opp. (Dkt. 168), Ex. C (Dkt. 168-4) (citing Ex. D, Second Lokshin Decl. (Dkt. 168-5) at ¶¶ 13-16).   Visteon does not dispute that every destination, regardless of category, is added to Garmin's lists. Yet, Visteon concludes that Garmin's destination history lists are category-specific.

One must naturally ask, what is the "specific category" according to Visteon?  With a flurry of opaque language, Visteon explains: "[T]he Accused Lists are restricted to destinations having the common characteristic of *being selected* other than through use of the Home Feature. . . . Garmin employed a classification system divisible by categories; to wit, (1) the category selected using the Home Feature and (2) the category of destinations selected otherwise."  Opp. at 12.   Perhaps the Court may wonder, as Garmin has, having never heard of such "categories"

before, what sort of "categories" are these?  The answer:  Made up—entirely derived for purposes of drumming up a litigation infringement theory where none exists.[19]

By the same category-by-fiat approach, if Visteon were asked to categorize the population of the world, it could make short work of it by making up two "categories":  Judge Borman and everyone except Judge Borman.  A list of the entire population of the world (less Judge Borman), then, would be category specific because Visteon had declared that list to be a "category."   While creative, no one would accept that Visteon had actually performed the requested task in anything more than a tongue-in-cheek manner.  Nor could any reasonable juror conclude that every destination in the world (less one) is a "specific category" of destinations.  Visteon's approach defies both the plain meaning of "specific category" and common sense.  Summary judgment is appropriate.

## SPECIAL MASTER'S ANALYSIS AND RECOMMENDATIONS RELATING TO THE '375 PATENT

At the hearing on the motions for summary judgment, Counsel for Garmin started his arguments thus: "Last but not least, '375 patent." (Tr. page 106). As it turns out, however, this patent is clearly the least complicated of all the patents the Court has under consideration in the pending motions for partial summary judgment. Visteon, however, does not share this view of the patent. Visteon takes a much more complicated approach to the invention and relys solely on a definitional approach to the meaning and scope of the patent claim limitations. This approach flies directly into the face of well-established Federal Circuit guidelines. These rules dictate that the search for the meaning of any terms in dispute must begin with a review of the intrinsic evidence: the claims, the specification and the file history of the '375 patent. Definitions--

---

[19] Indeed, Visteon's own expert admits that in all his years in the navigation industry he has never used or heard of such "categories" before.  *See* Dkt. 172-1, Ex. E, Lokshin Tr. at 184:22-187:9.

extrinsic evidence--can serve as a source for clarification if, and only if, the intrinsic evidence leaves any doubt as to the meaning of the claim terms at issue. As will be shown in the following paragraphs, a review of the intrinsic evidence leaves no doubt as to the meaning of the claims and the scope of their coverage, and this evidence completely deflates Visteon's misguided dictionary approach.

The parties focus on Claim 1 of the patent and it is set forth in full above and in Garmin's Slide 41 from the hearing.  The language of the claim alone is readily understood. There is certainly nothing mysterious or ambiguous about the meaning of claim. It is a method claim "for maintaining a destination history for a specific category of destinations…" The method is comprised of 3 steps. The first requires the user to select a first destination; the second requires the device (without user intervention) to determine if the selected destination belongs to the specific category, and finally, the device includes the destination in the destination history only where the destination originally selected by the user belongs to the specific category. Claim 1 is of very limited scope, and no person skilled in the art, or juror for that matter, would have any problem understanding exactly what is claimed.  As to usefulness of the claimed invention, the inventors provide the Court with very little to go on, but here is what they say:

> "Therefore, a specific embodiment of the present invention provides a privacy feature by which destination histories are maintained for only specific categories of destinations which would **not** compromise the previous user's privacy. According to one specific embodiment, a destination history list is maintained only for a 'points of interest' category, which includes, for example, parks, shopping malls, restaurants, tourist attractions and other businesses. Thus, the rental car user would have the benefit of the present invention for the many locations to which such an individual would likely want guidance **without subsequent users of the rental car being privy to more sensitive destination information, *e.g.*, private residences."**(Col. 5, l. 56 to Col. 6, l. 2)(emphasis added).

86

According to the teaching above, the need for privacy by users of rental car GPS devices drives the need to set up specific categories of destinations.  The common and well-known non-specific/non-private histories, such as "points of interest category", are maintained in the usual manner and are not the subject of the claimed invention.  Exactly how maintaining a "destination history for a specific category of destinations" provides a way for a user to keep subsequent users from access to the  "more sensitive destination information" is disclosed in the portion of the specification which follows the above cite.

> "Thus, the present invention provides a method for maintaining a destination history for a specific category of destinations in a vehicle navigation system. As with other embodiments described above, a destination is selected in response to selection by the user. The system then determines whether the destination belongs to the specific category. Where the destination belongs to the specific category, it is included in the destination history. Where it does not, the destination is not included in the destination history. **According to one embodiment, the user may designate categories of destinations which she considers to be non-private locations. Alternatively, the user may designate the categories for which destination histories should not be maintained.** (Col. 6, ll 3-16)(emphasis added.)

