UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VISTEON GLOBAL TECHNOLOGIES, INC.
AND VISTEON TECHNOLOGIES, LLC,

     Plaintiffs,       Case No. 10-cv-10578

               Paul D. Borman
v.              United States District Court

GARMIN INTERNATIONAL, INC.,

     Defendant.
_____/

OPINION AND ORDER
(1) ADOPTING IN PART AND REJECTING IN PART THE SPECIAL MASTER'S
REPORT AND RECOMMENDATION (ECF NO. 226),
(2) OVERRULING VISTEON'S OBJECTIONS TO THE SPECIAL MASTER'S
REPORT AND RECOMMENDATION (ECF NO. 231),
(3) OVERRULING IN PART AND SUSTAINING IN PART GARMIN'S OBJECTIONS
TO THE SPECIAL MASTER'S REPORT AND RECOMMENDATION (ECF NO. 232),
(4) DENYING VISTEON'S MOTION FOR PARTIAL
SUMMARY JUDGMENT (ECF NO. 157), AND
(5) GRANTING IN PART AND DENYING IN PART GARMIN'S MOTION
FOR SUMMARY JUDGMENT (ECF NO. 159)

  Before the Court are Plaintiffs Visteon Global Technologies, Inc. and Visteon Technologies,

LLC's ("Visteon") and Defendant Garmin International, Inc.'s ("Garmin") Objections to Special

Master Gaynell Methvin's September 17, 2014 Report and Recommendations Relating to the

Parties' Motions for Summary Judgment (Report docketed on September 25, 2014, ECF No. 226).

(Objections, ECF Nos. 231 and 232.)  Visteon and Garmin each filed a Response to the other party's

Objections.  (Responses, ECF Nos. 233, 234.)  Having reviewed *de novo*,  pursuant to Fed. R. Civ.

P. 53(f), the Special Master's findings of fact and conclusions of law to which objection has been

1

made, the Court: (1) ADOPTS IN PART AND REJECTS IN PART Special Master Methvin's Report and Recommendations (ECF No. 226); (2) OVERRULES Visteon's Objections and DENIES Visteon's Motion for Partial Summary Judgment (ECF No. 157); (3) OVERRULES IN PART AND SUSTAINS IN PART Garmin's Objections and GRANTS IN PART AND DENIES IN PART Garmin's Motion for Summary Judgment (ECF No. 159).[1]

**INTRODUCTION**

On September 17, 2014, Special Master Gaynell C. Methvin submitted his Report and Recommendation Relating to (1) Visteon's Motion for Partial Summary Judgment (ECF No. 157)

---

[1] Garmin also moved for summary judgment on U.S. Patent No. 6,097,316 ("the '316 Patent"). Visteon, however, has withdrawn its claim of infringement with respect to the '316 patent in light of this Court's ruling denying Visteon's motion for leave to amend its final infringement contentions. (ECF No. 214, March 17, 2014 Opinion and Order Adopting Report and Recommendation and Denying Visteon's Motion for Leave to Amend Final Infringement Contentions.) While Visteon reserves its right to appeal this Court's Order denying it leave to amend its final infringement contentions, it has withdrawn its claim of infringement of the '316 patent in light of that ruling. "Visteon withdraws its claim of infringement regarding the '316 patent. . . . [a]nd the reason we're not arguing it is as a result of Your Honor's rulings with respect to the motion for leave to amend." (ECF No. 225, Transcript of May 23, 2014 Hearing on Motions for Summary Judgment 83:12-13, 16-17.) Garmin argued at the hearing on the parties' motions for summary judgment that it was entitled to judgment in its favor on the '316 patent in light of Visteon's withdrawal of its '316 infringement claim. Visteon disagreed, noting that "[t]here were no counterclaims of noninfringement or counterclaims of invalidity made with respect to the '316 patent, only defenses to [Visteon's] claims of infringement." 5/23/14 Hr'g Tr. 127:25-128:3. Visteon relied on *Southwestern Bell Tel., L.P. v. Arthur Collins, Inc.*, 454 F. Supp. 2d 600 (N.D. Tex. 2006), where the district court held that plaintiff's infringement claim, which plaintiff withdrew following an unfavorable claim construction decision by the court, was "dismissed as withdrawn" without entry of judgment. The court explained in *Collins*: "Collins responds that it is no longer asserting the '907 patent but reserves its right to appeal the claim construction decision. . . . Because Collins has withdrawn its infringement claims as to the '907 patent, the Court . . . DISMISSES as withdrawn Collins's claims of infringement of the '907 patent." 454 F. Supp. 2d at 602, 608. Garmin cited no contrary authority at the hearing and the Court invited the parties to file additional briefing or a stipulation following the hearing. Hr'g Tr. 130:5-8. Nothing additional has been filed with the Court. Accordingly, the Court holds that Visteon's claim of infringement regarding the '316 patent is DISMISSED as withdrawn and no judgment is entered on the '316 infringement claims.

and (2) Garmin's Motion for Summary Judgment (ECF No. 159). On October 3, 2014, the Court entered a Stipulated Order setting deadlines for the parties to file objections and responses to the Special Master's Report and Recommendation. (ECF No. 228, Stipulated Order.) Pursuant to that Stipulation, Visteon (ECF No. 231) and Garmin (ECF No. 232) filed Objections on October 16, 2014 and Visteon (ECF No. 234) and Garmin (ECF No. 233) filed Responses to the other party's Objections. For the reasons that follow, the Court ADOPTS IN PART AND REJECTS IN PART the Special Master's Report and Recommendations.

