Redacted Version

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| VISTEON GLOBAL TECHNOLOGIES, INC. and VISTEON TECHNOLOGIES, LLC, | ) ) ) ) |
| Plaintiffs, | ) C.A. No.: 2:10-cv-10578-PDB-MAR ) ) |
| v. | ) ) ) |
| GARMIN INTERNATIONAL, INC., | ) ) |
| Defendant. | ) ) ) |

**PLAINTIFFS VISTEON GLOBAL TECHNOLOGIES, INC. AND VISTEON TECHNOLOGIES, LLC'S REPLY TO GARMIN'S RESPONSE TO VISTEON'S MIL NO. 7 SEEKING TO EXCLUDE EVIDENCE OF THE VISTEON-████████ LICENSE**

Scott A. Wolfson (P53194)
swolfson@wolfsonbolton.com
WOLFSON BOLTON PLLC
3150 Livernois, Suite 275
Troy, Michigan 48083
(248) 247-7103 - Telephone
(248) 247-7099 - Facsimile

**Attorneys for Plaintiffs Visteon Global Technologies, Inc. and Visteon Technologies, LLC**

Richard M. McDermott
rick.mcdermott@alston.com
Jitendra Malik
jitty.malik@alston.com
ALSTON & BIRD LLP
Bank of America Plaza
101 South Tryon Street, Suite 4000
Charlotte, North Carolina 28280-4000
(704) 444-1000 – Telephone
(704) 444-1111 – Facsimile

Redacted Version

## I. INTRODUCTION

Garmin's Response to Visteon's Motion to Exclude Evidence (D.E. 304) of the Visteon-▮▮▮ License ("Response") attempts to conflate Visteon's contention that the ▮▮▮ License is "radically different" from the hypothetical negotiation with Visteon's *Daubert* Motion to exclude Mr. Newell's flawed methodology which uses the other licenses in a flawed manner. Response at 1 (D.E. 304) (filed under seal). Garmin's claim that Visteon seeks to "exclude any real-world data point" is an overstated attempt to confuse the Court into believing Visteon is asking for exclusion of more than what the law requires. *Id*. While Visteon's other reply briefs address this overstatement in other appropriate contexts, Visteon's Motion *in Limine* No. 7 ("Motion") and this Reply simply contend that the ▮▮▮ License should be excluded because: (1) the ▮▮▮ License is non-comparable to and "radically different" from the hypothetical negotiation; and (2) Mr. Newell fails to account for these radical differences.

## II. ARGUMENT

### A. Garmin and Mr. Newell Acknowledge the Radical Differences between the ▮▮▮ License and the Hypothetical Negotiation

Garmin's Response highlights the numerous instances in Mr. Newell's report where Mr. Newell recognizes that radical differences exist between the ▮▮▮ License and the hypothetical negotiation. Garmin highlights the vast amount of intellectual property transferred and licensed in the ▮▮▮ License

1

Redacted Version

other than the patents-in-suit. Response at 4-5 (D.E. 304) (*citing* Ex. 1 at ¶¶ 29-30; 55-56 (D.E. 258-1)). Next, Garmin highlights Mr. Newell's acknowledgement of the temporal differences (and related market changes) between the 2002 ▮▮▮▮ License and the 2004 hypothetical negotiation. Response at 7-8 (D.E. 304) (*citing* Ex. 1 at ¶¶ 11-16 (D.E. 258-1)).[1] Completely disregarding Garmin's explicit statement that Garmin viewed Visteon as a competitor in Garmin's **2004** 10-K, Mr. Newell concludes that "it is unlikely that Visteon viewed Garmin as a direct competitor during the April **2004** hypothetical negotiation" and ignores the other differences in negotiating position between ▮▮▮▮▮▮ and Garmin in 2004. Ex. 11 at 12 (D.E. 258-11); Response at 9 (D.E. 304) (*citing* Ex. 1 at ¶ 135 (D.E. 258-1)) (emphasis added).

