# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

## SOUTHERN DIVISION

| | | |
|---|---|---|
| VISTEON GLOBAL TECHNOLOGIES, INC. AND VISTEON TECHNOLOGIES, LLC | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 2:10-cv-10578--PDB-DRG |
| v. | ) ) ) | |
| GARMIN INTERNATIONAL, INC. | ) ) ) | |
| Defendant. | ) | |

---

## SPECIAL MASTER'S REPORT AND RECOMMENDATIONS

## RE: VISTEON MOTIONS *IN LIMINE* NOS. 4 AND 5

## AND GARMIN'S MOTION *IN LIMINE* NO. 5

TO THE HONORABLE COURT:

## I.   VISTEON'S MOTION IN LIMINE #4

### A.   Visteon's Opening Position

The following is an edited version of Visteon's opening brief in support of its motion:

By this motion *in limine* Visteon seeks to exclude any argument, evidence or testimony from Garmin regarding purported noninfringement positions that are contrary to the Court's construction of the limitation "directions of advance", found in Claim 8 of U.S. Pat. No. 5,654,892 ("the '892 Patent"). The significance of the "directions of advance" limitation to Garmin's non-infringement defense was explained recently by this Court:

> Garmin urged the Court to construe the term "directions of advance" to mean, "the directions the roads take with respect to each other." (ECF No. 159, Garmin's Mot. 14.) Garmin argues that because its accused devices calculate the directions that the roads take with respect to each other *prior to navigation,* they do not infringe the '892 patent which calculates "directions of advance" during navigation or "on the fly."

D.E. 235 at 22 (emphasis added).

Garmin's noninfringement argument in this regard was expressed by Mr. Lavrakas in his Expert Report: "[A]s part of the route calculation performed

*before the user* begins navigating an active route, the entire route, including every direction of advance, is computed at once." (Exhibit 3, "Expert Report" at p.57). As Mr. Lavrakas went on to explain, "[b]ecause all directions of advance for following the route are predetermined *before the user begins navigating to his or her destination... .* [t]here is simply no need to continuously compute directions of advance as the user drives because they have already been computed." (Exhibit 3, "Expert Report" at 58). In connection with the recent motions for summary judgment, this Court was called upon to construe Claim 8's "directions of advance" limitation.

In adopting the Special Master's Report and Recommendation (over Garmin's Objections) this Court agreed, stating:

> The Special Master concluded that the phrase "directions of advance" in Claim 8 of the '892 patent relates to the direction of the vehicle *through navigation as it travels along a route, not to the relationship that the roads bear to one another which, the Special Master noted, is nothing more than the route.* The Special Master observed that Claim 8 directs itself to "assisting the navigation of the vehicle" *as it travels along a route, not to determining the route and how the roads on that route relate to each other.*

D.E. 235 at 22 (emphasis added).

Visteon next cites various cases that support the undisputed rule that: A party may not, whether through expert testimony or otherwise, advance a non-infringement opinion based on a rejected claim construction. (citations omitted).

Despite having Visteon's infringement theories in hand for years, Garmin's expert (and, thus, Garmin) has advanced noninfringement positions that run contrary to this Court's claim construction rulings. For instance, Garmin's noninfringement defense concerning Claim 8 of the '892 patent is based on a construction of the term "directions of advance" that has been rejected by the Court—*i.e.*, that since Garmin's devices perform the route calculation "*before the user* begins navigating [(*i.e.*, traveling on)] an active route," the "directions of advance" limitation is not met—despite having been aware of Visteon's contention that the claims of the '892 Patent require "directions of advance" to be interpreted as relating to the direction of the vehicle through navigation as it travels along a route. *See* Visteon's Final Infringement Contentions, Ex. 5 at 41-61. Moreover, as this Court explained, "Claim 8 directs itself to 'assisting the navigation of the vehicle' *as it travels along a route, not to determining the route.. . ."* D.E. 235 at 22 (emphasis added); *see also* Special Master's Report and Recommendation, D.E. 226 at 106 ("[t]he claim is not a method for determining the route and turns in the route (per Garmin) .. .. Instead, the invention is for 'assisting the navigation of the vehicle' as it travels along such route.").

Simply put, Garmin should not be permitted to advance noninfringement arguments at trial that are inconsistent with this Court's claim constructions.

**B.   Garmin's Response**

The following is an edited version of Garmin's position:

Through its motion, Visteon is effectively attempting to convert the Court's denial of summary judgment of non-infringement due to "issues of material fact" into a grant of summary judgment of infringement. Visteon offers no sound basis to convert the Court's summary judgment Order in this manner, and the non-infringement argument in question is in no way inconsistent with the Court's Order. To be sure, Garmin's summary judgment papers failed to adequately present the key facts to the Court with sufficient clarity. The Court noted this, finding "there remain genuine issues of material fact as to exactly what the accused devices actually calculate before and during navigation." Dkt. No. 235 at 24. Garmin intends to clarify these questions at trial and demonstrate that Garmin's products do not infringe on the '892 Patent as construed by the Court.

Garmin moved for summary judgment on the '892 Patent on a number of bases, including that the accused products do not "continuously compute" "directions of advance" while the vehicle navigates a route. Dkt. No. 159 at 13-14. Perhaps over-simplifying, Garmin distilled its position down to the basic

premise that Garmin computes "all directions of advance . . . during the initial route calculation before navigation begins," not continuously while navigating. *Id.* at 13. The Special Master and the Court concluded that Garmin conflated calculating a "route" with calculating "directions of advance." Dkt. No. 226 at 105-07. The Court held that calculating a "route" is distinct from calculating the "directions of advance" such that the calculation of a "route" before navigation begins would not differentiate Garmin's products from the '892 patent claims. Dkt. No. 235 at 23. Garmin's position was never premised on the calculation of a "route" before navigation begins, but the Court ultimately found that Garmin failed to establish "exactly *what* the accused devices actually calculate before and during navigation," and accordingly denied Garmin's motion for summary judgment of no infringement. *Id.* at 24-25.

Without reservation, Garmin *will not* argue at trial that its products do not infringe the '892 Patent because they calculate a route before navigation rather than on the fly during navigation. Garmin's attempts to simplify the summary judgment motion resulted in unnecessary confusion and failed to clearly establish "exactly *what* the accused devices actually calculate before and during navigation." Garmin is entitled to remedy the lack of clarity at trial.

