UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VISTEON GLOBAL TECHNOLOGIES, INC.
AND VISTEON TECHNOLOGIES, LLC,

                Plaintiffs,                         Case No. 10-cv-10578

                                                 Paul D. Borman
v.                                        United States District Court

                                                 David R. Grand
GARMIN INTERNATIONAL, INC.,             United States Magistrate Judge

                Defendant.

_____/

OPINION AND ORDER
(1) GRANTING IN PART GARMIN'S MOTION *IN LIMINE* NO. 6 TO EXCLUDE
EVIDENCE REGARDING GARMIN'S REVENUES AND PROFITS (ECF NO. 265); AND
(2) DENYING GARMIN'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL EXPERT
REPORT OF JOHN LAVRAKAS (ECF NO. 341)

        Plaintiffs Visteon Global Technologies, Inc. and Visteon Technologies, LLC's ("Visteon")

and Defendant Garmin International, Inc.'s ("Garmin"), have filed numerous motions *in limine* in

this patent infringement action. Presently before the Court are: (1) Garmin's Motion *In Limine* No.

6 to Exclude Evidence Regarding Garmin's Overall Revenue and Profits (ECF No. 265); and (2)

Garmin's Motion for Leave to Serve the Supplemental Expert Report of John Lavrakas (ECF No.

341). The Court has determined that oral argument will not assist in resolution of the matters raised

in these motions and accordingly will decide these matters on the parties' written submissions. *See*

E.D. Mich. L.R. 7.1(f)(2).

## I.   BACKGROUND

This is an action for patent infringement.  In the claims that remain for trial, Plaintiffs Visteon Global Technologies, Inc. and Visteon Technologies, LLC ("Visteon") contend that Defendant Garmin International, Inc. ("Garmin") infringes, either directly or indirectly, U.S. Patent No. 5,544,060 ("the '060 patent"), U.S. Patent No. 5,654,892 ("the '892 patent") and U.S. Patent No. 5,832,408 ("the '408 patent").  In general, the '060 patent is directed to a method of navigating a human driven vehicle whereby a user can generate an optimal path and then switch to an alternate navigation path before beginning on the optimal path.  Visteon contends that Garmin directly infringes Claims 3, 4, and 6 and indirectly infringes Claim 3 of the '060 patent.  In general, the '892 patent is directed to a method for assisting the navigation of a vehicle whereby a complex arrow icon is generated and displayed to the driver at a predetermined time or distance before the driver reaches a particular maneuver.  Visteon contends that Garmin directly and indirectly infringes Claim 8 of the '892 patent. In general, the '408 patent is directed to a navigation system which allows the user to search for a destination either from a list of categories or from an alphanumeric search.  Visteon contends that Garmin directly and indirectly infringes Claims 4 and 5 of the '408 patent.

Visteon contends that a variety of Garmin navigation products ("the accused products") infringe one or more the asserted claims literally and under the doctrine of equivalents.  Visteon contends that Garmin directly infringes, actively induces infringement and/or contributorily infringes one or more of the asserted claims of the asserted patents, and that Garmin's infringement is and has been willful.  Visteon seeks damages in the form of a reasonable royalty for Garmin's alleged infringement.  Visteon also seeks prejudgment interest, enhanced damages, attorneys' fees, and costs, including without limitation any fees and costs associated with participating in multiple

*ex parte* proceedings at the United States Patent and Trademark Office ("USPTO") as initiated by

Garmin in this action.  Garmin denies that it directly, indirectly or contributorily infringed or

induced infringement of any of the patents in suit and affirmatively asserts a host of invalidity

defenses.  Garmin seeks judgment in its favor and requests that it be awarded its costs and

reasonable attorneys' fees incurred in defending against Visteon's Complaint.

## II.    STANDARD OF REVIEW

"The Federal Rules of Evidence, the Federal Rules of Criminal and Civil Procedure and

interpretive rulings of the Supreme Court and this court all encourage, and in some cases require,

parties and the court to utilize extensive pretrial procedures – including motions *in limine* – in order

to narrow the issues remaining for trial and to minimize disruptions at trial."  *United States v.*

*Brawner*, 173 F.3d 966, 970 (6th Cir. 1999).  District courts have broad discretion over matters

involving the admissibility of evidence at trial. *United States v. Seago*, 930 F.2d 482, 494 (6th Cir.

1991).