As seen, the first five sentences in the quote simply summarize the limitations of Claim 1, without any variation in meaning.  The disclosure of highlighted portions relates, again, to two possible ways the invention could be implemented to provide users of a GPS device in rental cars with a method for protecting private destination information.  In one embodiment, the device is set up so the user can designate "non-private locations" as a specific category of destinations. Assuming a device could be programmed in this fashion, it could also be programmed so the user can designate "private locations".  Although the patent mentions "private residences" (not singular as only multiple locations would qualify as a category of destinations under the patent) as one type of sensitive information a user might want to keep secret, a user could conceivably want all destinations found during the use of the device to be private. All such information could

then readily be placed in the specific category of "private locations". The alternative to the foregoing method for keeping locations private is to set up the device so that the user could designate "categories of destination histories for which destination histories should not be maintained."  Thus, the non-public information is never in the system so subsequent renters of the device never see it.

The foregoing teaching from the specification, like the claim *per se*, spells out in plain and unambiguous language the meaning of the claimed invention. From the cited teachings and from the balance of the specification it is clear that a "destination history" is merely a list of destinations previously selected by the user of the device. It is a given that any destination of interest would be a single end point location, to which the driver seeks guidance. Throughout the patent the inventors provide well know and understood examples of categories of destinations: points of interest (which is really a category of categories), parks, shopping malls, etc. Clearly "categories of destinations" are not the same as or equal to "destinations" and no person of skills in the art or juror would need help to understand the difference. Other portions of the patent also provide numerous examples showing the difference, *e.g.*, in a search for the City of San Francisco--a possible destination--the user goes to the Cities category of destinations. In a search for a street, the user goes to the Streets category of destinations and so on (*See* Figs 3, 4 and 6 and discussion of same at Col. 4, l. 4 to Col. 5, l. 27 [note in particular the discussion of the building of destination histories at lines 15 to 27]; Col. 6, ll 17-36). . In short, a category of destinations provides a list of destinations fitting the category description from which the driver may select the desired single destination location.

With the foregoing as background, we turn next to the actual operation of the accused Garmin devices and Visteon's contentions in support of its claim of infringement by such devices.

The actual operation of the accused Garmin devices is not in dispute. The devices maintain a "Recently Found" list, but the list is not category specific. Instead, the devices put all found designations in the list regardless of the category to which they belong. In addition, the accused devices have a "Go Home" button, which allows the user, after setting up the home address in this file, to merely hit this button and the home address will appear automatically. This address file is not a category of destinations but a single destination. It logically follows that the "Go Home" file is not  "a specific category of destinations" as required by the limitations of Claim 1 of the '375 patent.  Visteon, of course, contends that the "Go Home" feature falls squarely within the claim coverage. Visteon's arguments in support of this position will now be reviewed.

Although Visteon makes passing references to Claim 1 and some of the teachings of the specification cited above, the foundation for Visteon's infringement contentions is not found in any of the intrinsic evidence.  Instead, as noted earlier, Visteon, without demonstrating that any terms of Claim 1 are so unclear and ambiguous as to require construction, builds its case on one bit of extrinsic evidence--the dictionary meaning of the term "category". Indeed, at the hearing, Visteon highlighted the importance of this definition by devoting an entire slide to the Webster definition and entitled  "The Plain Meaning of 'Category' (Visteon Slide 51).  As stated earlier, the Special Master is of the firm view that this extrinsic evidence is irrelevant and cannot be relied on for any purpose in interpreting the meaning of Claim 1.

In brief, it is the Special Master's view that the Court should reject (1) Visteon's misguided dictionary approach, and (2) all of the irrelevant evidence offered by Visteon and based on the dictionary definition (*See* Visteon's Slides 52 to 64; Tr. pages 114-123; 127-128). For example, the opinions of Dr. Lokshin are all directly tied to the definition of "category" relied on by Visteon. As seen from the cited Visteon's slides and arguments at the hearing, Visteon seizes on the "classification" idea, then slices and dices to find infringement. From this misdirected analysis Visteon argues that the "Home" file, a single destination in the Garmin devices, is in fact "a specific category of destinations". The Special Master finds Garmin arguments in support of its summary judgment to be meritorious in every respect and agrees with Garmin's Counsel's final assessment of Visteon's theory of infringement: "its completely made-up theory that finds no support in the patent and no support in reality and contradicts the claims."(Tr. at 126).

Based on the foregoing analysis, it is the Special Master's recommendation that the Court grant Garmin's motion for summary judgment and find that the accused Garmin devices do not infringe the '375 patent.

## THE MOTION AS TO THE '892

## GARMIN'S OPENING POSITIONS ON NON-INFRINGEMENT AND LACK OF WRITTEN DESCRIPTION

### The '892 Patent:  On the Fly Direction Computation

Compute up front and store the results OR compute as you go—that is the design choice implicated by the '892 patent.  The '892 Patent describes a navigation system that, like most navigation systems, calculates a route and provides guidance to the operator to direct the operator along the route to a destination. Ex. S, '892 Patent at Abstract.  Prior to navigating, the

'892 navigation system calculates all turning points in the route. *Id.* at 3:38-46. After the turning points are set, the remainder of the computations necessary to provide guidance are done on-the-fly, i.e., while the operator navigates along the route. *Id.* at 4:20-45. Specifically, at a predetermined time or distance before an upcoming turning point, the directions of advance along the roads through the upcoming turning point are computed. *Id.* at 4:20-45, 6:1-36. If two turning points are in close succession, the directions of advance along the roads comprising both turning points are computed. *Id.* Next, a turn arrow icon is created that represents the computed road directions. *Id.* For example, if the next turning point comprises roads 90º apart followed closely by a second turning point comprising roads 90º apart, the following arrow icon would be created:



FIG. 4B, '892 Patent

Similarly, asserted Claim 8 follows three steps: (1) computing directions of advance, (2) creating an arrow icon representing the computed directions of advance, and (3) displaying the arrow icon. Ex., S, '892 Patent at Claim 8. With respect to the first requirement, Claim 8 requires the following:

> *continuously computing* a plurality of successive *directions of advance* until said vehicle reaches a destination point

Consistent with the plain meaning of the phrase, the '892 patent describes directions of advance as the directions the roads take with respect to each other. *Id.* at 4:23-46, 5:3-13, FIGS 4A and 4B. *See also* Ex. T, Lokshin Trans., at 139:3-140:9 (in '892 Patent, computing directions of advance is computing directions of roads "[w]ith respect to one another"). Similarly, during

prosecution of the '892 Patent, the applicants discussed directions of advance in terms of "[t]he direction (sic) the roads take with respect to each other."  SOF 12.  The directions of advance of a vehicle along a route are the directions the roads take that comprise that route.  Thus, to create a turn arrow icon that represents a turning point along those roads, as claim 8 subsequently requires, the directions of the roads with respect to one another must be computed. To summarize, the '892 patent claims a system where the directions of advance through a turning point are computed on-the-fly, i.e., "continuously," as the vehicle travels along the route.

### Garmin's Products Compute All Directions of Advance Up Front, Not On-the-Fly

In the accused Garmin products, all directions of advance are computed during the initial route calculation before navigation begins. SOF 13. These directions of advance are stored in memory for later use.  *Id*.  This is directly contrary to the system claimed in the '892 patent, as described above.  Because Garmin does not practice the required on-the-fly computing of directions of advance, summary judgment of non-infringement is appropriate.

### Users of the Accused Garmin Products Cannot Predetermine a Time or Distance At Which Directions of Advance Are Computed

Claim 8 requires the above-discussed computing be initiated at "one of a [predetermined time or distance **selected by an operator**] before said vehicle reaches an upcoming turning point."  Claim Construction Order (Doc. No. 103) at 4.  The accused Garmin products do not allow an operator to select this interval for two reasons.  First, as discussed in the preceding section, there is no on-the-fly computation of directions of advance at all in Garmin's products, so there can be no predetermination of when such computation initiates.

Second, the user cannot select anything with respect to when directions of advance are computed. Visteon's only theory of infringement on this point already has been rejected by Special Master Methvin. Visteon's infringement expert, Dr. Anatole Lokshin, claims that a user may select a predetermined computation interval by setting the "searching area" in the accused Garmin product by adjusting the zoom level on the display. SOF 14-15. But Visteon previously advanced this theory and it was soundly rejected by Special Master Methvin. During claim construction, Visteon proposed the "predetermined time or predetermined distance" limitation in claim 8 be construed to mean the operator selects an interval by "setting the size of the 'searching area.'" Special Master's 1st Claim Construction Report (Doc. No. 67) at 83. Special Master Methvin rejected Visteon's proposal and found the claimed "predetermined time or distance" limitation is not related to the concept of setting a "searching area" in any way. *Id.* at 88-89. Because Visteon's only infringement theory has already been rejected by Special Master Methvin, the Court should grant summary judgment of non-infringement for this additional reason.

### Continuously Computing Directions of Advance Lacks Written Description

Claim 8 is invalid for failing to satisfy the written description requirement, 35 U.S.C. § 112, ¶ 1. "The 'written description' requirement serves a teaching function, as a '*quid pro quo*' in which the public is given 'meaningful disclosure in exchange for being excluded from practicing the invention for a limited period of time.'" *Univ. Of Rochester v. G.D. Searle & Co., Inc.*, 358 F.3d 916, 922 (Fed. Cir. 2004) (quoting *Enzo Biochem, Inc. v. Gen-Probe Inc.*, 323 F.3d 956, 970 (Fed.Cir.2002)). "[T]he test for sufficiency is whether the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had

possession of the claimed subject matter as of the filing date." *Ariad Pharmaceuticals, Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc).

During claim construction, Special Master Methvin determined that the '892 Patent does not describe *how* a navigation device performs the claimed continuous computing, and accordingly held means-plus-function claims 1, 2, 3, and 10 invalid as indefinite. Special Master's 1st Claim Construction Report (Doc. No. 67) at 70. Because claim 8 is not means-plus-function, the time was not right during claim construction to address the sufficiency of the disclosure with respect to the claim 8 "continuously computing." *Ariad*, 598 F.3d at 1352, 1358 (explaining that the written description requirement demands a patent describe how a claimed function is performed and affirming Federal Circuit finding that construed method claims failed to adequately describe the claimed invention). But discovery is now complete, and now is the time to complete the process that Special Master Methvin began. As the Special Master already concluded, the '892 Patent does not describe *how* the "continuously computing" limitation is performed. This dooms claim 8 on written description grounds just as it did claims 1, 2, 3, and 10 on indefiniteness grounds.

Not only is the '892 Patent completely silent on the concept of continuously computing, that concept is at apparent odds with the claimed requirement that the computing be initiated at a specific threshold. Visteon's expert, Dr. Lokshin, testified that "continuously computing . . . until said vehicle reaches a destination," means the claimed computation is performed periodically the entire time the vehicle is navigated to a destination. SOF 6. He alleged the accused Garmin products perform the claimed computation once per second—every time the display refreshes. *Id*. Yet Claim 8's other requirement demands that this computing be *initiated* when a threshold is crossed—at a predetermined time or distance in advance of each turning

point.  Ex. S, '892 Patent at Claim 8.  Thus, claim 8 requires the computation be performed continuously AND triggered at a specific threshold prior to each turning point.  The '892 patent provides no explanation of "continuously computing" that would square these two requirements.