## II.    STANDARD OF REVIEW

Fed. R. Civ. P. 53 sets forth the appropriate standard of review for a district court in reviewing findings of fact and conclusions of law made or recommended by a Special Master. Rule 53(f)(3) provides as follows:

> *Reviewing Factual Findings*. The court must decide *de novo* all objections to findings of fact made or recommended by a master, unless the parties, with the court's approval, stipulate that:
>
> > (A) the findings will be reviewed for clear error; or
> > (B) the findings of a master appointed under Rule 53(a)(1)(A) or (C) will be final.

Fed. R. Civ. P. 53(f)(4) provides as follows:

> *Reviewing Legal Conclusions*. The court must decide *de novo* all objections to conclusions of law made or recommended by a master.

Fed. R. Civ. P. 53(f)(5) provides as follows:

> *Reviewing Procedural Matters*. Unless the appointing order establishes a different standard of review, the court may set aside a master's ruling on a procedural matter only for an abuse of discretion.

*See also Hochstein v. Microsoft Corp.*, 730 F. Supp. 2d 714, 717 (E.D. Mich. 2010), *aff'd* 430 F. App'x 898 (Fed. Cir. 2011) ( "The Court reviews *de novo* factual findings and legal conclusions of

the Special Master to which a specific objection has been made. *See* Fed. R. Civ. P. 53(f).") The parties have not stipulated to the finality of the Special Master's Report and have not agreed to clear error review. The Court may "adopt or affirm, modify, wholly or partly reject or reverse, or resubmit to the master with instructions." Fed. R. Civ. P. 53(f)(1).

## III.    ANALYSIS

### A.    The Court Overrules Visteon's Objection as to the '375 Patent, Adopts the Special Master's Recommendation and Grants Garmin's Motion for a Summary Judgment Finding of Noninfringement of the '375 Patent.

The '375 infringement claim involves the ability of a navigation device to create a list of destinations that the user has previously selected and to which the user presumably may wish to return at some point in the future. In the Garmin devices, this list is called a "Recently Found" list.[2] Destinations are assigned to the Recently Found list in the accused device without classification but the accused device permits the selection of a single destination through the  "Go Home" feature, which allows the user to select one unique destination, presumably one to which the user most routinely returns. Garmin argues that in contrast to the accused devices, the '375 patent claims a destination history list that is category specific, assigning a selected destination to the destination history list according to its classification as belonging to a specific category.

Claim 1 of the '375 patent claims:

1.   A method for maintaining a destination history for a specific category of destinations in a vehicle navigation system, the method comprising the steps of:

selecting a first destination in response to selection of the first destination by

---

[2]  In the accused Navigon device, this list is referred to as the "Recents" list, but the associated functionality is the same as the "Recently Found" list. For ease of reference, the Court will use the Garmin "Recently Found" title, and similarly will use the Garmin "Go Home" feature name, although the similar accused Navigon feature is named "Take Me Home."

a user of the vehicle navigation system;

without user intervention, determining whether the first destination belongs to the specific category; and

without user intervention, including the first destination in the destination history only where the first destination belongs to the specific category.

'375 Patent col. 7, l. 15-26.

The Special Master has recommended that the Court grant Garmin's motion for summary judgment of noninfringement of the '375 patent, rejecting Visteon's argument that selection of a single destination through the "Go Home" feature in the accused device creates a "specific category" of destinations selected *other than* through the Go Home feature, *i.e.* the category of "everything apart from Home," and thus infringes Claim 1 of the category-specific '375 patent.  Visteon objects to the Special Master's construction of the term "category of destinations" in the '375 patent and argues that the Special Master incorrectly applied the "category of destinations" language of Claim 1 of the '375 patent to Garmin's devices.  The heart of Visteon's argument is that Garmin's "Recently Found" destination list is not "category agnostic" as Garmin contends because the accused devices allow for the selection of a unique "Home" destination that, Visteon submits, once designated as the "Home" destination is not populated in the Recently Found list, thereby creating a "specific category" of every destination apart from the Home destination.

The Court agrees with the Special Master that there is no support in the claim language or the specifications to support Visteon's suggestion that the selection of a single destination through the "Go Home" feature creates a "specific category" of "every destination not so selected" and therefore infringes the category-specific claims of the '375 patent.  To accept Visteon's infringement argument, one must adopt the flawed "category of one" premise, *i.e.* that the selection of a single

5

destination through the Go Home feature creates a "category," before reaching the suggested dependent conclusion that the accused device therefore creates a specific category, *i.e.* everything else on the Recently Found list not selected through the Home feature.  There is no dispute that, apart from a single destination that is created by the user through the "Go Home" feature, the Garmin Recently Found list *is* category agnostic, *i.e.* the accused device assigns destinations to the list completely without regard to classification by category.  Garmin is quite right to suggest that no reasonable juror could conclude that "every destination but the Home destination" constitutes a "specific category" of destinations.  The Special Master correctly concluded that there is no support for Visteon's strained theory of infringement in the claim language or specifications of the '375 patent, which clearly claims a method for maintaining destination histories that are category specific. The Court ADOPTS the Special Master's recommendation and GRANTS Garmin's motion for a summary judgment finding of no infringement of the '375 patent.