"Comparisons of past patent licenses to the infringement must account for the 'technological and economic differences' between them." *Wordtech Sys., Inc. v. Integrated Network Solutions, Inc.*, 609 F.3d 1308, 1320 (Fed. Cir. 2010) (*quoting ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 873 (Fed. Cir. 2010)); *see also Sprint Communs. Co. L.P. v. Comcast IP Holdings, LLC*, No. 12-1013-

---

[1] Garmin's reference to Mr. Smith's purported reliance upon the ▮▮▮ License is irrelevant because (1) Mr. Smith's methodology has no impact whatsoever on Mr. Newell's flawed methodology and reliance upon the ▮▮▮ License and (2) Mr. Smith's methodology does not, in fact, rely upon the ▮▮▮ License. (D.E. 268-12, at 30-31 (calculating reasonable royalty amounts without relying upon ▮▮▮ license); at 32 (referring to the ▮▮▮▮▮ license as "not particularly germane to the hypothetical negotiation")).

Redacted Version

RGA, 2015 U.S. Dist. LEXIS 10838, at *4 (D. Del. Jan. 30, 2015) (D.E. 257-33) ("While Ms. Davis's report provides examples of how the four license agreements differ from the hypothetical agreements, she does not explain how her methodology accounts for these differences."). Having acknowledged all of these differences, under applicable law, Mr. Newell must account for them. This he did not do.

### B. Mr. Newell does not Account for the Differences between the ▮▮▮▮ License and the Hypothetical Negotiation

Neither Mr. Newell's report nor Garmin's Response demonstrate how Mr. Newell properly "accounted" for the aforementioned differences to render Mr. Newell's methodology or his reliance upon the ▮▮▮▮ License proper. Mr. Newell's obvious inference that "Visteon attributed no more (and likely less) than ▮▮▮▮ to a . . . license for the patents-in-suit" does not show "*exactly how the differences would impact the overall license value*" because Mr. Newell does not explain the impact of the ▮▮▮▮ License on his $2 million conclusion in a way that "allow[s] the jury to weigh the economic value of the patented feature[s] against the economic value of the features and services covered by the license agreement." Response at 5 (D.E. 304) (*quoting* Ex. 1 at ¶ 30 (D.E. 258-1)) (emphasis in original); *LaserDynamics, Inc. v. Quanta Computer, Inc.*, No. 2:06-CV-348, 2011 U.S. Dist. LEXIS 42590, at *11 (E.D. Tex. Jan. 7, 2011) (D.E. 257-21).

3

Redacted Version

Similarly, Mr. Newell's purported temporal "accounting" amounts to no more than a listing of a number of facts and market observations from the 2000-2004 time frame because "the jury cannot see how the pieces fit together or how the data drives the [$2 million] conclusion." Response at 7-8 (D.E. 304) (*quoting* Ex. 1 at ¶¶ 12-13 (D.E. 258-1)); *Open Text S.A. v. Box, Inc.*, No. 13-cv-04910-JD, 2015 U.S. Dist. LEXIS 8783, at *21 (N.D. Cal. Jan. 23, 2015) (D.E. 257-27).

Finally, Garmin posits that, simply because, according to Mr. Newell, Garmin and Visteon were not competitors in 2004—notwithstanding Garmin's 2004 10-K statement to the contrary—"Garmin would have been [in a] similar situation to ▮▮▮▮." Response at 9 (D.E. 304). This analysis does not consider the facts that, unlike Garmin, ▮▮▮▮ was not a large personal navigation device manufacturer, ▮▮▮▮ did not have the ability to bring licensed products to market, and ▮▮▮▮ did not even have enough capital to purchase the license. Without even acknowledging these differences, Mr. Newell's methodology cannot possibly "account" for the "drastically different bargaining positions . . . at the time of the hypothetical negotiation." *Sprint*, 2015 U.S. Dist. LEXIS 10838, at *7.

### III. CONCLUSION

For at least the aforementioned reasons, the Court should exclude any evidence of the ▮▮▮▮ License.

4

Redacted Version

This 23rd day of July, 2015.

*/s/ Jitendra Malik*
**Attorneys for Plaintiffs**
**Visteon Global Technologies, Inc. and Visteon Technologies, LLC**

5

Redacted Version

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| VISTEON GLOBAL TECHNOLOGIES, INC. and VISTEON TECHNOLOGIES, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> GARMIN INTERNATIONAL, INC., <br><br> Defendant. | ) ) ) ) C.A. No.: 2:10-cv-10578-PDB-MAR ) ) ) ) ) ) ) ) ) |

## CERTIFICATE OF SERVICE

I hereby certify that on July 23, 2015, I electronically filed the above and foregoing paper(s) with the Clerk of the Court using the ECF system, which will send notification of such filing to all ECF participants.

*/s/  Jitendra Malik*

6