Garmin's expert's analysis, which is entirely consistent with the Court's Order, provided more details into the operation of Garmin's products. For

example, Mr. Lavrakas provided an analysis of Garmin's source code, confirming that Garmin's devices do far more than calculate a route up front:

> I have also confirmed this operation in the Garmin Source Code. Specifically, *after a route is computed*, the "*RTE_get_route_maneuvers*" method in the rte_guidance.c file *generates a list of maneuvers along the route by looping through each node in the route and determining the appropriate maneuver*. As part of this process, "RTE_get_route_maneuvers" method calculates every turn angle for every maneuver and assigns each maneuver a type (e.g., keep right, turn left, etc.). Further, each maneuver type is associated with a particular turn arrow icon located in the img\guidance_arrows_images folder. During active navigation, the GUI_PageTurnList.cpp file generates the Turn List page using the previously calculated list of route maneuvers.

Dkt. No. 258-3, Lavrakas Report, at 57-58 (emphasis added). After a route is calculated but before navigation begins, Garmin's source code executes a routine to pre-determine route guidance, including a pre-determination of maneuvers the vehicle must take along the route, and graphical images that represent those maneuvers. Based on this and related evidence, Garmin will demonstrate that it's devices compute the "directions of advance" upfront rather than on the fly.

The non-infringement arguments advanced by Garmin and Mr. Lavrakas are wholly consistent with the Court's instruction that calculating a

route is distinct from calculating the directions of advance a vehicle will take along a route. Garmin should be permitted to present a full factual record to establish its non-infringement of the '892 Patent.

## C.   Visteon's Reply

The distinction to which Garmin alludes [to in its response] is immaterial and will only confuse the jury unnecessarily. As this Court explained, "Claim 8 of the '892 patent relates to the direction of the vehicle *through navigation as it travels along a route.*" *See, e.g.*, D.E. 235 at 22. As such, a purported "non-infringement defense" based on what Garmin's devices compute upfront "before navigation begins" is irrelevant; the proper focus is directed to what happens while the user of the device is traveling along the route.

Additionally, Garmin is wrong in suggesting that Visteon's Motion seeks to "convert" a denial of summary judgment of non-infringement into a judgment of infringement. The factual issue concerning what Garmin's devices calculate *during* navigation is left for resolution at trial, but the claim construction issue ruled upon by the Court during summary judgment is one of law, has been decided and is the law of the case. That issue—again, one of law—will govern trial on the merits. And according to the Court's ruling, Visteon's proof of infringement will focus on what Garmin's devices do during navigation, as should any defense, and so should any alleged non-infringement defense Garmin believes it possesses.

Garmin's argument, based on what its devices allegedly do before navigation, misses the mark and cannot excuse infringement. For that matter, since "directions of advance" focus on the movement of the vehicle during navigation, what the accused devices do before navigation starts misses the mark entirely and is simply irrelevant. As such, the argument Garmin seeks to preserve is one of obfuscation and confusion. Garmin lost its defense—one based on claim construction during—on summary judgment. It should not now be allowed to resurrect the same defense as one of fact.

Accordingly, this Court should preclude Garmin from offering non-infringement arguments that are contrary to the Court's interpretation of the proper claim scope. The law is clear: a party cannot offer arguments that are contrary to this Court's claim construction.

[Portions of Visteon's Arguments sections A and B are omitted as repetitious of the original brief]

Recognizing that Garmin cannot explain how its position is consistent with this Court's Claim Construction Order, Garmin concedes that any "confusion" is of Garmin's own making because it attempted to "over-simplify[]" the issue. Response at 2, 3. Visteon reminds the Court that Garmin sought summary judgment of noninfringement of the '892 Patent on this issue, D.E. 159 at 13-15, maintained this position in its Reply to Visteon's Response on Summary Judgment, D.E. 173 at 1-2, argued this position before this Court at the Summary Judgment hearing, D.E 225 at 79:10-23, and filed Objections to the Special Masters' Report and Recommendations on this issue. D.E 232 at 14-19. And every time, Garmin lost – and its losses are now the law of this case.

Garmin has been afforded repeated opportunities to clarify its position, remedy any confusion, or simply withdraw its defense. It did not do so, choosing instead to *relentlessly* pursue noninfringement positions that focused on what the accused devices do before the user starts traveling along the route. Having lost, Garmin is now explaining to this Court that its voluntarily decision to "oversimplify[]" its non-infringement position caused this Court, the Special Master, and Visteon to spend *valuable hours* considering this issue, resulting in a 'confusing' claim construction that in the judgment of this Court (and the Special Master) was supported by the

10

evidence. Garmin is seeking by turn of phrase to convert a defense that it lost into one that it can still try. The Court has rejected Garmin's claim construction argument that what its devices do before navigation matters; under the Court's claim construction, it does not matter. This Court should not accept Garmin's buyer's remorse excuse—Garmin must live with the consequences of a claim construction issue that it brought before this Court.

### D.     Special Master's Analysis and Recommendations

The thrust of this motion *in limine* by Visteon is, as Garmin points out, to prevent Garmin from telling the whole story about how its devices operate, especially as it relates to the calculations that are made before the driver starts to navigate on the selected route. The foundation for Visteon's motion is based upon the Court's rejection of Garmin's claim construction of the terms "direction of advance". This construction came about in connection with Garmin's motion for summary judgment of noninfringement of claim 8 of the '892 patent. The particulars of how this all came about is set forth in the parties' motion *in limine* briefs. The sequence of events related to this motion for summary judgment and their relationship to the current motion *in limine* is as follows:

1.    In connection with its motion for summary judgment, Garmin was required to propose definitions for various terms in Claim 8 of the

11

'892 patent that were not construed by the Court during the *Markman* phase of the case. As noted, "the direction of advance" was one such limitation. Garmin proposed that the Court define the limitation as follows:

" the directions the roads take with respect to each other"

2.  Garmin's technical expert, John Lavrakas, then prepared his noninfringement analysis and report based on the proffered definition. The relevant portions of the Lavrakas report are set forth in Visteon's opening brief (page 2) and incorporated herein by reference. The Court summed up Garmin and Lavrakas arguments as follows:

> "Garmin argues that because its accused devices calculate the directions that the roads take with respect to each other prior to navigation, they do not infringe the '892 patent which calculates 'directions of advance' during navigation or 'on the fly'." (D.E. 235 at 22).