## III.    ANALYSIS

### A.    Garmin's Motion *in Limine* No. 6 to Exclude Evidence of Garmin's Overall Revenue and Profits (ECF No. 265)

Visteon's Response to this motion indicates that Visteon intends to introduce evidence of

Garmin's *profit margins* only, not evidence of Garmin's overall profits.  (ECF No. 286, Visteon's

Resp. 3-5.)  Garmin does not object to the introduction of evidence regarding its profit margins.

(ECF No. 324, Garmin's Reply 5-6.)  Accordingly, the Court GRANTS the motion to exclude

evidence of Garmin's overall profits but will permit evidence of Garmin's profit margins, assuming

that such evidence meets all other rules for admissibility at the time of trial.

With regard to Garmin's motion to exclude evidence of its overall revenues, it is not entirely clear whether Garmin's motion is an indirect challenge to Visteon's damages methodology that relies on the MITAC license (which Garmin did not challenge in a *Daubert* motion) or whether Garmin's motion is strictly challenging the evidentiary basis for admission into evidence of the actual overall revenue figures themselves.  In seeking exclusion, Garmin relies on the Federal Circuit's recognition of the "danger of admitting consideration of the entire market value of the accused [product] where the patented component does not create the basis for customer demand." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1320 (Fed. Cir. 2011) (alteration added).  "The disclosure that a company has made $19 billion dollars in revenue from an infringing product cannot help but skew the damages horizon for the jury, regardless of the contribution of the patented component to this revenue." *Id*.  There is no argument here by Visteon that the entire market value rule applies or that the accused patented features drive demand for the Garmin accused devices. Indeed Visteon's expert, Peter Smith, states in his Report: "Because it is my opinion that the entire market value rule does not apply in this case, I do not believe that sales revenue is an appropriate royalty base for the purposes of the damages calculation."  ECF No. 268, Ex. M, Expert Report of Peter Smith 29.  Indeed, this Court has already acknowledged that the accused patented features that remain in suit here do not drive consumer demand for Garmin's PNDs and has ruled that Visteon is required to "give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features" of the accused devices. *Garretson v. Clark*, 111 U.S. 120, 121 (1884) (internal quotation marks omitted).

It is also well established, however, that "[a]ctual licenses to the patented technology are highly probative as to what constitutes a reasonable royalty for those patent rights because such

actual licenses most clearly reflect the economic value of the patented technology in the marketplace." *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 79 (Fed. Cir. 2012). The MITAC license agreement is such a license here, as it includes a license to the very patents that remain in suit (among others).  (ECF No. 268, Ex. B, Newell Report ¶¶ 123-126.)  Garmin's expert challenges the comparability of the MITAC license, but this Court has also ruled that comparability is an issue for cross-examination, not a basis for exclusion.  Indeed Garmin's expert, Mr. Newell, in his rebuttal report, describes the MITAC license as a "relevant benchmark license agreement[] for the patents in suit" and found the MITAC license "informative," although he concludes that it is "less informative" than another comparable license.  *Id.*  Moreover, Garmin did not move to exclude Mr. Smith's damages model based on the MITAC license and cannot seriously question that it is "relevant" in a broad sense to the reasonable royalty issue.  The problem here is that the MITAC model employed by Mr. Smith relies on Garmin's overall revenues, creating a tension between the high probative value of a prior license to the very patents in suit and the evidentiary principle that disclosure of an alleged infringer's overall revenues to the jury, in a case where the accused patented features admittedly do not drive consumer demand for the end product, is highly prejudicial.

Visteon urges the Court to consider *Mondis Tech., Ltd. v. LG Elec. Inc.*,  No. 07-cv-565, 2011 WL 2417367 (E.D. Tex. June 14, 2011), in which the court permitted an expert opinion that employed total revenues even though there was no showing that the accused features provided the basis for customer demand of the end product.  *Mondis* is certainly instructive in its recognition of the inherent challenge faced by a patentee who concedes that the accused features do not drive demand for the alleged infringer's product yet attempts to rely on arguably relevant licenses to the very same technology that were negotiated based upon the entire value of the end product.