Because there is no description whatsoever of continuously computing, and certainly no explanation as to how computing can be both continuous and triggered at a specific threshold, the '892 Patent does not convey to one of skill in the art that the '892 inventors had possession of the claimed invention of claim 8.  Ex. U, Michalson Declaration, at ¶¶ 10-12.  The Court should thus hold claim 8 invalid for failing to satisfy the written description requirement.

## VISTEON RESPONSE TO BOTH OF GARMIN'S DEFENSES

The Court also should deny each of Garmin's requests for summary judgment with respect to the '892 patent.  As shown below, Garmin's Motion is based on fundamental misunderstandings of the '892 patent and of the recommendations of the Special Master on claim construction.  Contrary to Garmin's assertions, the Garmin Accused Products practice the asserted claims of the '892 patent and the Special Master did not conclude otherwise.

### Infringement

#### The Accused Products Infringe the '892 Patent

Garmin begins its argument by suggesting that there are two types of systems: those that calculate turning points along the route initially and then perform additional calculations during navigation, and those that do all of the calculations upfront.  Garmin states that the '892 patent covers the first type and that the Accused Products are of the second type.  Garmin is incorrect and its argument attempts to establish a false choice that is suggested by neither the '892 patent nor the factual record regarding its own products.

It is true that most navigation systems (including the Accused Products) calculate an optimal route before navigation begins.  This is described in the '892 patent [Dkt. No. 1-5] at column 3, lines 38-46.  While this calculation does occur, it is not the calculation to which the '892 patent is directed.  Rather, the '892 patent is directed to a system that guides the user along the route by performing calculations during navigation that allows for the display of complex icons for the user to follow.  *See, e.g., id*. at 1:11-14 ("This invention relates to a navigation system for a vehicle, which system guides the vehicle along a route from a starting place to a destination *by displaying* a direction for the vehicle to follow.") (emphasis added); *see also* '892 Patent, Dkt. No. 1-5 at Claim 8.

Garmin's Motion is premised on the false notion that the Accused Products do not perform calculations during navigation (or "on-the-fly") such that complex arrow icons are shown to the user.  In making this argument, Garmin conflates route computation with the computations needed to *display* the arrow icons along the route during navigation.  Garmin's Motion, Dkt. No. 159 at 13-14; *see also* Lavrakas Dep. Tr., Exh. J at 144:17-25; 147:7-13 ("A: That's determining, if you will, through a computer, a microcomputer, the route and all associated parts of that route, *including directions of advance*, the direction you must go, the distances you must go, the turns you must make.  Those -- those are the computations that I'm referring to --") (emphasis added).

The record, however, contains contrary evidence.  *See, e.g.*, Lokshin Dep. Tr. at 135:18-138:4, particularly 137:4-10 and 137:25-138:4 ("The second limitation clearly states that creating an arrow icon represent[ing] said current direction of advance, and at least the first and the second direction of advance of said vehicle.  So creating [the] arrow icon takes data generated by the first step.  Exactly what I was describing. … Again, the first limitation defines angles,

shapes, okay? The second limitation defines how it looks.  And the third limitation puts it on a

screen.").  The patent specification clearly indicates that the computations referenced in Claim 8

are performed by the system during navigation are based on the predetermined searching area, as

defined by the user.  *See, e.g.*, '892 Patent, Dkt. No. 1-5 at 4:20-45 (discussing the calculation of

directions of advance in terms of a search for "how many places exist in the predetermined area

(hereinafter called a 'searching area') along the optimal route").  From a proper reading of the

'892 patent, it is clear that that which is described by the patent specification and covered by

Claim 8 is a method of navigating a vehicle using a system that continuously computes the data

necessary to create and display a complex arrow icon indicating multiple turns in quick

succession.  First Lokshin Decl., Dkt. No. 157-7 at Infringement Report: pp. 59-60; *see also*

Lokshin Dep. Tr. at 118:24-119:18; 135:18-138:4    This is entirely consistent with the plain

meaning of the patent, in light of the Court's Claim Construction Order [Dkt. No. 103], and is

entirely descriptive of the operation of the Accused Products.  *Id.*

### The Accused Products Compute "On the Fly"

Garmin's contention that its products compute all directions of advance before navigation

begins is untrue; according to Dr. Lokshin, the Accused Products do compute "on the fly."  In his

deposition, Dr. Lokshin explained that the claimed computation regarding "directions of

advance" has to do with the relationship of one turn with respect to succeeding or upcoming

turns (or with respect to the current direction) in the displayed searching area of the moving map.

*See* Lokshin Tr., Exh. E at 121:9-13 ("[B]ecause it's a moving map.  It's not a predetermined

icon.  It has to follow the road.  And [the] road is rotating.  So as soon [as] it determines that

[the] threshold is -- has happened, and after that it has to redraw [the] icon every second");

139:3-140:9 (describing the '892 patent at 4:22-33).  Consistent with Claim 8, the nüvi 3750

continuously computes a plurality of successive directions of advance by constantly monitoring the present position of the vehicle on the map and continuously computing what icons should be displayed in light of the present position and upcoming turns displayed product screen. *See* Second Lokshin Decl., Exh. D at ¶¶ 17-19; *see also* Lavrakas Dep. Tr., Exh. J at 152:9-21 ("…The monitoring and rendering is done *as it travels along the route*.") (emphasis added).