> **B.    The Court Overrules Garmin's and Visteon's Objections to the Special Master's Recommendation as to the '408 Patent and Finds that the Special Master Correctly Concluded (1) that the '408 Patent Does Not Require the Selection of Two Destinations and (2) that Genuine Issues of Material Fact Remain for Trial as to Garmin's Direct and Induced Infringement of the '408 Patent.**

Visteon argues that it has established direct and induced infringement of the '408 patent as a matter of law and is entitled to summary judgment on its claim of infringement of the '408 patent. The Special Master, while agreeing with Visteon's construction of the claim terms of the '408 patent, concluded that Visteon has failed to produce sufficient evidence of infringement to entitle it to summary judgment on the issue.  Specifically, Garmin objects to the Special Master's recommendation that the Court find that the method of Claim 1 of the '408 patent is for determining a single destination using one of two alternative methods disclosed in the claim and Visteon objects

6

to the Special Master's recommendation that it has produced insufficient evidence, in the testimony of Garmin employees and a Garmin customer regarding their use of certain Garmin devices, to support the conclusion that no genuine issue of material fact exists that Garmin's accused devices infringe the '408 patent and that Garmin induced that infringement in its customers. Thus, in resolving the parties' objections, the question the Court must answer in the first instance is whether the method steps of Claim 1 of the '408 patent *require* a user to select a first destination and a second destination in the same operation.[3]

Direct infringement under 35 U.S.C. § 271(a) requires that the infringing party perform every step of a claimed method. *BMC Resources, Inc. v. Paymentech, L.P.*, 498 F.3d 1378-79 (Fed. Cir. 2007). *See also Southwall Technologies, Inc. v. Cardinal IG Co*., 54 F.3d 1570, 1575 (Fed. Cir. 1995) ("To establish literal infringement, every limitation set forth in a claim must be found in an accused product, exactly."). Infringement "is a question of fact . . . that a court is not to resolve on summary judgment unless no genuine issue of factual issue remains." *Beckson Marine, Inc. v. NFM, Inc.*, 292 F.3d 718, 722 (Fed. Cir. 2002). Visteon, as the moving party, "must make a prima facie showing of infringement as to each accused device before the burden shifts to the accused infringer to offer contrary evidence." *L&W, Inc. v. Shertech, Inc.*, 471 F.3d 1311, 1318 (Fed. Cir. 2006).

---

[3] The parties did not raise this claim construction dispute during the *Markman* phase of the case. As the Special Master noted in his Report, the issue must now be decided in the summary judgment context. Report 29-30. Claims 1-3 of the '408 patent were cancelled in reexamination during the course of the litigation and Claim 6 was amended but withdrawn by Visteon from its summary judgment motion. Claims 4 and 5 are still in suit and are dependent on Claim 1.

      **1.**      **The Special Master correctly concluded that the '408 patent does not require the selection of two destinations in a single operation and the Court overrules Garmin's objection to this recommendation.**

Garmin argues that the limitations of claim 1 (on which claims 4 and 5 depend) require 4 discreet steps that must be performed in sequence and submits that there is no evidence that the Garmin accused devices have the ability to perform those four steps in sequence and simultaneously display two active destinations as part of a related operational method. Garmin argues that performing the claimed steps in isolation, but not together, cannot support infringement. *See Mirror Worlds, LLC v. Apple, Inc.*, 692 F.3d 1351, 1360 (Fed. Cir. 2012). Visteon, and the Special Master, disagree that the claim terms of the '408 patent require the selection of two destinations. There appears to be no dispute that if the '408 patent does require the simultaneous selection of two destinations in a single operation, the Garmin devices are incapable of such a function and thus would not directly infringe the '408 patent.

Predictably, the analysis begins with the language of the claims:

1.  A method for selecting a destination in a vehicle navigation system wherein the system comprises a display, a selection control and an alphanumeric input means, and wherein the system employs a plurality of categories of destinations, the method comprising the steps of:

      where a first selection signal corresponding to a first category is generated by the selection control, displaying a first list of destinations corresponding to the first category; and selecting a first destination from the first list in response to a second selection signal generated by the selection control; and

     where an alphanumeric input signal is received via the alphanumeric means, displaying a second list of destinations corresponding to the alphanumeric input signal, the second list of

> destinations being generated by searching across the
> plurality of categories of destinations; and
> selecting a second destination from the second list in
> response to a third selection signal generated by the
> selection control.

Col. 6, l. 40-61.

> Claims 4 and 5, those still in suit, which depend on Claim 1, state as follows:

> 4.  The method of claim **1** further comprising the step of
> displaying the plurality of categories of destinations with an
> additional selection option which facilitates electronically
> searching for a destination across the plurality of categories.

> 5.  The method of claim **4** further comprising the step of
> displaying an alphanumeric input screen in response to a
> fourth selection signal generated by the selection control, the
> fourth selection signal corresponding to selection of the
> additional selection option.

Col. 7, l. 1-10.

The Special Master concluded that the claim limitations spell out two alternative methods for selecting a single destination: (1) *Where* a selection signal corresponding to a first category is generated by the selection control, a list of destinations corresponding to the selected category is displayed; and (2) *Where* an alphanumeric input signal is received via the alphanumeric means, a list of destinations is displayed corresponding to the alphanumeric input.  Report at 30.  The Special Master concluded that "the teachings of the specification of the '408 patent relate to the selection of a single destination.  Further, and to repeat, the specification does not disclose a method of navigation that requires the selection of two destinations at once."  Report at 32.

Garmin argues that the Special Master's construction ignores the plain and ordinary meaning of the claim terms "first" and "second," which, according to Garmin, *require* two destinations to be selected sequentially in the same operation, a first destination selected through a category search and

then a second destination selected as part of the same search through an alphanumeric search. While claim construction begins with the language of the claims, "[c]laims must be read in view of the specification, of which they are a part." *Phillips v. AWH Corp*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (internal quotation marks and citation omitted). A claim term "must be considered in the context of all intrinsic evidence, namely the claims, the specification, and the prosecution history." *3M Innovative Props. Co. v. Avery Dennison Corp*., 350 F.3d 1365, 1371 (Fed. Cir. 2003).