3.  The Court rejected Garmin's proposed definition and as a result of this ruling and other findings (discussed below) Garmin's motion for summary judgment was denied.

4.  Visteon now contends in its motion *in limine* that despite this rejection, Garmin, through Lavrakas, continues to base its

noninfringement arguments on the rejected definition. As a result, "Garmin should not be permitted to advance noninfringement arguments at trial that are inconsistent with this Court's claim construction."

5.    In response, Garmin, after trying to explain away its prior losing position, asserts that:

> "Without reservation, Garmin *will not* argue at trial that its products do not infringe the '892 patent because they calculate a route before navigation rather than on the fly during navigation." (Garmin response, page 3;emphasis in original).

According to Garmin, the foregoing limitation on its evidence relating to its noninfringment defense takes care of the issue raised by Visteon.  In further support of its position, Garmin asserts that the Court did not foreclose Garmin or its experts from presenting evidence at trial of "exactly" what calculations its devices do perform related to the directions of advance a vehicle takes along a route. This conclusion is based on the Court finding that "there remain genuine issues of material fact as to **exactly** what the accused devices actually calculate **before and during** navigation." (cited at Garmin response, page 2).(emphasis added).

6.    Despite the Courts ruling that the devices calculations "**before and during** navigation" will be the subject matter for trial, Visteon argues that Garmin's noninfringement evidence should be limited to what the "devices calculate *during* navigation" because what the devices "allegedly do before navigation, misses the mark and cannot excuse infringement. (Visteon Reply, pages 1 and 2).

In the view of the Special Master, however, it is Visteon's motion that "misses the mark". No matter how the jury and Court view the evidence in light of the claims as construed by the Court, it is clear that the details of how the Garmin devices operate in calculating the necessary information for the driver to navigate a given route is highly relevant to the infringement issue. Garmin should be allowed to present evidence on what calculations the devices make in advance of navigation, because such evidence has a direct bearing on what the devices need, or do not need, to calculate during navigation. In other words, evidence of the calculations and other workings of the device prior to navigation can possibly serve to explain what the device doesn't need to calculate during navigation. This presentation can clearly be done without running afoul of the Court's claims construction of the term "directions of advance".

In light of the foregoing it is the Special Master's recommendation that Visteon's motion *in limine* be denied.

## II.    VISTEON'S MOTION *IN LIMINE*  NO. 5

By this motion *in limine*, Plaintiffs Visteon Global Technologies, Inc. and Visteon Technologies, LLC ("Visteon") seek to exclude any argument, evidence or testimony offered by Garmin regarding its defenses under 35 U.S.C. § 112 that is directed to Garmin's accused products.  The relief now sought via this motion will sound very familiar to the Court because at the summary judgment stage of this case, Visteon sought a complete dismissal of Garmin's §112 defense based on similar grounds. Visteon's arguments and supporting authorities in support of its motion *in limine* are essentially the same as those found in its motion for summary judgment.

Since the Court is familiar with the summary judgment briefings of both parties and its Order relating to same, only portions of the parties briefs related to the motion *in limine* are repeated below. Visteon's position outlined below includes relevant portions from both its original and its reply briefs. The Special Master's recommendations will conclude this section of the Report.

### A.    Visteon's Position

"The relief sought by Visteon's motion is narrowly defined. Visteon specifically seeks to exclude those aspects of Garmin's § 112 defenses that

are improperly based on the accused functionalities of Garmin's own devices, which as Visteon understands are mostly present at pp. 338-42 of Dr. Michalson's report. *See* Ex. 6 (D.E. 258-6).

"Visteon is not presently seeking to exclude all of Garmin's enablement and written description defenses directed to the '060 Patent, nor is Visteon presently seeking judgment that the asserted claims thereof are not invalid for lack of enablement or written description. As such, Garmin may be permitted to pursue such defenses by other proper means consistent with Dr. Michalson's report[1] and to the extent permitted by law. But Garmin argues for more, and, in doing so, manifestly misapplies Federal Circuit precedent.

"Garmin contends that if it is unable to successfully argue that its devices fall outside the scope of the asserted claims based on their plain language, then such claims fail the requirements of § 112 because Garmin's devices—now determined to be encompassed by such claims—are not sufficiently described or enabled by the '060 Patent specification.[2] Garmin's conditional § 112 defenses can be interpreted *in no other way*—leading to

---

[1] *See* Garmin's Opposition to Plaintiff's Motion for Partial Summary Judgment at p. 7 (D.E. 170).
[2] *See, e.g.,* Garmin's Response at p. 4 (D.E. 291) ("To be sure, were Visteon to present an understanding of the '060 Patent claims that actually align with the patent disclosure, Garmin would have no need for its § 112 defenses.").

the only reasonable conclusion that such defenses are improperly based on the accused features in Garmin's devices.

"Unsurprisingly, Garmin fails to identify any arguments that its expert has made that are properly focused on the claim language and the patent specification, without reference to, or in the context of, accused features in its own devices because Garmin cannot identify such an analysis.

"Instead, Garmin's expert initiates his opinion regarding Garmin's § 112 defenses by discussing Visteon's "two distinct theories as to how the Garmin and Navigon accused products allegedly allow a user to request an alternative to a calculated optimal route." Ex. 6 at p. 338 (D.E. 258-6). He then explains Garmin's § 112 defenses in the context of each accused functionality in Garmin's devices. For instance, Dr. Michalson first explains that Visteon accuses the "route calculation preference" feature of Garmin's devices as satisfying the asserted claim limitations. According to Dr. Michalson, however, the '060 Patent specification does not support that Garmin's "route calculation preference" feature is related in any manner to requesting an alternate route. *See* Ex. 6 at p. 339 ("But the specification does not suggest that such preferences are related in any way to requesting an alternate route, which is a separate operation."). Indeed, Dr. Michalson

suggests further that the '060 Patent teaches "the opposite" of such route calculation preferences. *Id.* at p. 341. Whether Garmin's route calculation preferences are taught or enabled by the '060 Patent specification is immaterial to a proper § 112 analysis. *See Durel*, 256 F.3d at 1306.

With respect to the second accused feature—the "Detour" button/function of Garmin's devices—the error in Dr. Michalson's reasoning is even clearer:

> I understand the *accused "Detour" feature* is available only after a user activates a route, which is consistent with the expectation of one with skill in the art. Namely, providing users an option to detour around congestion is a feature that provides utility when a user is actively navigating and encounters an obstacle, which is in direct opposition to the functionality described in the '060 patent.