Acknowledging the Federal Circuit's repeated admonitions against utilizing the entire market value

rule where the patented invention is a small component of the larger commercial product, the court

in *Mondis* observed:

> Defendants appear to argue that Plaintiff cannot, under current Federal Circuit
> jurisprudence, use the "entire market value rule" unless Plaintiff proves the patented
> features provide the basis for the customer demand. *See Uniloc USA, Inc. v.
> Microsoft Corp*., 632 F.3d 1292, 1318 (Fed.Cir. 2011) ("The entire market value rule
> allows a patentee to assess damages based on the entire market value of the accused
> product only where the patented feature creates the basis for the customer demand
> or substantially creates the value of the component parts.") (emphasis added). If this
> rule were absolute, then it would put Plaintiff in a tough position because on one
> hand, the patented feature does not provide the basis for the customer demand, but
> on the other hand, the most reliable licenses are based on the entire value of the
> licensed products.

2011 WL 2417357, at *3.

Given the Federal Circuit's "large emphasis on comparable licenses of the patents-in-suit,"

the court in *Mondis* reasoned, it would place plaintiffs in a difficult position of proof if they were

precluded from relying on those licenses simply because they were negotiated with reference to total

revenues. *Id*. at *3. The court in *Mondis* expressly limited its decision to the facts of that case and

was particularly persuaded to allow the evidence given that defendant relied on a number of

comparable licenses that also were negotiated based on the entire value of the licensed products.

*Id*. at *2. The court also noted that Mondis was not attempting to do that which the Federal Circuit

had prohibited in *Uniloc, i.e.* to justify using the entire market value of product as the base by

asserting a correspondingly low enough royalty rate:

> Here, however, Plaintiff is not simply asserting a lower rate to use the entire base of
> the accused products. Instead, Plaintiff bases its analysis on approximately 13
> comparable licenses of the patents-in-suit that also use the entire base of the licensed
> product, and Defendants do the same.

2011 WL 2417367, at *3.

6

The Federal Circuit more recently addressed this tension between the limitations it has

placed on the use of the entire market value rule where the accused features do not drive consumer

demand for the end product on the one hand and the high reliability of prior licenses to the patented

technology on the other.  In *Commonwealth Scientific and Indus. Research Org. v. Cisco Sys., Inc.*,

809 F.3d 1295, 1302 (Fed. Cir. 2015) ("*CSIRO*"), the Federal Circuit concluded that when the

starting point for the reasonable royalty calculation is previous negotiations regarding the very

patents at issue, apportionment is in some sense already "built in"  because "the parties are

constrained by the market's actual valuation of the patent."  809 F.3d at 1302-03.   The Federal

Circuit explained:

> The rule Cisco advances . . . conflicts with our prior approvals of a methodology that
> values the asserted patent based on comparable licenses.  *See VirnetX*, 767 F.3d at
> 1331; *ActiveVideoNetworks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1333
> (Fed. Cir. 2012); *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1211-12
> (Fed. Cir. 2010).  Such a model begins with rates from comparable licenses and then
> "accounts for the differences in the technologies and economic circumstances of the
> contracting parties."  *Finjan*, 626 F.3d at 1211.  Where the licenses employed are
> sufficiently comparable, this method is typically reliable because the parties are
> constrained by the market's actual valuation of the patent. *See Georgia-Pacific*, 318
> F. Supp. 2d at 1120 (declaring the first factor relevant to damages calculations to be
> "[t]he royalties received by the patentee for the licensing of the patent in suit,
> proving or tending to prove an established royalty.").  Moreover, we held in *Ericsson*
> that otherwise comparable licenses are not inadmissible solely because they express
> the royalty rate as a percentage of total revenues, rather than in terms of the smallest
> salable unit.  *Ericsson*, 773 F. 3d at 1228.  Therefore, adopting Cisco's position
> would necessitate exclusion of comparable license valuations that – at least in some
> cases – may be the most effective method of estimating the asserted patent's value.
> Such a holding "would often make it impossible for a patentee to resort to license-
> based evidence."  *Id*.

*CSIRO*, 809 F.3d at 1303-04.

The Court concludes that Mr. Smith's damage calculation based upon the MITAC model,

which Garmin's own expert concedes is "relevant" and "informative," is not inadmissible simply

because it seeks to employ Garmin's overall revenue from the accused devices.  The cases cited by

Garmin, *Fujifilm Corp. v. Motorola Mobility LLC*, No. 12-cv-03587, 2015 WL 1737951 (N.D. Cal.