Garmin's position that its products "compute all directions of advance up front" [Garmin's Motion, Dkt. No. 159 at 14], is further disproved by the self-correcting nature of the nüvi 3750. For instance, when the user deviates from the route, the nüvi 3750 recalculates the route, and the corresponding map display corrects itself. *See, e.g.*, Lavrakas Dep. Tr., Exh. J at 149:22-150:4 ("Q: How does the system know that the driver's still on the route?; A: It compares its present position with the route. And if it's not on the route, then it then recalculates."); *see also* Second Lokshin Decl., Exh. D at ¶ 21. The constant computation of the present position on the map of the nüvi 3750 is the basis for the computation of the directions of advance. *See, e.g.*, Lokshin Dep. Tr. at 118:24-119:4; 119:11 18 ("There -- there are obviously two types of computations that need to be done. First you need to determine have you achieved a predetermined distance or time? And it's done constantly. *As it says, when this [has] happened, there is a direction of advance [that] has to be computed in order to create an arrow icon that represents the current direction of advance*.") (emphasis added).[20]

---

[20] Similarly, because the nüvi 3750 "continuously computes" directions of advance, where a complex arrow icon is rendered on the map display, the nüvi 3750 enables the user to resize the icon according to the zoom settings, or re-adjust the map view of the icon on-the-fly (*e.g.*, display North Up, Track Up, or 3-D). *See* Second Lokshin Decl., Exh. D at ¶¶ 22.

Consistent with Claim 8, the nüvi 3750 does *not*, and cannot, perform all arrow-icon-display-related calculations upfront. Because the Accused Products do perform the claimed computations, Garmin's request for summary judgment on this issue should be denied.

### The Special Master Did Not Reject Visteon's Theory of Infringement

Contrary to Garmin's assertions, the Special Master did not reject Visteon's infringement theory related to the "predetermined distance" step of Claim 8. Claim 8 describes the computing of directions of advance, "said computing being initiated at…a predetermined distance." '892 Patent, Dkt. No. 1-5 at Claim 8. The Special Master recommended, and the Court adopted, the meaning of a "predetermined travel distance" as "a predetermined travel distance selected by the operator." *See* Special Master's Report, Dkt. No. 67-1 at 89; Claim Construction Order, Dkt. No. 103 at 4. In short, while the Court concluded that a predetermination must be made by the user (a limitation recommended to the Special Master by both parties), the Court did not conclude that the zoom function could not be used as the method of predetermining the selected time or distance. *Id.* at 87.

In this regard, the Special Master specifically stated that "Visteon['s] proposed construction is not a definition of the disputed terms, *but, rather, a statement of how the predeterminations may be selected by the operator*." *See* Special Master's Report, Dkt. No. 67-1 at 88 (emphasis added).[21] In other words, the Special Master suggested that Visteon may well be able to prove that the disputed claim element is satisfied through use of the display zoom feature, which is precisely how the '892 specification states that it is done. *See* '892 Patent, Dkt.

---

[21] Mr. Lavrakas omitted this portion of the Special Master's recommendation from his report. *See* Lavrakas Report, Dkt. No. 157-17 at 62; Lavrakas Dep. Tr., Exh. J at 166:20-171:20.

No. 1-5 at 4:20-33; *Mems Tech. Berhad v. ITC*, 447 Fed. Appx. 142, 150 (Fed. Cir. 2011) ("[A] construction that excludes a preferred embodiment is rarely, *if ever*, correct.") (emphasis added).

Not only does the patent discuss setting the time and/or distance in this manner, but the Accused Products allow the user to predetermine a distance at which directions of advance are computed *in the very same way*.  *See* Second Lokshin Decl., Exh. D at ¶ 20.  The following screenshots of the nüvi 3750 illustrate this feature in the Accused Products:





Large Area Showing
Turning Points

Small Area Showing
No Turning Points

*See id*.; *see also* Lavrakas Dep. Tr., Exh. J at 162:14-20 ("The searching area is a geographic boundary and memory where I look to see what turns -- turns -- upcoming turns are within the searching area and *then allow -- and then allow me to generate more display -- complex turn arrows or arrow icons representing those turns for one or two of the turns within the searching area*.") (emphasis added).

In sum, the Special Master did not reject Visteon's infringement theory, and since the "predetermined" step of Claim 8 is practiced by the Accused Products, Garmin's request for summary judgment should be denied.

**Written Description**

**Applicable Law**

The enablement requirement and the written description requirement are two separate requirements. *Ariad Pharmaceuticals, Inc. v. Eli Lilly & Co*., 598 F.3d 1336, 1351 (Fed. Cir. 2010). The "test for sufficiency [of the written description] is whether the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." *Id*. (internal citations omitted). To determine whether the written description requirement is satisfied, "an objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art" is required. *Id*. "Based on that inquiry, the specification must describe an invention understandable to that skilled artisan and show that the inventor actually invented the invention claimed." *Id*. "This inquiry . . . is a question of fact." *Id*.

**Garmin has Failed to Carry its Burden with Respect to its '892 Written Description Defense**

The entirety of Garmin's written description argument is that '892 patent is "silent on the concept of continuously computing" and that continuously computing is "at [] odds with the claimed requirement that the computing be initiated at a specific threshold." Garmin's Motion, Dkt. No. 159 at 16. In other words, Garmin's misunderstanding regarding infringement (which ignores the calculations that the Accused Products perform during route guidance) has spawned an equally misinformed written description defense. *See* Michalson Decl., Dkt. No. 159-21 at ¶¶ 10-11. In his sparse two-paragraph discussion of this issue, Dr. Michalson fails to explain why a person of ordinary skill would conclude that the word "continuously" adds any particular challenge to a person of ordinary skill in the art, or why a person of ordinary skill would believe that the inventors would not have possession of "continuously computing" as opposed to just

"computing."   Indeed, Dr. Michalson's entire testimony on this subject is nothing more than a factually unsupported conclusion.