The Special Master's construction finds significant support in the intrinsic evidence. The preamble of the patent provides: "[W]here a first selection signal corresponding to a first category is generated by the selection control, the display presents a first list of destinations corresponding to the first category. A first destination may then be selected. . . . Alternatively, a second destination corresponding to an alphanumeric input may be found and selected." Figure 7 of the patent also supports Visteon's reading, clearly showing two separate but parallel paths (from 708 to 710-714 and from 708 to 718) merging into one final selection (716). From this single destination selection, the user is instructed to "Proceed with destination selection (720)." Fig. 7. Visteon aptly described the dynamics of the Figure 7 flow chart: "The linguistic structure of the claims . . . follows a bifurcated flow chart shown in Figure 7 of the '408 patent and requires *two alternative* mechanisms to search for a destination, but ultimately the selection of only one destination." ECR No. 174, Garmin's Reply 4 (emphasis in original). The embodiment depicted in Figure 7 would be excluded if Garmin's construction were correct as both a category and an alphanumeric search are not required to be performed and only a single destination results from the search.

The Special Master's construction is also supported by statements made by the Patent Office in a summary of the reexamination interview:

The patent owner's representatives and the examiner first focused on how the two "where" statements were considered in the Final Office Action. The examiner responded by noting the '408 patent specification in conjunction with Figure 7 describes two paths: one for an alphanumeric process and one for a category process. The examiner acknowledged that both paths are described in the '408 patent to be alternatives to one another. In light of the claim language, the examiner acknowledged that nothing in the "alphanumeric method" requires any part of the "category method" and thus the two "where" methods are written in a manner consistent with the patent specification which describes two alternative destination selection methods.

ECF No. 219, Ex. D, July 5, 2013 Ex Parte Reexamination Interview Summary at 2. These statements clarify that the second *where* statement does not *require* the first *where* statement also to have been performed. This observation flies directly in the face of Garmin's argument that the two methods are *required* to be performed in the same operation, resulting in the selection of two destinations.

In the face of this evidence, Garmin states in its summary judgment response that whether or not the category and alphanumeric search modes described in Claim 1 are alternatives to each other "has never been an issue in this case." Resp. 2. Garmin insists that its point "has always been that the claims require the selection of two destinations." *Id.* Garmin points to no evidence in the claim language or the intrinsic evidence that explains how "alternative" methods could be "required" to be performed "together" in a single operation resulting in the selection of two distinct destinations. Indeed, the practical necessity for such functionality was the subject of questioning by the Court at the hearing on the parties' motions for summary judgment. Although Garmin suggests in its Objections that the Court noted an example of when such a feature might be utilized, it was Garmin's counsel who suggested the hypothetical that the user may need to get gas while on the way to the federal court house and the method specified in Claim 1 would enable the user to get directions to both simultaneously. Hr'g Tr. 63:9-63:24. While Garmin's counsel also suggested that

11

this two destination selection claim was intended to support the building of a destination history list, as the Special Master noted, Claim 1 of the '408 patent does not relate to the building of a destination history.  Hr'g Tr. 65:14-19; Report at 32.  As the Special Master noted in his Report, on its face the two-destination construction offered by Garmin makes little practical sense and Garmin's "gas on the way to the court house" example only served to highlight this point.  Indeed, Garmin's counsel noted himself the illogical nature of Garmin's construction, noting that "it doesn't necessarily feel good to read this claim" this way because: "If I'm using a [PND], I just want to go to [one place]."  Hr'g Tr. At 66:16-20.

Examining these terms in the "context of all the intrinsic evidence, namely the claims, the specification, and the prosecution history," leads the Court to agree with the construction urged by Visteon and recommended by the Special Master.  The Court OVERRULES Garmin's objection to this recommendation.[4]

---

[4] Garmin also objected to the Special Master's recommendation regarding Garmin's "partial list" defense.  In this argument, also treated by the Special Master as a claim construction issue, Garmin asserts that because its accused devices are capable of displaying partial lists of destinations they cannot infringe the Visteon patent which, Garmin submits, requires that all destinations within a category be displayed each time a category is selected.  Garmin relies not on the language of the claim or the specifications but on statements made by Visteon in the reexamination proceedings on the '408 patent.  Garmin wants the Court "to hold Visteon to an admission made during the reexamination of the '408 patent."  ECF No. 232, Objs. 8.  The Court agrees with the Special Master that in relying solely on the reexamination record, and given the absence of any support for this construction in the language of the claim or the specifications, Garmin must demonstrate unequivocally, clearly and unmistakably that Visteon intended to disclaim a partial list reading of the claim.  Garmin's evidence falls far short of this and the Court agrees with the Special Master and the reexaminer that a list is a list, whether partial or full, and the claim does not specify one or the other.  The Court therefore ADOPTS the Special Master's recommendation that the claim limitation of a "list of destinations" includes both full and partial lists.

     **2.**     **The Special Master correctly concluded that genuine issues of material fact remain for trial on Visteon's claim that Garmin directly infringed, or induced infringement, of the '408 patent and the Court overrules Visteon's objection to this recommendation.**

Although recommending that the Court adopt Visteon's construction of the '408 patent as discussed *supra*, the Special Master nonetheless recommends that the Court deny Visteon's motion for summary judgment on the '408 patent for failure of sufficient evidence of direct and induced infringement.  Visteon submits that there is no genuine issue of material fact as to direct and induced infringement because Garmin has not rebutted the undisputed facts presented by Visteon in support of infringement, *i.e.* that its employees and a customer utilized the  accused devices to search by category and by name as alternative methods of selecting a destination.  "Where . . . the parties do not dispute any relevant facts regarding the accused product but disagree over [claim interpretation], the question of literal infringement collapses to one of claim construction and is thus amenable to summary judgment."  *Athletic Alternatives, Inc. v. Prince Mfg., Inc*., 73 F.3d 1573, 1578 (Fed. Cir. 1996).