Ex. 6 at pp. 341-42. This is unequivocally an argument by Garmin that the accused "Detour" function in Garmin's devices is not enabled by the '060 Patent specification.

The Federal Circuit, however, prohibits accused infringers from pursuing § 112 defenses on such grounds. *See Durel Corp. v. Osram Sylvania Inc.*, 256 F.3d 1298, 1306 (Fed. Cir. 2001). Put simply, Dr.

Michalson should not have focused on the accused features in connection with his § 112 analysis. *Personalized Media Commc'ns, LLC v. Zynga, Inc.*, 2013 WL 5962812, *2 (E.D. Tex. Nov. 7, 2013) (excluding expert's opinion on similar grounds as the present motion explaining that the expert's "use of the accused games as the touchstone for enablement is contrary to the Federal Circuit's mandate in *Durel*.") (D.E. 257-28).

"As a final point,[3] Visteon notes that the presently requested relief is ripe for the Court's consideration. In its Order on Summary Judgment, the Court rejected the Special Master's recommendation that Garmin's *entire* enablement and written description defenses with respect to the '060 Patent be rejected, noting that it was premature to resolve the issue on summary judgment and stating that the authority cited by the parties was distinguishable because the enablement issues were decided "through *in limine* motions or at trial or on post-trial motions, or otherwise following identification of the full scope of the claims." D.E. 235 at 17. At this stage, it should be clear that Visteon will not seek a claim construction expanding the scope of the '060 Patent as Garmin has previously suggested. Moreover, unlike its motion for summary judgment, Visteon only presently seeks to exclude any arguments, evidence or testimony directed to Garmin's own

---

[3] Taken from Visteon's opening brief.

accused products, as any such analysis is contrary to established precedent—by contrast, Visteon is not seeking to exclude any other enablement and written description defenses as to the '060 Patent Gamin believes its possesses. Indeed, even counsel for Garmin conceded that this issue is appropriate for consideration at this stage. D.E. 225 at 26:1-15 ("[Visteon's issue with the § 112 defenses] is a *Daubert* challenge."). As such, the Court may now properly resolve this issue."

"Pursuant to the foregoing, Visteon respectfully requests that Garmin be precluded from offering any arguments, evidence, or testimony concerning Garmin's enablement and written description defenses for the '060 Patent that improperly focus on the accused features of Garmin's own devices."

## B.   Garmin's response

### 1.   Introduction

"[T]he present argument is a rehash of Visteon's prior arguments, which the Court already rejected at summary judgment. Dkt. No. 251, Visteon's MIL 5 ("Motion"), at 7 (noting "the Court rejected the Special Master's recommendation that Garmin's *entire* enablement and written description defenses with respect to the '060 Patent be rejected"). Visteon previously argued that Dr. Michalson's articulation of Garmin's § 112

21

defenses was improperly based on the accused products. The Court rejected this argument, properly finding that Garmin's defenses were actually based on Visteon's infringement contentions and the claim scope represented therein. Dkt. No. 235 at 17. The Court further recognized the framing of Garmin's defenses results from the fact that the asserted '060 Patent claims remain unconstrued. *Id.* ("Garmin has a point with respect to its defenses to the '060 patent . . . [T]he Claims of the '060 patent have gone largely unconstrued by the Court, leaving their plain and ordinary meaning interpretation for the jury."). Because the parties dispute the plain and ordinary meaning and thus the proper claim scope, Dr. Michalson must frame his § 112 defenses as follows: *if the claims of the '060 Patent encompass the scope Visteon alleges, they fail to satisfy § 112*.

"Garmin will not argue at trial that the '060 Patent claims are invalid for failing to enable or adequately describe the accused products, nor has Garmin or its expert ever suggested such an approach. But to the extent Visteon argues the '060 claims are broad enough to capture subject matter far removed from that described in the '060 Patent specification, Garmin and its experts will demonstrate that the '060 Patent disclosure is insufficient.

"Visteon attempts to distinguish the current *in limine* motion from the prior summary judgment motion to argue this issue is now ripe for the Court to decide. But the Court's prior rationale applies with the same strength today as when the Court previously rejected Visteon's challenge. In its Order, the Court distinguished prior decisions adjudicating § 112 defenses on the basis that they were decided "following identification of the full scope of the claims." *Id*. Yet the status of proper claim scope remains exactly the same today as when the Court addressed this issue in March. Indeed, Visteon does not ask the Court to construe any terms in the '060 Patent claims and does not withdraw any claim scope contentions that run contrary to Garmin's. Instead, Visteon seeks to maintain claim scope ambiguity while cutting off Garmin's ability to confine Visteon to the claim scope actually supported by the '060 Patent. Such a result is fundamentally unfair, and Visteon's motion should accordingly be denied.

       2.     Arguments

"Garmin explained the purpose of § 112 in its summary judgment papers:

'Claims have a fixed meaning, and when a patent owner decides to extend those claims too far out-of-context, problems rightfully arise. The enablement and written description requirements of section 112 both stand

in the way of unfettered claim manipulation. *Reiffin v. Microsoft Corp.*, 214 F.3d 1342, 1345 (Fed. Cir. 2000) ("The purpose of [§ 112, ¶ 1] is to ensure that the scope of the right to exclude, as set forth in the claims, does not overreach the scope of the inventor's contribution to the field of art as described in the patent specification."). Dkt. No. 170 at 1.

Here, Visteon has not sought and, even today, does not seek to assign particular meaning to the claims of the '060 Patent. Rather, Visteon intends to rely on its understanding of the "plain and ordinary" meaning of the claims. Garmin contends that Visteon's understanding of the claims far exceeds the contribution of the '060 Patent disclosure and gives rise to Garmin's 112 defenses.

To be sure, were Visteon to present an understanding of the '060 Patent claims that actually align with the patent disclosure, Garmin would have no need for its § 112 defenses. But if Visteon proceeds at trial with its overbroad interpretation that far exceeds any reasonable "plain and ordinary" meaning of the claim language, Garmin must be able to present its § 112 defenses—the critical fetters that keep patent owner's honest to the invention they actually disclosed.