Apr. 8, 2015), *Rembrandt Wireless Technologies, LP v. Samsung Electronics Co., Ltd.*, No. 13-cv-

213, 2015 WL 627430 (E.D. Tex. Jan. 31, 2015), and *Inventio AG v. Thyssenkrupp Elevator Corp.*,

No. 08-cv-874, 2014 WL 554853 (D. Del. Feb. 6, 2014), do not address the issue in the context of

a comparable license valuation and therefore they are of little persuasive value.  Garmin will be able

to test the comparability of the MITAC license, and Mr. Smith's opinion relying on that model

(which Mr. Smith describes as only a "sanity check" and which Garmin did not seek to exclude on

*Daubert* grounds) on cross-examination.

However, concluding that it is appropriate for Visteon to rely on the MITAC license as a data

point (a substantive legal issue) does not imply that evidence of Garmin's overall revenues should

be published to the jury (an evidentiary issue).  It is beyond dispute that, where a multi-component

product is at issue and the parties concede that employing the entire market value as the royalty base

is inappropriate, there is a significant risk of misleading the jury by presenting them with evidence

of the alleged infringer's overall revenues.  Once the overall revenue "cat" is out of "the bag, . . .

neither cross-examination nor a curative jury instruction [can] offset the resulting unfair prejudice."

*LaserDynamics*, 694 F.3d at 68 (citing *Uniloc*, 632 F.3d at 1320) (alterations added).  The Court

concludes that in this case, where Visteon concedes that the accused features do not drive consumer

demand for the accused devices and this Court has concluded in previous opinions that

apportionment is absolutely required, it would run afoul of this "important evidentiary principle,"

repeated often by the Federal Circuit, and would be highly prejudicial to Garmin, if  Visteon were

permitted to publish to the jury Garmin's overall revenues.  *See Core Wireless Licensing S.A.R.L.*

*v. LG Electronics, Inc.*, No. 14-cv-911, 912, 2016 WL 4523883, at * 3-4 (E.D. Tex. Aug. 26, 2016) (finding that the admissibility of an expert opinion that relies on total revenues does not imply that it would be proper to admit the actual revenue figures where disclosure of the end product's total revenue may "'skew the damages horizon for the jury'") (quoting *CSIRO*, 809 F.3d at 1302).

Accordingly, the parties are instructed to meet and confer and to arrive at a mutually agreeable method for allowing Mr. Smith to present his damages calculation that relies on the MITAC license agreement as a model without disclosing to the jury Garmin's total revenue on its sale of the accused devices. The Court is confident that the parties can arrive at some type of evidentiary stipulation that would permit the jury to consider the MITAC license model without making the jury privy to Garmin's actual revenue figures.

**B.      Garmin's Motion for Leave to Serve Supplemental Expert Report of John Lavrakas (ECF No. 341)**

Garmin seeks leave to serve a supplemental expert report of its expert John Lavrakas, purportedly generated solely in response to testimony given by Visteon's expert, Dr. Anatole Lokshin, on June 22, 2015, in the then-pending *ex parte* reexamination proceeding involving the '408 patent. Garmin claims that Mr. Lavrakas's supplemental report explains that the declaration filed by Dr. Lokshin in the '408 reexamination proceeding "directly contradicts [Dr. Lokshin's] opinions in this litigation that Garmin infringes the '408 patent." ECF No 341, Garmin's Mot. 2. Garmin claims to have "good cause" to serve the supplemental report because it did so in a timely fashion once it learned of Dr. Lokshin's allegedly contradictory declaration filed in the reexamination proceedings.

Having reviewed the motion, the response, the reply, the surreply, the response to the surreply, the reply to the response to the surreply, and all attached exhibits, the Court finds no good

cause to allow Garmin to serve the supplemental Lavrakas expert report. Garmin can adequately pursue its argument that Dr. Lokshin gave contradictory testimony in the reexamination proceedings through cross-examination at trial without bolstering from Mr. Lavrakas.[1] Accordingly, the Court DENIES Garmin's motion for leave to serve the supplemental report of John Lavrakas.

## IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART Garmin's motion to exclude evidence regarding Garmin's revenue and profits and will exclude testimony or evidence that would disclose to the jury Garmin's overall profits and revenues (ECF No. 265) and DENIES Garmin's motion for leave to serve the supplemental expert report of John Lavrakas (ECF No. 341).

IT IS SO ORDERED.


s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  November 10, 2016

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on November 10, 2016.


s/Deborah Tofil
Case Manager

---

[1] The Court GRANTS Visteon's motion to file its surreply and accepts that already-filed surreply (ECF No. 354).