In contrast, Dr. Lokshin has provided a complete and objective, four-corners, factual analysis of the specification.  *See* First Lokshin Decl., Dkt. No. 157-7 at Rebuttal Report: ¶¶ 478-83.  As Dr. Lokshin testifies, and as explained above in Sections IV.A.1 above, the specification clearly discloses the concept of "continuously computing" and how it relates to the calculation of complex arrow icons.  *See, e.g.*, '892 Patent, Dkt. No. 1-5 at Figs. 1- 3, 5; 3:42-48; 4:2-4; 4:40-53; *see also* Lokshin Dep. Tr. at 114:19-126:5; 137:4-10; 137:25-138:4.  From this disclosure, a person of ordinary skill would easily have understood this inventive concept, and would readily conclude that the inventors were in possession of the claimed invention.   *See* Second Lokshin Decl., Exh. D at ¶ 23.

Here too, Garmin mistakenly relies on Special Master Methvin; this time Garmin points to his conclusion that Claims 1, 2, 3, and 10 of the '892 patent are invalid for indefiniteness (as allegedly lacking a disclosure of the structure that corresponds to the means-plus-function elements).   The test for definiteness for a means-plus-function claim, however, is wholly unrelated to the test of whether a claim is supported by a proper written description.  *See Blackboard, Inc. v. Desire2Learn, Inc.*, 574 F.3d 1371, 1382 (Fed. Cir. 2009) (holding that a means-plus-function must disclose the structure that corresponds to the claimed function in order to be definite); *Ariad Pharmaceuticals, Inc.*, 598 F.3d at 1351 ("the test for sufficiency is whether the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date.").  Indeed, these inquiries are so different that the test of definiteness under § 112, paragraph 6, is a question of law, whereas the test of written description under § 112, paragraph 2, is one of fact. *Cf. Ariad*

*Pharmaceuticals, Inc.*, 598 F.3d at 1351; *Green Edge Enters., LLC v. Rubber Mulch Etc., LLC*, 620 F.3d 1287, 1299 (Fed. Cir. 2010).  Further, as discussed *supra*, Special Master Methvin was not given the charge of deciding written description issues, and is not a person of ordinary skill in the art.

Based on the record, the Court should deny Garmin's Motion for lacking any factual or legal basis to find that Claim 8 lacks a proper written description.

## GARMIN'S REPLY

A single uncontroverted fact establishes that Garmin does not infringe the '892 patent. The accused Garmin devices calculate all of the turn angles at which the roads in a route intersect (the "directions of advance" in the first limitation of claim 8) "up front," not during navigation. *See* Garmin Brief ("Br.") (Dkt. 159) at 4 (Statement of Fact ("SOF") No. 13); Dkt. 159-15 (Ex. O, Bolton Decl.) at ¶¶ 4-5.  Visteon does not controvert this key fact, or even address its impact on the first limitation of claim 8.  *See* Visteon Opposition ("Opp.") (Dkt. 168) at Ex. C (Dkt. 168-4) at 3-4.  Instead, Visteon shifts the discussion to the later claimed steps of "creating" and "displaying" turn icons (the second and third limitations of claim 8).  While interesting reading, Garmin's motion was not directed to the second and third limitations. Visteon's irrelevant response fails to dispute, because it cannot, that the Garmin device computes all of the "directions of advance" during the initial route calculation.

This undisputed fact is dispositive. Visteon agrees that the first limitation, "computing a plurality of successive directions of advance," relates to computing the angles of turns in the route.  *See* Opp. at 14 ("the first limitation defines angles") (citing Lokshin Tr. at 137:25-138:4). Visteon also agrees that this computing "directions of advance" must be performed on the fly

during navigation (i.e., "continuously" and at a "predetermined" time or distance from upcoming turns). *See* Opp. at 14-15 ("the computations referenced in Claim 8 are performed by the system during navigation"). Because, in the Garmin device, all "directions of advance" are calculated up front, not during navigation, Garmin does not infringe. Summary judgment is appropriate.[22]

In addition, claim 8 is invalid for lack of a written description as to how the claimed invention "continuously computes" directions of advance. Visteon is correct that an "objective, four-corners" review of the specification is all that is needed. Garmin's motion was all but an express invitation to Visteon to cite to something—anything—in the patent specification that showed possession of the "continuously computing" concept. But Visteon could not. Instead, Visteon and its expert, in conclusory fashion, rely on the <u>very same</u> string cite ("Figs. 1-3, 5; 3:42-48; 4:2-4; 4:40-53") that the Special Master already rejected as "naked cites" that were "not persuasive." *Compare* Opp. at 19 *with* Dkt. 67-1 at 68-69. They were not persuasive before and they are not persuasive now. Visteon's expert can say whatever he wants (indeed, Visteon's experts concluded there was support for the other asserted '892 claims before the Court held them invalid as indefinite), but Garmin is entitled to summary judgment because the '892 specification itself is absolutely silent on the concept of "continuously computing." For this reason also, summary judgment is appropriate.