Garmin does not dispute that its employees and a customer testified in deposition that they used both the category and alphanumeric functions of the accused devices.  In its summary judgment response Garmin dismisses the significance of this "evidence" of infringement in a brief footnote:

> Visteon also asserts that "Garmin and its customers" have "used the accused features" and cites to a series of deposition transcripts. *See* Br. 13-14.  But Visteon relies on the same flawed theory, which omits the requirement of a "second destination."  None of the cited testimony ever refers to using the features to select both a first and a second destination.

ECF No. 170, Garmin Resp. 15 n. 5.

Fatally, this dismissive argument presumes that the selection of two destinations is required by the language of the claims.  The Court has found that the Special Master correctly concluded that

the selection of two destinations in a single operation is not required by the language of the Claims, and agrees that the testimony of the Garmin employees and the Garmin customer regarding the operation of the accused devices stands unrebutted.  Whether that testimony is sufficient to satisfy Visteon's burden of establishing the absence of a genuine issue of material fact regarding direct and/or induced infringement is a separate question that the Court agrees with the Special Master must be answered in the negative.

Direct infringement under 35 U.S.C. § 271(a) requires that the infringing party perform every step of a claimed method.  Visteon, as the moving party, bears the burden of demonstrating infringement as to each method step of the accused device.   If, viewing the evidence in the light most favorable to the non-moving party, questions of fact remain, summary judgment is inappropriate.  The question is a straightforward one:  Could a reasonable juror conclude, based on the testimony of the Garmin employees and a Garmin customer, that one or more of them had actually performed fewer than all of the steps required by the limitations of the claims?  Could they, for example, have initiated their alphanumeric search other than through the "Spell Name" option, such as from within a category as demonstrated at the hearing on the parties' motions?  (ECF No. 225, Transcript of May 23, 2014 Hearing, 59-60.)  Which screens did they access and which buttons on those screens did they push? As the Special Master observes, none of the witnesses actually describes having performed each and every step of the claims, including in many instances failing to describe having executed the final step of selecting the searched for destination.  In its Objections, Visteon states that "Visteon proved through the testimony of Dr. Lokshin that in order to use these search functions, the user of Garmin's accused PNDs must *necessarily* perform *each step* of the processes covered by Claims 4 and 5."  ECF No. 231, Objs. 11.  (Emphasis in original.)  Visteon

14

cannot satisfy its burden to establish the absence of any genuine issue of material fact, and be awarded a judgment of infringement, by urging the Court to accept that critical elements of the claims *must* have been performed even though the witness never testified to having performed each and every step. While Visteon may be able to elicit this testimony at trial, the Court agrees with the Special Master that it has not produced sufficient evidence to carry its burden at this summary judgment stage.

Given the Court's conclusion that the Special Master correctly recommended denying Visteon's motion for summary judgment on direct infringement, the Court similarly adopts the recommendation that Visteon's motion for summary judgment on inducement, which depends upon a finding of direct infringement, must be denied. As with Visteon's claim of direct infringement, its claim of inducement also must await a trial on the merits.

## C.    The Court Sustains Garmin's Objection and Rejects Special Master Methvin's Recommendation to Grant Visteon's Motion for Summary Judgment as to Garmin's § 112 Defense to the '060 Patent.[5]

Garmin alleges that Claims 3 and 4 of the '060 patent are invalid under 35 U.S.C. § 112 for lack of enablement and a proper written description. Visteon moves for a summary judgment finding that there is no genuine issue of material fact that Garmin cannot establish these defenses. Section 112 provides in relevant part:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact

---

[5]  Because the Court has adopted Special Master Methvin's recommendation to grant Garmin's motion for summary judgment as to the claims of the '375 patent, the Court also grants Visteon's motion for summary judgment as to Garmin's § 112 defenses as to the '375 patent. Garmin concedes that dismissal of their conditional defenses as to the '375 patent is appropriate given the Court's resolution of Garmin's motion for summary judgment on the '375 patent. (ECF No. 232, Garmin's Objs. 13.)

> terms as to enable any person skilled in the art to which it pertains, or with which it
> is most nearly connected, to make and use the same.

35 U.S.C. § 112 ¶ 1. This section gives rise to two separate requirements for patentability: the "enablement" requirement and the "written description" requirement. *Ariad Pharmaceuticals, Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351-52 (Fed. Cir. 2010). The enablement requirement is met if the patent specification discloses to one of ordinary skill in the art how to make and use the claimed invention without undue experimentation. *Amgen Inc. v. Hoechst Marion Roussel*, 314 F.3d 1313, 1314 (Fed. Cir. 2003). In *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988), the Federal Circuit identified some of the relevant factors to be considered in determining whether a disclosure would require undue experimentation: "(1) the quantity of experimentation necessary, (2) the amount of direction or guidance presented, (3) the presence or absence of working examples, (4) the nature of the invention, (5) the state of the prior art, (6) the relative skill of those in the art, (7) the predictability or unpredictability of the art, and (8) the breadth of the claims." *Id*. The parties are in agreement that the disclosure need not enable the accused products, but only need enable *any* mode of making and using the invention. *Invitrogen Corp. v. Clontech Labs, Inc.*, 429 F.3d 1052, 1071 (Fed. Cir. 2005). The written description requirement also does not focus on the accused product. *Inline Connection Corp. v. EarthLink, Inc.*, 684 F. Supp. 2d 496, 534 (D. Del. 2010) ("the written description requirement examines the claimed inventions, not the accused product"). "To satisfy the written description requirement, the applicant must convey with reasonable clarity to those skilled in the art that, as of the filing date sought, he or she was in possession of the invention, and demonstrate that by disclosure in the specification of the patent." *Centocor Ortho Biotech, Inc. v. Abbott Laboratories*, 636 F.3d 1341, 1348 (Fed. Cir. 2011) (internal quotation marks and citations omitted). "Assessing such possession as shown in the disclosure requires an objective inquiry into

16

the four corners of the specification." *Id*.