\* \* \*

"The Court already has rejected Visteon's argument that Garmin's §
112 defenses are improperly based on the accused products. Dkt. No. 235 at
21. Nothing has changed. Visteon's overreaching claim interpretation is no
more resolved now than previously. The Court should again reject Visteon's
attempt to prevent Garmin from presenting its § 112 defenses at trial.[4]

## C.    Special Master's Analysis and Recommendations

As noted earlier, the motion *in limine* under consideration is Visteon's
second effort to block Garmin's §112 defenses based on Dr. Michalson's
comparison between the '060 patent and the accused products. The Court
unequivocally rejected Visteon's first effort, contained in its motion for
summary judgment, on the basis that the motion was premature. According
to the Judge Borman:

> "The full scope of the claimed inventions of the '060 patent has
> not been construed and/or tested on summary judgment.... In
> fact, as Visteon recognizes, the Claims of the '060 patent have
> gone largely unconstrued by the Court, leaving their plain and
> ordinary meaning interpretation for the jury....In  the cases

---

[4] Visteon disingenuously alleges that Garmin's counsel conceded Visteon's current
challenge would be ripe for resolution in a *Daubert* context. Motion at 8. In the quoted
statement, Garmin's counsel was actually discussing an entirely different challenge to
Garmin's 112 defenses—one that the Court also rejected at summary judgment. Garmin
counsel did address Visteon's commercial embodiment challenge to its 112 defenses. *See*
Hearing Transcript [Dkt. No. 225] at 25. But the quoted statement regarding *Daubert*
comes later in the transcript after Garmin's counsel transitioned to "[t]he other item that
Visteon [challenges is whether] Dr. Michalson consider[ed] the *Wands* factors in his
enablement analysis." *Id.* at 26 (emphasis added).

discussed by the parties...the enablement issue was decided through *in limine* motions or at trial or on post-trial motions, or otherwise following identification of the full scope of the claims."

While the Court included motions *in limine* as a possible avenue to bring such challenges to §112 defenses, the operative language was "or otherwise **following identification of the full scope of the claims**" (emphasis added).   Thus, the Court rejected the request for summary judgment because there was, as yet, no final construction of the terms of the claims of the '060 patent. According to Garmin, the same is still true. On the other hand, Visteon contends that: "At this stage, it should be clear that Visteon will not seek a claim construction expanding the scope of the '060 Patent as Garmin has previously suggested."   Visteon, however, does not provide a specific statement as to the exact claim construction it will be seeking at trial. Without such clarification, Garmin is correct--nothing has changed and Visteon's motion *in limine* still does not contain Visteon's final construction.   Again, only at trial will the theoretical construction suggested by Dr. Michalson (based on Visteon's infringement contentions) become real or vanish. At trial Visteon will have to take a stand, but it has not done so in the motion *in limine,* and thus its effort to block Garmin's §112 defense is still premature.

26

Visteon's reliance on *Personalized Media Commc'ns, LLC v. Zynga, Inc.*, 2013 WL 5962812, *2 (E.D. Tex. Nov. 7, 2013), to supports its position, is misplaced. In this case, PMC filed a motion to exclude "Dr. Fox's Second Report and The Opinions It Contains". The operative facts cited by the Magistrate Judge are as follows:

> "Dr. Fox's analysis revolves around whether the specification enables Zunga's games....As one example, Dr. Fox states that '[t]he asserted patents do not teach the necessary compression technology required by and fundamental to the operation of the accused games."

Next, the Judge cites the well established and controlling Federal Circuit law :

> "[T]he question of enablement turns on the language of the claims and the court's construction of that language. [citations omitted] In fact, the Federal Circuit has clearly and explicitly held that '[t]he dispositive question of enablement **does not turn on whether the accused product is enabled'** [emphasis in original].

The Court granted the motion to exclude on several bases, but most importantly "[b]ecause Dr. Fox misstates the law regarding enablement." Dr. Fox's failed to make any reference to the "language of the claims" or any

court "construction of the language" of the claims of the patent in suit, but, instead, compares the teaching of the specification to the accused product.

In the present case, as in its motion for summary judgment, Visteon once again incorrectly focuses on Dr. Michalson's references to the accused products to try to bring the case in line with the *Personalized* analysis. Judge Borman, however, has already addressed this misdirection by Visteon:

> "Visteon argues that Dr. Michalson, Garmin's expert, improperly focused his opinions exclusively on the accused products. But Dr. Michalson suggested otherwise in his deposition:
>
> A. In looking at, for example, enablement, but a similar argument applies to written description, Visteon -- I'm not worried about any particular commercial manifestation of a product. I'm looking at the claim interpretation that Visteon appears to be putting forth, and that claim interpretation appears to be completely and utterly antithetical to the teachings of the specification." (Opinion and Order, page 17).

In brief, Dr. Michalson's opinions flow from what he perceives to be Visteon's interpretation of the claims, whereas Dr. Fox's opinion ignored the claims all together. It follows that the *Personalized* case does not support Visteon's motion *in limine*.

28

Based on the foregoing analysis and the arguments, facts and law provided in Garmin's response, it is the Special Master's recommendation that Visteon's motion *in limine* be denied.

## III.   GARMIN'S MOTION *IN LIMINE* NO. 5

### A.   Garmin's Position

1.   Background

By this motion *in limine,* Garmin seeks to exclude Dr. Joel Steckel's use survey regarding the '892 patent. The focus of the motion is on method claim 8, the only claim of the '892 patent that is still in the case. The following contains excerpts from Garmin's briefs in support of its position.

"As Visteon's technical expert, Dr. Anatole Lokshin, explains in the following excerpt from his initial report, claim 8 requires actions performed both by a user and by the accused navigation device:

[I]n establishing infringement it is important to recognize that certain actions are undertaken by the user, and in response to those actions the device then itself performs certain tasks. For example, *an element of Claim 8 requires* "continuously computing a plurality of successive directions of advance until said vehicle reaches a destination point, said computing being initiated at one of a predetermined time or a predetermined distance before said vehicle reaches an upcoming turning point from a current direction of advance." The only action that is undertaken by *the user* is *to provide the destination to the device and predetermine a time or distance (i.e., set the desired zoom level) for the map display.* From that user action,

30

the device then itself performs the remaining elements of the claim.