---

[22] Though unnecessary, Garmin also does not infringe because Visteon's theory that the claimed "predetermined" time or distance can be met by a user setting the size of the "searching area" was already rejected by the Special Master—not once, but twice. Br. at 15 (citing Dkt. 67-1 at 83); Dkt. 96 at 12. Garmin will not belabor Visteon's mischaracterization, because the record is clear on its face. See Dkt. 67-1 at 88 ("[Visteon] seeks to completely rewrite the limitation by tieing the searching area to the predeterminations."); Dkt. 96 at 12 ("[T]here are no teachings in the specification as to how the operator would use the searching area to set distances and time.").

## SPECIAL MASTER'S ANALYSIS AND RECOMMENDATIONS

With respect to the '892 patent, the parties disagree as to the meaning of the patent's disclosures; the meaning of the claims as interpreted by the Court, and how the accused products work in relation to those meanings. Garmin's motion as to the '892 patent seeks both a (1) finding of non-infringement and (2) finding of invalidity on the basis that the specification fails to satisfy the written description of § 112. Each defense is addressed below.

### Garmin's New Claim Construction Arguments in Support of its Non-Infringement Defense

Garmin's non-infringement defense places heavy reliance on its interpretation of the terms "directions of advance" found in Claim 8 of the '892 patent. According to Garmin the terms should be defined as "the directions the roads take with respect to each other" or as "the directions the roads take that comprise [the] route". (Garmin Opening Brief, p.14). This claim construction issue was not raised during the *Markman* proceedings, but nevertheless it is ripe for determination now. Visteon, in response, asserts:

> "[T]he terms 'directions of advance' should carry with it its plain and ordinary meaning….[T]he claim itself …uses directions of advance in the continuously computing step and then references directions of advance when its talking about the arrow icon that represents those directions of advance." (Transcript of Hearing, page 85).

As to Garmin's interpretation, Visteon argues:

> "The directions that the road takes with respect to each other is the route itself, whereas the patent and throughout the specification and the claims the directions of advance reference the vehicle and the direction of advance of that vehicle. Its not merely the route itself." (Tr., page 86).

It is the Special Master's conclusion that Visteon interpretation is correct as it is the one supported by the claim language and the specification. Claim 8 is for a "method of assisting the

navigation of a vehicle", and it does that according to the 3 steps set forth in the claim.  The claim is not a method for determining the route and turns in the route (per Garmin); as such a method was clearly disclosed in the prior art. Instead, the invention is for "assisting the navigation of the vehicle" as it travels along such route. Step one of the claim confirms this concept as it calls for "continuously computing a plurality of successive directions of advance until said vehicle reaches a destination point". Routes are well known and in map data bases, etc. and are calculated in advance, there being no reason to calculate the route while driving. Continuous computing is required to provide the driver with specific turn information before the vehicle arrives at the turn.  Step two of the claim, based on the computations from step one, calls for the "creating an arrow icon that represents said current directions of advance". Then in step three the arrows are displayed.

The specification teachings are entirely consistent with the foregoing analysis of the claim. For example, in describing the preferred embodiments of the invention, and using Fig.1 as the description of the claimed system, the inventors make a clear distinction between calculating the route and calculating the directions of advance of the vehicle:

> "**Computer 8 computes an optimal route** from the starting place to the destination in accordance with geographic information from a map data base **10**…Within computer **8**, **a direction computing unit 9 computes from the optimal route, one or more directions of the vehicles advance**. An arrow creation unit 11, having received a direction signal form the direction computing unit **9**, creates an arrow that best represents the next one or more turns required from the present position and direction of the vehicle…"

(Col. 3,ll 42-52)(emphasis added) (*See also*, the Abstract; Col. 2, ll 10-13,28-31,37-39 and 46-47).

The foregoing disclosures clearly define the invention claimed. In brief, nothing in the specification supports Garmin's interpretation of Claim 8. Accordingly, it is the Special Master's

recommendation that the Court reject Garmin's proposed construction, and that the Court adopt Visteon's position:

> "The directions that the road takes with respect to each other is the route itself, whereas the patent and throughout the specification and the claims the directions of advance reference the vehicle and the direction of advance of that vehicle. Its not merely the route itself."

**Garmin's Non-Infringement Defense**

Garmin's non-infringement defense relies on two separate arguments. First, Garmin contends that its accused devices compute all directions of advance up front, not continuously, as the vehicle moves along the route, i.e., not "on the fly". (Garmin Br., page 14). This defense goes only to step one in Claim 8. Garmin motion is not directed to the second and third limitations in the claim. (Garmin Reply Br., page 1).  As to the first limitation, the meaning of the terms "directions of advance" again comes into play. If the Court agrees with the Special Master's recommendation, the fact that Garmin's devices, like prior art devices, calculates the route in advance, not on the fly, doesn't let Garmin off the hook. The evidence relating to how its devices do in fact operate, as the vehicles proceeds along the predetermined route must still be reviewed in this summary judgment context. Although Garmin has the burden of proof to support of its motion, the only evidence relied on as to this operation is a single paragraph in the Declaration of Kent Bolton (*See* Garmin slide 29). As is readily seen, however, Mr. Bolton statement merely confirms Garmin's statements as to how its devices operate "prior to the beginning navigation", but says nothing about what, if any, calculations of turns and display of arrows occur as the vehicle proceeds along the route. Again, if the Court adopts the Special Master's recommendation as to the meaning of "directions of advance", the Bolton evidence is clearly insufficient to meet Garmin's burden of proof at summary judgment.