Visteon argues that Dr. Michalson, Garmin's expert, improperly focused his opinions exclusively on the accused products, but Dr. Michalson suggested otherwise in his deposition:

> A:    In looking at, for example, enablement, but a similar argument applies to written description, Visteon – I'm not worried about any particular commercial manifestation of a product. I'm looking at the claim interpretation that Visteon appears to be putting forth, and that claim interpretation appears to be completely and utterly antithetical to the teachings of the specification.

ECF No. 170, Ex. B, Michalson Tr. at 201. Garmin relies on Visteon's infringement contentions when making its lack of enablement argument because Visteon has not yet announced its final construction of Claims 3 and 4 of the '060 patent, nor has Garmin moved for summary judgment on the '060 patent, which could have forced the issue. Accordingly, in Garmin's view, it is still possible that Visteon will claim a construction that overreaches that which the Claims enable and Garmin argues that it should have its § 112 defenses available to it at that time.

Garmin has a point with respect to its defenses to the '060 patent. The full scope of the claimed inventions of the '060 patent has not been construed and/or tested on summary judgment and patentability of the Claims at issue was confirmed on reexamination. (ECF No. 196, Notice of Confirmation of Patentability of Reexamined Claims.) In fact, as Visteon recognizes, the Claims of the '060 patent have gone largely unconstrued by the Court, leaving their plain and ordinary meaning interpretation for the jury: "The claim scope already has been decided - in many respects, it was not even challenged." (ECF No. 174, Visteon's Summ. Judg. Reply 2.) In the cases discussed by the parties in their summary judgment briefing and in their Objections, the enablement issue was decided through *in limine* motions or at trial or on post-trial motions, or otherwise following identification of the full scope of the claims. *See, e.g., Liebel-Flarsheim Co. v. Medrad,*

*Inc.*, 481 F.3d 1371, 1378-79 (Fed. Cir. 2007) ("We have previously construed the claims of the front-loading patents such that they are not limited to an injector with a pressure jacket, and therefore the full scope of the claimed inventions includes injectors with and without a pressure jacket. That full scope must be enabled, and the district court was correct that it was not enabled."); *Sitrick v. Dreamworks, LLC*, 516 F.3d 993, 999 (Fed. Cir. 2008) ("The district court construed the asserted claims to include both video games and movies. Sitrick does not appeal this claim construction, but instead argues that the district court erred by concluding that for the purpose of determining enablement it could ignore the teachings of the patents related to video games.").

Visteon argues that notwithstanding Garmin's insistence that the full scope of the claims of the '060 has not been determined, Garmin has failed to create a genuine issue of material fact as to enablement because it has failed to come forward with an analysis of the *Wands* factors to demonstrate that the claimed invention could not be enabled without undue experimentation, a necessary element of their enablement defense.  Garmin states that it "fully preserved [its enablement defense] with conditional expert testimony."  (ECF No. 232, Garmin's Objs. 13.)  The Special Master agreed with Visteon that Garmin's expert, Dr. Michalson, "did not review the scope of the claims as issued" and that Garmin tried to "back into a *Wands* factor analysis . . . by piecing together parts of Dr. Michalson's report that relate to other issues."  (Report 77.)   The Special Master recommended that the Court grant Visteon's motion for summary judgment as to Garmin's § 112 defenses for lack of a proper *Wands* analysis.

Dr. Michalson conceded that the each of the *Wands* factors should be considered in analyzing an enablement defense.  (ECF No. 170-7, Michalson Dep. 27-28.)   And, as to the '060 patent, several pages of his Report are dedicated to discussing his opinion that claims 3 and 4 of the '060

18

patent fail to meet the enablement and written description requirements of § 112.  (ECF No. 170-2, Michalson Report 338-342.)  Dr. Michalson opines in this portion of his Report that;

> [T]he '060 patent teaches a person of ordinary skill in the art at that time (i.e. 1991) the opposite of what Visteon now contends falls within the full scope of the claims. With respect to enablement, the specification does not suggest or in any way enable one to utilize the traditional route preferences functionality in a way to be used in requesting an alternate optimal route.  Similarly, the fact that the specification describes the opposite of the claim scope presently asserted indicates that the inventors did not possess the claimed invention. . . . Thus, because a person of ordinary skill in the art, after reading the specification, would not understand the '060 specification to provide any guidance whatsoever as to how to practice Visteon's interpretation of the claimed invention without undue experimentation, claims 3 and 4 of the '060 patent are invalid for failing to meet the enablement requirement.

Michalson Report 341-42.  In this portion of his Report, Dr. Michalson ties his opinions both to the full scope of the claims, as interpreted by him based upon Visteon's infringement contentions, and to the time of filing.