Ex. V, Lokshin Report Excerpt at 60 (emphasis added). Thus, Visteon must prove at trial that users of the accused devices actually perform the requisite steps of "provid[ing] the destination to the device and predetermine a time or distance for the map display."[5] For this element of proof, Dr. Lokshin relies on three categories of evidence: (1) testimony of Garmin employees and a third party witness regarding their alleged own use, (2) the *expectations* of Visteon's other expert, Paul Lanyi, that Garmin consumers perform this step, and (3) Dr. Steckel's "use" survey that purports to show Garmin's customers use the devices in an infringing manner.[6] *Id.* at 63-64. Through this motion, Garmin challenges the final category—Dr. Steckel's use survey—because the survey did not test the accused method. Because Dr. Steckel's use survey did not ask survey respondents about the steps accused of infringing claim 8, it lacks the "fit" to this case required by *Daubert* and must be excluded.

---

[5] As the Court held in its Claim Construction Order, the claimed "predetermined time" or "predetermined distance" is a time or distance "selected by the operator." Dkt. No. 103 at 4 (¶4); Dkt. No 67 at 89.
[6] Dr. Steckel performed two separate surveys: a "use" survey and a "conjoint" survey. His conjoint survey is the subject of Garmin's other *Daubert* motion with regard to Dr. Steckel. The instant motion is limited to Dr. Steckel's use survey.

Although surveys can be admitted when properly constructed and administered, surveys "based on a flawed and unreliable foundation" must be excluded under *Daubert*. *Innovation Ventures, LLC v. N2G Distrib., Inc.*, No. 08-CV-10983, 2011 WL 6010206, at *2-5 (E.D. Mich. Nov. 30, 2011) (excluding survey for, among other flaws, failing to accurately depict marketplace conditions and failing to provide an adequate control); *see also Fractus, S.A. v. Samsung*, N0. 6:09-CV-203-LED-JDL, 2011 WL 7563820, at *1 (E.D. Tex. Apr. 29, 2011) (excluding survey that tested a feature broader than the patented feature).

### 2.    Argument

Claim 8 of the '892 Patent includes the following three method steps:

1. continuously computing a plurality of successive directions of advance until said vehicle reaches a destination point, said computing being initiated at one of *[a predetermined time or a predetermined distance selected by the operator] before said vehicle reaches an upcoming turning point* from a current direction of advance;

2. *creating an arrow icon* that represents said current direction of advance and at least a first and a second directions of advance of said vehicle *to be followed beginning at said upcoming turning point*; and

3. displaying said arrow icon before said vehicle reaches said upcoming turning point.

32

Ex. V, Lokshin Report at 61-63 (claim construction in brackets) (emphasis added). Visteon alleges that Step 1 is infringed, in part, when a user manually adjusts the map display zoom level, which Visteon contends determines the distance from an upcoming turn when the Garmin device will begin the claimed computing. *Id.* at 61. Steps 2 and 3, according to Visteon, are satisfied when the Garmin device then creates a multi-turn arrow and displays that multi-turn arrow prior to reaching the upcoming turn. *Id.* at 62-63. In other words, to infringe under Visteon's theory, a user must manually adjust the zoom level in order to adjust the distance from an upcoming turn when the Garmin device creates and displays a multi-turn arrow for that same turn.

Despite the fact that claim 8 unambiguously ties the zoom adjustment to the display of multi-turn icons under Visteon's theory, Dr. Steckel's use survey entirely disassociates these two functionalities. Specifically, as illustrated in the following excerpts from the survey, Dr. Steckel separately asks respondents (1) if they have *ever* adjusted the zoom level to "get a better view of an upcoming turn" and, separately, (2) if they have *ever* "seen a multiple-turn arrow icon":

33

Have you ever used the "Zoom In" and "Zoom Out" buttons on your Garmin GPS device to get a better view of an upcoming turn? *(Select one only)*

| | | |
|---|---|---|
| Yes, I have used the "Zoom In" and "Zoom Out" buttons to get a better view of an upcoming turn | ⊙ | [CONTINUE] |
| No, I have not used the "Zoom In" and "Zoom Out" buttons to get a better view of an upcoming turn | ⊙ | |
| Don't know/Unsure | ⊙ | |

When using your Garmin GPS device, have you ever seen a multiple-turn arrow icon similar to the one shown in the image above? *(Select one only)*

| | | |
|---|---|---|
| Yes, I have seen a multiple-turn arrow icon | ⊙ | [CONTINUE] |
| No, I have not seen a multiple-turn arrow icon | ⊙ | |
| Don't know/Unsure | ⊙ | |

Ex. E, Steckel Revised Report at D-14 – D-15. Asking respondents if they have *ever* experienced these two separate functionalities does not demonstrate that the respondents performed the method recited in claim 8 of the '892 Patent under Visteon's infringement theory where the user sets the zoom prior to a turn and the device then generates and displays a multi-turn arrow prior to the turn. Accordingly, Dr. Steckel's use survey, as it pertains to the '892 patent, is unreliable for its intended purpose of demonstrating usage of claim 8 of the '892 patent by Garmin uses and must be excluded under *Daubert*.

### B.    Visteon's Response[7]

#### 1.    Background

"Garmin's Motion seeking exclusion of Dr. Steckel's use survey as evidence of direct infringement of Claim 8 of the '892 Patent is misdirected. While Visteon does not agree with Garmin's contentions, Garmin's Motion is no more than an argument as to the weight or sufficiency of the evidence, which is unquestionably an issue for the trier of fact. Specifically, Garmin does not contend that Dr. Steckel's use survey is not sufficiently related to the claim elements at issue in Claim 8 of the '892 Patent. Rather, Garmin suggests that, *in its view*, Dr. Steckel's use survey "does not demonstrate that the respondents performed the method recited in claim 8 of the '892 Patent *under Visteon's infringement theory* . . . ." Garmin's Motion at p. 5 (D.E. 264) (emphasis added). Garmin, therefore, merely takes issue with whether Dr. Steckel's use survey is sufficient to support Visteon's infringement theory. This is a factual issue for the jury to decide.

"As such, to the extent Garmin's Motion is a challenge to Dr. Steckel's survey (however weak it is), its Motion necessarily implicates the weight to be afforded Dr. Steckel's use survey, rather than its admissibility—arguments which are not proper for resolution at this stage

---

[7] This section of the Report is excerpted from Visteon's Response brief.

and which are more appropriately the subject of cross-examination at trial. Accordingly, Visteon respectfully requests that Garmin's Motion be denied in its entirety.