On the other hand, Visteon has presented the Court with considerable summary judgment evidence from its expert, Dr. Lokshin, which goes directly to the issue of how the Garmin devices calculates turns and presents arrows to the driver as the vehicle proceeds along the route. Garmin does not rebut this evidence, and, standing alone, this evidence is clearly sufficient to raise issues of material fact and defeat summary judgment (For a review of such evidence, *see* Visteon's arguments and its slides from the hearing, Tr. pages 85-93, slides 11-17). Accordingly, it is the Special Master's recommendation that the Court find that as to Garmin's first position of non-infringement, it has not met its summary judgment burden and this position should be rejected.

Garmin's second contention in support of its non-infringement defense relates to the limitation in step one of Claim 8 which states that "said computing being initiated at one of **a predetermine time or a predetermined distance** before said vehicle reaches an upcoming turning point for a current direction of advance." (Col. 7. ll. 37-44) (emphasis added.). In addition to the arguments advanced above to the effect that Garmin devices do not determine the "directions of advance" on the fly, Garmin also contends, "the user of its devices cannot select anything with respect to when directions of advance are computed. Visteon's only theory of infringement on this point already has been rejected by the Special Master Methvin." According to Garmin, the theory of infringement relied on by Visteon was rejected by the Special Master when Visteon's proposed construction for the limitations at issue was rejected. In other words, when the Special Master stated that there was no support for the claim construction, the Special Master, per Garmin, was determining, as a matter of law, that Visteon's infringement claims were foreclosed. Garmin does not cite any law to support this unique approach, as none exist. As Visteon accurately points out, the sole purpose of the claim construction process is to define the

terms of the limitations at issue. Although a particular definition might result in a defendant's products falling outside the scope to the definition, this is an infringement issue that requires a review of the evidence that compares the product to the limitations of the claim at issue. In this case, the term limitations at issue **a predetermine time or a predetermined distance** was defined by the Court to mean **a predetermined time or distance selected by the operator**. Since Garmin's contention of non-infringement rest solely on the theory advanced above, it does not present any factual evidence in rebuttal of the evidence on the issue presented by Visteon. The evidence offered by Visteon (*see* Tr. pages 94,95 and slides 21,24 for a summary of evidence presented by Dr. Lokshin) goes directly to the fact issue of whether the "zoom function" of the Garmin devices allow for the predetermination of a distance by the operator. Whether this function satisfies the requirements of the limitations in question is, of course, an issue that must be tried. Accordingly, it is the Special Masters recommendation that Garmin's non-infringement contention based on statements made during claims construction also be rejected.

Based on the foregoing analysis, it is the Special Master's recommendation that Garmin's motion for summary judgment of non-infringement be denied.

### Garmin's Lack of Written Description Defense

Garmin asserts "Claim 8 is invalid for failing to satisfy the written description requirement, 35 U.S.C. § 112, ¶ 1. The 'written description' requirement serves a teaching function, as a '*quid pro quo*' in which the public is given 'meaningful disclosure in exchange for being excluded from practicing the invention for a limited period of time.' Univ. Of Rochester v. G.D. Searle & Co., Inc., 358 F.3d 916, 922 (Fed. Cir. 2004) (quoting *Enzo Biochem, Inc. v.*

*Gen-Probe Inc.*, 323 F.3d 956, 970 (Fed.Cir.2002)).  '[T]he test for sufficiency is whether the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date.'  *Ariad Pharmaceuticals, Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc).

Although the *Ariad* case calls for a factual inquiry, Garmin--once again--does not provide the Court with any evidence on the point. Instead, Garmin relies on the claim construction proceedings to support a familiar position: the issue has been decided as a matter of law due to determinations made in the *Markman* proceedings. According to Garmin, since the Special Master recommended that the means-plus-function claims 1, 2, 3 and 10 of the '892 be invalidated as indefinite, the same logic and conclusion should be applied to claim 8, a non means-plus-function claim. But Garmin's theory is without any support in the law. The Federal Circuit rules for analysis are not the same for both classes of claims. As noted by Visteon with supporting law, the determination of the claim function and the corresponding structure of a means-plus-function claim term is a question of law. Thus such a determination was ripe for decision in the claims construction process and the Court made such a determination.  In particular, as the Court will recall, the test for sufficiency of the mean-plus-function claims limitation requiring  "continuous computing", was whether the specification disclosed an algorithm for performing the claimed function. Since no such algorithm was disclosed in the '892 patent, the claims failed the test and it was recommended that the claims be found to be indefinite under the written description requirements of § 112.  No determination, however, was made as to the sufficiency of the disclosures to support Claim 8. Further, none of the analysis or conclusions relating to the indefiniteness of the means-plus-function claims has any relevance to the issue of whether Claim 8 is indefinite.

As to Claim 8, the *Ariad* case makes clear that the test for sufficiency is whether the disclosure of the application relied upon reasonably conveys to one skilled in the art that the inventor had possession of the claimed subject matter as of the filing date.  This is a factual inquiry and Garmin does not offer any evidence on the point. Visteon, on the other hand, not only provides the Court with the Federal Circuit guidelines for such an inquiry, but also evidence, which it contends, satisfies all of the factors set forth in this case. The four factors and Dr. Lokshin's analysis of the evidence relating to these factors is found in Dr. Lokshin's rebuttal report (Docket No. 157-7, paragraphs 479-482).

It is the recommendation that the Court find that Garmin's theory in support of its § 112 defense is without merit. It is further recommended that since Garmin has not provided any evidence demonstrating that the disclosures fail to meet the requirements of § 112, the Court find that Garmin has failed to meet its burden on this validity issue. It follows that this aspect of Garmin's summary judgment motion should also be denied.

Respectfully Submitted,

Gaynell C. Methvin
Special Master
September 17, 2014

111