In his deposition, when asked to identify his *Wands* analysis in his Report, Dr. Michalson referred Visteon to several aspects of his Report that addressed the *Wands* factors, although conceding that he did not neatly package these considerations in a separate "*Wands*" analysis.  Dr. Michalson need not, however, have addressed every *Wands* factor.  *See Cephalon, Inc. v. Watson Pharmaceuticals, Inc.*, 707 F.3d 1330, 1336 (Fed. Cir. 2013) (noting that the *Wands* factors "while illustrative are not mandatory.");  *Streck, Inc. v. Research & Diagnostic Systems, Inc.*, 665 F.3d 1269, 1288 (Fed. Cir. 2012) ("'[I]t is not necessary that a court review all the *Wands* factors to find a disclosure enabling. They are illustrative, not mandatory.'") (quoting *Amgen, Inc. v. Chugai Pharm.* Co., 927 F.2d 1200, 1213 (Fed. Cir. 1991)) (alteration in original).  Visteon's objections are best understood as attacking the weight of the evidence in support of Dr. Michalson's opinion and the Court concludes that Dr. Michalson's failure to separately discuss each of the *Wands* factors in

a distinct enablement analysis does not, standing alone, entitle Visteon to summary judgment on Garmin's enablement defense as to the '060 patent.

The Special Master correctly points out that Visteon has not sought or received a claim construction from the Court that mirrors the interpretation that Dr. Michalson asserts Visteon "appears to be putting forth." (Report 72.)  At the same time, Visteon has not suggested that Dr. Michalson's enablement analysis is based upon a claim interpretation that is inconsistent with the claim terms that have been construed by the Court.  In fact, as Visteon recognizes, the Claims of the '060 patent have gone largely unconstrued by the Court: "The claim scope already has been decided - in many respects, it was not even challenged."  (ECF No. 174, Visteon's Summ. Judg. Reply 2.)  Dr. Michalson's enablement analysis is predicated upon Visteon's infringement contentions.  A similar situation was recently addressed in *UltimatePointer, LLC v. Nintendo Co., Ltd.*, No. 14-0865, 2014 WL 7340545 (W.D. Wash. Dec. 22, 2014).  In *UltimatePointer*, as here, Nintendo's expert offered his enablement analysis based upon UltimatePointer's infringement contentions. UltimatePointer objected that the analysis was based on a claim construction not pronounced by the court.  Judge Robert S. Lasnik, in the context of UltimatePointer's motion *in limine* to exclude Nintendo's expert's testimony on the issue of enablement, refused to strike defendant's expert's testimony which was based upon plaintiff's infringement contentions:

> UltimatePointer objects to Dr. Welch's enablement analysis because it is based on a claim construction other than that provided by the Court. Plaintiff does not, however, identify a term or phrase that is used in a manner that is inconsistent with Judge Davis' constructions. More importantly, Dr. Welch's opinions are offered in response to plaintiff's infringement contentions. The purpose of the testimony is to show that, if UltimatePointer's understanding of the scope of its invention is correct ( e.g., that a "predetermined relationship" exists even if the only thing we know about the "calibration points" is that they are above or below the image), the patent does not teach how such minimal information could be used to control a feature on the image, as required by the rest of the claim. To be clear, Dr. Welch does not

20

> believe that simply knowing that the calibration points are above or below the image satisfies the "predetermined relationship" limitation: he is attempting to show that such a broad interpretation gives rise to other problems, such as a failure to enable. In that context, these opinions are both reliable and helpful.

2014 WL 7340545, at *6.   Dr. Michalson's opinion that the '060 patent teaches away from Visteon's claim interpretation as set forth in its final infringement contentions, and his related conclusion that therefore a person of ordinary skill in the art, after reading the specification, would not understand the '060 specification to provide any guidance whatsoever as to how to practice Visteon's interpretation of the claimed invention without undue experimentation, is not necessarily subject to challenge solely for his failure to address discreetly each of the *Wands* factors before reaching his opinion as to lack of enablement.

The Court makes no predictions as to the ultimate admissibility of Dr. Michalson's testimony on this point or as to the validity of Garmin's § 112 defenses as to Claims 3 and 4 of the '060 patent and Garmin will continue to bear the burden of proving lack of enablement "throughout the litigation." *Cephalon*, 707 F.3d at 1337-38.   But it seems premature to conclude at this point that Visteon has carried *its* burden to establish that no genuine issue of material fact exists as to the validity of Garmin's § 112 defenses as to Claims 3 and 4 of the '060 patent. Accordingly, the Court SUSTAINS Garmin's Objection, REJECTS the Special Master's Recommendation to Grant Visteon's motion and DENIES Visteon's motion for summary judgment as to the validity of Garmin's § 112 defenses as to the '060 patent.

### D.   The Court Overrules Garmin's Objections and Adopts the Special Master's Recommendation to Deny Garmin's Motion for a Summary Judgment Finding of Noninfringement as to Claim 8 of the '892 Patent.

Claim 8 of the '892 patent claims:

A method for assisting the navigation of a vehicle comprising the steps of:

continuously computing a plurality of successive directions of advance until said vehicle reaches a destination point, said computing being initiated at one of a predetermined time or a predetermined distance before said vehicle reaches an upcoming turning point from a current direction of advance;

creating an arrow icon that represents said current direction of advance and at least a first and a second directions of advance of said vehicle to be followed beginning at said upcoming turning point; and

displaying said arrow icon before said vehicle reaches said upcoming turning point.

Col. 7, l. 33-46 (emphasis added).