### 2. Argument

"Garmin raises no challenge to the way the use survey was conducted, or any other error.[8] Whether Dr. Steckel's use survey "demonstrates" infringement of Claim 8 of the '892 Patent is a question of weight, not of admissibility. That is, the question of whether the survey is sufficient to evidence infringement is necessarily factual in nature, entirely within the purview of the fact finder. As such, Garmin's presentation of this issue for resolution at the motion *in limine/Daubert* stage misses the mark, since the ultimate question Garmin seeks to have answered is one of sufficiency of evidence, not of admissibility. Rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof" are the available means for Garmin to challenge whether Dr. Steckel's use survey sufficiently establishes infringement of Claim 8 of the

---

[8] To be certain, at no point in its Motion does Garmin contend that the survey inaccurately reflects the relevant claim elements of Claim 8 of the '892 Patent. Rather, Garmin suggests that the survey allegedly does not accurately reflect Visteon's infringement theory—essentially arguing that Visteon cannot prove its theory of infringement based on the results of Dr. Steckel's use survey. This is an entirely distinct argument, and one that could potentially be the subject of a jury's determination on infringement based on the weight of the evidence presented.

'892 Patent. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 595 (1993).

"The law on this point is clear. As this Court has explained, "the relevant case law counsels that—subject to the Court's overriding gatekeeping function under *Daubert*—errors in survey methodology are more properly directed against the weight a jury should give the survey, rather than overall admissibility." *Innovation Ventures, LLC v. NVE, Inc.*, No. 08-11867, 2015 WL 871137, at *12 (E.D. Mich. Feb. 27, 2015); *see also John Does 1-4 v. Snyder*, No. 12-11194, 2015 WL 1497834, at *3 (E.D. Mich. Mar. 31, 2015) ("[O]bjections pertaining to the technical aspects of a survey affect only the weight, rather than the admissibility of the evidence."); *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, No. 12-cv-00630-LHK, 2014 U.S. Dist. LEXIS 24506, at *81 (N.D. Cal. Feb. 25, 2014) ("The Court continues to recognize that the framing of questions for purposes of surveys is generally an issue of weight, not admissibility.") (citing *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1038 (9th Cir. 2010)); *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1292 (9th Cir. 1992) (objections to "[t]echnical unreliability go[] to the weight accorded a survey, not its admissibility."); *PBM Products, LLC v. Mead Johnson & Co.*, 639 F.3d 111, 123 (4th Cir.

2011) ("Usually, objection based on flaw in the survey's methodology are properly addressed by the trier of fact.").

"The cases cited by Garmin do not dictate otherwise. In *Innovation Ventures, LLC v. N2G Distrib., Inc.*, this Court excluded survey evidence based on a survey that did not adequately replicate market conditions, included leading questions, did not inform participants that "Don't Know" was an acceptable answer, and failed to include an adequate control. No. 08-cv-10983, 2011 WL 6010206 (E.D. Mich. Nov. 30, 2011) (Garmin's Appendix, Tab 8 (D.E. 267-8)). Garmin does not contend that any of these issues are implicated by Dr. Steckel's use survey. To the contrary, Garmin simply argues that Dr. Steckel's use survey is inadequate to satisfy Visteon's theory of infringement. Accordingly, Garmin's reliance on the case is misplaced.

Similarly, in *Fractus S.A. v. Samsung*, the court excluded expert testimony based on a survey that merely measured consumer value of cell phones with internal antennas, rather than cell phones having the *patented* internal antenna which the court found to be inadmissible for *damages purposes*. No. 6:09-cv-203-LED-JDL, 2011 WL 7563820, at *1 (E.D. Tex. Apr. 29, 2011) (Garmin's Appendix, Tab 3 (D.E. 267-3)). Specifically, in

38

excluding the testimony the court explainedthat "expert testimony must carefully tie proof of damages to the claimed invention's footprint in the market place." *Id.* (internal quotations omitted). Once again, Garmin does not contend that such issues are implicated by Dr. Steckel's use survey.

"Accordingly, Garmin's Motion fails to raise any issues regarding the *admissibility* of Dr. Steckel's use survey, and it should therefore be denied.

## C.    Garmin's Reply

"Visteon effectively suggests that the Court has no gate-keeping function whatsoever and that everything is a matter for cross-examination. The mere fact that Garmin *could* cross-examine Visteon's expert on a topic does not render that testimony admissible. Under *Daubert,* the burden is on Visteon to establish its expert's testimony is "reliable" and "fits" the facts of the case. The 6th Circuit describes the inquiry as follows:

> Finally, in addition to requiring that a proposed expert's testimony be "reliable," Rule 702 requires that the expert's testimony assist the trier of fact. This requirement has been interpreted to mean that scientific testimony must "fit" the facts of the case, that is, there must be a connection between the scientific research or test result being offered and the disputed factual issues in the case in which the expert will testify. *See Daubert,* 509 U.S. at 592, 113 S.Ct. 2786. In short, under *Daubert* and its progeny, a party proffering expert testimony must show by a "preponderance of proof" that the expert whose testimony is being offered is qualified and will testify to

> scientific knowledge that will assist the trier of fact in
> understanding and disposing of issues relevant to the case. *See*
> *id.* at 592 n. 10, 113 S.Ct. 2786.

*Pride v. BIC Corp.*, 218 F.3d 566, 578 (6th Cir. 2000). In present context,

Visteon must demonstrate by a 'preponderance of proof' the connection

between Dr. Steckel's survey and the disputed factual issue before those

results are admissible.[9]

Visteon does not even attempt to dispute Garmin's contention that Dr.

Steckel's use survey does not fit its theory of infringement for the '892

Patent. The question for which this survey is offered is whether Garmin's

customers use the accused devices in a manner that Visteon alleges to

infringe the '892 Patent. The survey results cannot assist a trier of fact on

that issue if the survey did not attempt to test such use, and Visteon has

offered nothing to demonstrate the requisite connection between the survey

and Visteon's infringement theory.

Visteon cannot dispute that it contends that Garmin's products

infringe method Claim 8 of the '892 Patent through a single specific use.

---

[9] Visteon attempt to distinguish Garmin's cited case law strains credibility. For both *Innovation Ventures* and *Fractus*, Visteon dismisses their holdings on the basis that Garmin does not contend the *specific* flaws addressed in those cases "are implicated by Dr. Steckel's use survey." Response [Dkt. No. 285] at 4-5. Both cases stand for the proposition that surveys must accurately depict the tested subject matter, and neither is limited, expressly or by implication, to the specific circumstances under which these decision arose.