In its motion for a summary judgment finding of noninfringement of the '892 patent, Garmin urged the Court to construe the term "directions of advance" to mean "the directions the roads take with respect to each other." (ECF No. 159, Garmin's Mot. 14.) Garmin argues that because its accused devices calculate the directions that the roads take with respect to each other prior to navigation, they do not infringe the '892 patent which calculates "directions of advance" during navigation or "on the fly." Neither party sought to have the phrase "directions of advance" construed during claim construction and the Special Master now rejects Garmin's proposed construction. The Special Master concluded that the phrase "directions of advance" in Claim 8 of the '892 patent relates to the direction of the vehicle through navigation as it travels along a route, not to the relationship that the roads bear to one another which, the Special Master noted, is nothing more than the route. The Special Master observed that Claim 8 directs itself to "assisting the navigation of the vehicle" as it travels along a route, not to determining the route and how the roads on that route relate to each other. (Report 105-06.)

Contrary to Garmin's objection, the Special Master does support this conclusion with citation to the specifications, which he finds are "entirely consistent" with the distinction he draws between calculating the route and calculating the "directions of advance" of the vehicle along that route:

> Computer 8 computes an optimal route from the starting place to the destination in accordance with geographic information from a map database 10 or from an internal or external memory source such as a CD-ROM, an IC card, or the like. Within Computer 8, a direction computing unit 9 computes, from the optimal route, one or more directions of the vehicle's advance.

(Report 106, quoting Col. 3, ll 42-52.)   The optimal route "from starting place to destination" is computed and the computing unit further computes from that route the "directions of advance" of the vehicle along that route. The Special Master's interpretation comports with the language of this specification, i.e. the calculation of the "optimal route" from starting place to destination based upon information from a map database necessarily includes a rendering of the relationship of the roads to one another and is distinct from the later described step of calculating the "directions of advance" of the vehicle as it navigates and approaches turns along that route. Thus, the Special Master correctly concluded that the relationship of the roads to one another "is the route itself," and is distinct from "the directions of advance" of the vehicle along the route. (Report 107.) Visteon fully concurs with the Special Master and Garmin concedes that the route is distinct from the directions of advance and admits that "in the Garmin products, routes are obviously calculated up front, just like in the '892 Patent." (Garmin's Obj. 20.) Thus, at a minimum, there is universal agreement that the "route" is distinct from "the directions of advance."

Having reviewed the Report, Garmin's Objections and the record *de novo* at length, the Court finds that the parties also have expressed agreement that the term "directions of advance" has a plain and ordinary meaning relating to the directions that the vehicle takes along the route, just as

the Special Master has concluded in his Report. The following statements made by counsel at the hearing on the parties' summary judgment motions demonstrate that the parties in fact share a common understanding of this term:

By Mr. McDermott (counsel for Visteon):

> Garmin never submitted to the Court that there needed to be claim construction with respect to directions of advance. What that means is that the term "directions of advance" should carry with it its plain and ordinary meaning. . . . [T]he directions of advance reference the motions that the vehicle is taking, the directions of advance of the vehicle, which is what the patent refers to when it discusses directions of advance. . . . The patent talks about the directions of advance being related to the vehicle, not the route itself. There has never been a suggestion that [the term "directions of advance"] needs defining from a claim construction standpoint. We would argue that it means its plain and ordinary meaning, which is the directions of advance relating to the vehicle, which is what the patent says.

Hr'g Tr. 85:13-17; 87:4-7; 91:19-23.

Likewise, by Mr. Buresh (counsel for Garmin):

> The successive directions of advance, it's an important concept and one that I just heard described as the directions of advance the vehicle takes along the route. I think that's a fair plain and ordinary meaning. It's directions the vehicle takes along the route.

Hr'g Tr. 101:2-7. Accordingly, the Court OVERRULES Garmin's Objections and ADOPTS the Special Master's conclusion that "directions of advance" are the directions of advance that the vehicle takes along the route.

The Court also agrees with the Special Master's conclusion that there remain genuine issues of material fact as to exactly *what* the accused devices actually calculate before and during navigation. *Compare, e.g.,* ECF No. 162-7, Sealed Expert Report of John William Lavrakas 55-59 and ECF No. 159-15, Nov. 30, 2012 Declaration of Kenneth Bolton ¶¶ 4-5 *with* ECF No. 168-5, Second Declaration of Anatole Lokshin, PH.D ¶¶ 17-21 and ECF No. 172-1, Nov. 15, 2012 Sealed

24

Deposition of Anatole M. Lokshin 121:9-13; 135:18-138:4.  Accordingly, the Court OVERRULES Garmin's Objections and ADOPTS the Special Master's Recommendation to DENY Garmin's Motion for a Summary Judgment finding of noninfringement as to the '892 Patent.

## IV.    CONCLUSION

For the foregoing reasons the Court:

1)    OVERRULES Visteon's Objections as to the '375 patent, ADOPTS the Special Master's Recommendation and GRANTS Garmin's motion for summary judgment on the '375 patent;

2)    OVERRULES Visteon's and Garmin's Objections as to the '408 patent, ADOPTS the Special Master's Recommendation and DENIES Visteon's motion for summary judgment as to the '408 patent;

3)    SUSTAINS Garmin's Objections and REJECTS the Special Master's Recommendation to Grant Visteon's Motion for Summary Judgment as to Garmin's § 112 Defenses and DENIES Visteon's motion for summary judgment as to Garmin's § 112 defenses;

4)    OVERRULES Garmin's Objection as to the '892 patent, ADOPTS the Special Master's Recommendation and DENIES Garmin's motion for summary judgment as to the '892 patent;

5)    DISMISSES as withdrawn Visteon's claim of infringement on the '316 patent; and

6)    ADOPTS the remainder of the Special Master's Report and Recommendation as to which no objections have been filed.

IT IS SO ORDERED.

s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  March 18, 2015

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 18, 2015.

s/Deborah Tofil
Case Manager