Nor can Visteon dispute that its survey did not test whether Garmin's customers use the accused devices in that manner. Therefore, the results are not a "fit" with the facts of this case and cannot assist the jury in resolving any disputed issue.

To be clear, Garmin is not challenging the merits of Visteon's infringement theory. Rather, because the survey fails to align with the disputed issue of whether Garmin's products are used in the manner Visteon contends, Garmin seeks only to exclude irrelevant expert testimony. On the critical question of whether Dr. Steckel's survey aligned with the questions in dispute, i.e., whether Garmin's devices are used in the allegedly infringing manner, ***Visteon provides no response***. Accordingly, Garmin respectfully asks that the Court grant its motion.

### D.      Special Master's Analysis and Recommendations

By this motion *in limine* Garmin seeks to exclude Dr. Joel Steckel's "use survey" regarding claim 8 of the '892 patent. Dr. Steckel[10] was retained by Visteon to conduct various surveys in support of Visteon's infringement contentions on several of the patents in suit, including the '892 patent. In brief, Garmin contends that "[b]ecause Dr. Steckel's use survey did not ask

---

[10] Dr. Steckel's qualifications as an expert on surveys are discussed below.

survey respondents the steps accused of infringing claim 8, it lacks the 'fit' to this case required by *Daubert* and must be excluded." Visteon, on the other hand, contends that Garmin's motion "merely takes issue with whether Dr. Steckel's use survey is sufficient to support Visteon's infringement theory…a factual issue for the jury to decide." As such, per Visteon, Garmin's only option is "to challenge whether Dr. Steckel's use survey sufficiently establishes infringement of Claim 8", at trial.

In the cases cited by Visteon in support of this contention, the courts overruled the objections because they went to the surveys' "methodology", "technical aspects" or, "technical unreliability".   Visteon never explains, however, how its view of Garmin's position (i.e., a challenge to the sufficiency of use survey to support Visteon's theory of infringement), is somehow a challenge to the "methodology" or "technical aspects" of the survey.

There is no doubt that Dr. Steckel made use of technical techniques and employed certain methodologies in preparing and executing his use survey.  The specific tools of the trade he used are set out in detail in his report at paragraphs 14 to 30 (Ex.6 to Garmin motion). His qualifications to conduct surveys are impressive and are provided in paragraphs 1 -3 and

Exhibits A and B of his report. Garmin's motion, however, does not rely on and does not cite to a single error in these aspects of the survey, nor does it challenge Dr. Steckel's credentials per se. What Garmin does vigorously challenge, however, is the actual questions put to the respondents to determine whether the respondent used the Garmin devices in a way that infringed claim 8 of the '892 patent. These critical questions are found at Exhibit D-14, 15 of Dr. Steckel's report.[11]

Obviously the actual wording of the questions and whether the questions fairly reflect the requirements of claim 8 of the '892 patent is important. However, Visteon makes no effort to demonstrate how the questions meet these requirements of the claim limitations at issue. Even though Dr. Steckel is not a patent law expert, the questions he poses to the respondents regarding their use of Garmin devices must accurately track the claim limitations. Dr. Steckel's first effort to define the infringement issues related to '892 patent is as follows:

"6.    *I* also *understand* that the patents generally relate to four features/capabilities of GPS systems. These are:

* * * *

---

[11] Also found in Garmin's opening brief at page 5, but Dr. Steckel's report gives a better view of the questions to the respondent's and is the one the Special Master recommends to the Court.

    d.    **Turn Preview Display**- defined as the features in GPS systems that allow you to *view complex turns coupled with a zoom feature.*

\* \* \* \*

"7.    Finally, *I understand* that Visteon alleges that the following features/capabilities constitute violations of the aforementioned patents:

    d.    **Turn Preview Display (Patent '892)**- the *ability to zoom in or out and view complex turns with one multiple-turn arrow icon.*" (Ex. E to Garmin opening at pages 3-5, emphasis in original; italics added).

Based on his "understanding", received from undisclosed sources, Dr. Steckel connects the zoom function to the arrow viewing function. So far so good as he is on the right track by correctly presenting the two functionalities as a combination, not as single separate functions.

While Garmin doesn't agree with the accuracy of Visteon's infringement theory, as reflected above by Dr. Steckel, the thrust of their motion *in limine* is the contention that the actual questions to the respondent in support of this theory do not tie the zoom and viewing, but instead improperly present each as separate and unconnected events in the operations of the Garmin devices. Garmin's interpretation of Visteon's

infringement theory that requires a combination and obviously forms the basis for the use survey is soundly based on Dr. Loskin's report. (See Garmin's opening brief, pages 1 and 2). Indeed, Visteon does not challenge the fact that the use survey questions are designed to prove that users of Garmin devices infringe the '892 patent under Dr. Loskin's interpretation of the claim language. Furthermore, Visteon never attempts to justify or explain why the questions to the respondents were presented as two separate questions. The Special Master agrees with Garmin's position as to the consequences of this disassociation of the two functionalities:

> "Asking respondents if they have *ever* experienced these two separate functionalities does not demonstrate that the respondents performed the method recited in claim 8 of the '892 Patent under Visteon's infringement theory where the user sets the zoom prior to a turn and the device then generates and displays a multi-turn arrow prior to the turn." (Opening brief, pages 5 and 6).(emphasis in original).

The Special Master also agrees with Garmin that " [u]nder *Daubert*, the burden is on Visteon to establish its experts testimony is 'reliable' and 'fits' the facts of the case. (citing *Pride v. BIC Corp.*,218 F.3d 566,578 (6th Cir. 2000). In the present context, Visteon must demonstrate by a 'preponderance of proof' the connection between Dr. Steckel's survey and

the disputed factual issue before those results are admissible." (Garmin Reply br. at page 1). Visteon has failed to satisfy these critical requirements. Finally, the Special Master agrees with Garmin that: (1) Visteon: "has offered nothing to demonstrate th[e] requisite connection between the survey and Visteon's infringement theory"; (2) Dr. Steckel's survey "did not test whether Garmin's customers used the accused devices in the ...manner Visteon contends;" and (3) "[o]n the critical question of whether Dr. Steckel's survey aligned with the questions in dispute, i.e., whether Garmin's devices are used in the allegedly infringing manner, *Visteon provides no response*." (Garmin Reply br. , page 2, emphasis in original).

Based on the foregoing analysis, the Special Master recommends that Garmin's motion be granted.

Respectfully submitted,

Gaynell C. Methvin ,Special Master